1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jonathan Ricasa (SBN 223550)
LAW OFFICE OF JONATHAN RICASA
2341 Westwood Boulevard, Suite 7
Los Angeles, California 90064
Telephone:  424.248.0510
Facsimile:  424.204.0652
jricasa@ricasalaw.com

Attorney for Plaintiff
Christopher Perry

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT

Christopher Perry, individually and
on behalf of all others similarly
situated,

                    Plaintiff,

          v.

Aircraft Service International, Inc.,
and Doe One through and including
Doe One Hundred,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV13-00059-SVW (AGRx)

**OPPOSITION TO MOTION FOR
PARTIAL JUDGMENT ON THE
PLEADINGS**

***Under Separate Cover:***

***Request for Judicial Notice***

Date:     April 8, 2013
Time:     1:30 p.m.
Ctrm:     6
Judge:    Stephen V. Wilson

Complaint Filed:  November 30, 2012
Trial Date:  None

# TABLE OF CONTENTS

I.    INTRODUCTION ……………………………………………………………... 1

II.   BACKGROUND ……………………………………………………………… 1

III.  ARGUMENT …………………………………………………………………... 3

      A.   Applicability Of The ADA Preemption Provision …………………………. 4

      B.   Governing Case Law On ADA Preemption ……………………………… 6

      C.   Plaintiff's Claim for Meal and Rest Breaks – The Second Claim –
           Is Not Preempted By The ADA ………………………………………… 15

      D.   Plaintiff's Other State Claims – The Second, Third, And Fourth –
           Are Not Preempted By The ADA ………………………………………... 20

      E.   Plaintiff's Fifth Claim For Federal Overtime Is Not Preempted
           By The RLA ……………………………………………………………… 21

      F.   California's Overtime Requirements Apply Despite ASII's
           Assertion That A Collective Bargaining Agreement Was Entered
           Into Under The RLA ……………………………………………………... 23

      G.   Even If The ADA's Or RLA's Preemptive Reach Extended To
           ASII, Which It Does Not, ASII's Motion Should Be Denied
           Because Further Discovery Would Be Required ………………………… 24

CONCLUSION …………………………………………………………………… 25

# TABLE OF AUTHORITIES

## Cases

*Abdu-Brisson v. Delta Airlines, Inc.*,
   128 F. 3d 77 (2d Cir. 1997) …………………………………………………... 12

*Aguiar v. Cal. Sierra Express*,
   2012 WL 1593202, 2012 U.S. Dist. LEXIS 63348 (E.D. Cal. May 4, 2012) ……. 16, 17

*Air Transport Ass'n of Am. v. City & County of S.F.*,
   266 F. 3d 1064 (9th Cir. 2001) ………………………………………………… 12, 19

*Air Transport Ass'n of Am. v. City of S.F.*,
   992 F. Supp. 1149 (N.D. Cal. 1998) ……………………………………………… 10

*Air Transport Ass'n of Am., Inc. v. Cuomo*,
   520 F. 3d 218 (2d Cir. 2008) …………………………………………………... 7

*Alim v. Aircraft Serv. Int'l, Inc.*,
   2012 WL 3647403, 2012 U.S. Dist. LEXIS 119964 (N.D. Cal. Aug. 23
   2012) ………………………………………………………………………… 6

*Aloha Islandair Inc. v. Tseu*,
   128 F. 3d 1301 (9th Cir. 1997) ………………………………………………….. 12

*American Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995) ……………………………………………… 8, 9, 16, 20

*American Trucking Association, Inc. v. City of Los Angeles*,
   660 F. 3d 384 (9th Cir. 2011) ………………………………………………… 13

*Anderson v. American Airlines, Inc.*,
   2 F. 3d 590 (5th Cir. 1993) ……………………………………………………… 12

*Angeles v. U.S. Airways, Inc.*,
   2013 WL 622032, 2013 U.S. Dist. LEXIS 22423 (N.D. Cal. 2013) ………………… 11

*Blackwell v. Skywest Airlines, Inc.*,
   No. 06-0307, 2008 WL 5103195, 2008 U.S. Dist. LEXIS 97955 (S.D. Cal.
   Dec. 3, 2008) ……………………………………………………………… 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Branche v. Airtran Airways, Inc.,*
  342 F. 3d 1248 (11th Cir. 2003) ………………………………………………… 12

*Burnside v. Kiewit Pac. Corp.,*
  491 F. 3d 1053 (9th Cir. 2007) …………………………………………………… 24

*Bustillos v. Bimbo Bakeries USA, Inc.,*
  2009 WL 1765683, 2009 U.S. Dist. LEXIS 52009 (N.D. Cal. June 19,
  2009) ………………………………………………………………………….. 15

*Cal. Div. of Labor Standards v. Dillingham Constr., Inc.,*
  519 U.S. 316 (1997) …………………………………………………….. 8, 9, 10

*Californians for Safe and Competitive Dump Truck Transportation v.*
  *Mendonca*, 152 F. 3d 1184 (9th Cir. 1998) ……………………………………… passim

*Campbell v. Vitran Express, Inc.,*
  2012 WL 2317233, 2012 U.S. Dist. LEXIS 85509 (C.D. Cal. June 8, 2012) …… 16, 17

*Cardenas v. McLane Foodservices,*
  796 F. Supp. 2d 1246 (C.D. Cal. July 8, 2011) ………………………………… 15

*Cemex Wage Cases,*
  JCCP CJC–07–004520 (S.F. Super. Ct. Feb. 19, 2010) ……………………………… 15

*Dayhoff v. Temsco Helicopters, Inc.,*
  848 P. 2d 1367 (Alaska 1993) ……………………………………………………... 12

*DiFiore v. Am. Airlines, Inc.,*
  483 F. Supp. 2d 121 (D. Mass. 2007) ……………………………………………... 12

*Dilts v. Penske Logistics,*
  819 F. Supp. 2d 1109 (S.D. Cal. 2011) ……………………………………….... 16, 17

*Driscoll et al. v. Granite Rock Company,*
  Superior Court of California, County of Santa Clara, Case No.
  1-08-CV-103426 (Aug. 25, 2011) ………………………………………………… 15

*Dunbar Armored, Inc. v. Rea,*
  3:04-cv-602 WQH WMC (S.D. Cal. 2011) ……………………………………… 15

*Duncan v. Northwest Airlines, Inc.*,
  208 F. 3d 1112 (9th Cir. 2000) ……………………………………………….. 12

*Esquivel v. Vistar Corp.*,
  2012 WL 516094, 2012 U.S. Dist. LEXIS 26686 (C.D. Cal. Feb. 8, 2012) …….... 16, 17

*Fitz-Gerald v. Skywest Airlines, Inc.*
  155 Cal. App. 4th 411 (Cal. Ct. App. 2007) ………………………………... 12, 14

*Fort Halifax Packing Co., Inc. v. Coyne*,
  482 U.S. 1 (1987) ……………………………………………………… 10, 14

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995) …………………………………………………………… 3

*Gary v. Air Group, Inc.*,
  397 F. 3d 183 (3d Cir. 2005) ………………………………………………… 12

*Gregory v. SCIE, LLC*,
  317 F. 3d 1050 (9th Cir. 2003) ………………………………………… ..… 24

*Hawaiian Airlines, Inc. v. Norris*,
  512 U.S. 246 (1994) ………………………………………………........ 10, 14

*Huntleigh Corp. v. Louisiana State Board of Private Security Examiners*,
  906 F. Supp. 357, 361 (M.D. La. 1995) ………………………………………… 13

*Iniguez v. Evergreen Aviation Ground Logistics Enter., Inc.*,
  CV 07-7181 (C.D. Cal. 2009) …………………………………………… 4, 5, 11, 14

*Jimenez–Ruiz v. Spirit Airlines, Inc.*,
  794 F. Supp. 2d 344, 348 (D.P.R. 2011) …………………………………………… 6

*Livadas v. Bradshaw*,
  512 U.S. 107 (1994) …………………………………………………………… 23

*Mendez v. R+L Carriers, Inc.*,
  2012 WL 5868973, 2012 U.S. Dist. LEXIS 165221 (N.D. Cal. Nov. 19,
  2012) ………………………………………………………………………... 14, 15

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ………………………………………………….. 8, 9, 12, 16, 21

*Morrison v. Knight Transportation, Inc.*,
  Superior Court of California, County of Tulare, Case No. 228016 (Oct. 1,
  2009) ………………………………………………………………….. 15

*N.Y. State Conference of Blue Cross & Blue Shield v. Travelers Insurance Co.*,
  514 U.S. 645 (1995) ……………………………………………………… 3

*Parise v. Delta Airlines, Inc.*,
  141 F. 3d 1463 (11th Cir. 1998) …………………………………………… 12

*Reinhardt v. Gemini Motor Transport*,
  869 F. Supp. 2d 1158 (E.D. Cal. App. April 25, 2012) ………………………… 15

*Rice v. Santa Fe Elevator Corp.*,
  331 U.S. 218 (1947) ………………………………………………………… 8

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008) …………………………………………………….. 7, 9, 10

*Santoni Roig v. Iberia Aereas de Espana*,
  688 F. Supp. 810 (D.P.R. 1988) …………………………………………… 12

*Tucker v. Hamilton Sundstrand Corp.*,
  268 F. Supp. 2d 1360 (S.D. Fla. 2003) …………………………………… 13

*Wellons v. Northwest Airlines, Inc.*,
  165 F. 3d 493 (6th Cir. 1999) ……………………………………………….. 12

*WSB Elec., Inc. v. Curry*,
  88 F. 3d 788 (9th Cir. 1996) ……………………………………………….. 10

**<u>Statutes</u>**

29 U.S.C. § 206 …………………………………………………………….. 3

29 U.S.C. § 207(a)(1) ……………………………………………………… 3

45 U.S.C. § 181 ……………………………………………………………… 5

49 U.S.C. § 14501(c)(1) ……………………………………………………… 7

49 U.S.C. § 40102 …………………………………………………………… 5

49 U.S.C. § 41101 …………………………………………………………… 6

49 U.S.C. § 41101(a)(1) …………………………………………………… 6

49 U.S.C. § 41713(b)(1) ………………………………………… 4, 5, 6, 20

Cal. Bus. & Prof. Code § 17200 ……………………………………… 2, 3, 20

Cal. Lab. Code § 201 …………………………………………… 3, 10, 20

Cal. Lab. Code § 203 ……………………………………………….. 2, 10

Cal. Labor Code § 226.7 ………………………………………….. passim

Cal. Lab. Code § 226.7(b) …………………………………… 2, 14, 17

Cal. Lab. Code § 510 …………………………………….. 2, 3, 10, 20, 24

Cal. Labor Code § 511 …………………………………………… 24

Cal. Labor Code § 512 …………………………………… 2, 3, 10, 13, 14

Cal. Lab. Code § 512(a) …………………………………….. 2, 18

Cal. Labor Code § 514 …………………………………………… 24

Cal. Lab. Code § 1771 …………………………………………... 7

Cal. Lab. Code § 1775 …………………………………………... 7

Cal. Lab. Code § 1194 ………………………………….. 2, 3, 10, 20

F.R.C.P. Rule 56 …………………………………………… 25

**Other Authorities**

Cal. Code Regs. tit. 8, § 11090(11)(C) ……………………………… 18

Cal. Code Regs. tit. 8, § 11090(11)(D) ……………………………… 2

Cal. Code Regs. tit. 8, § 11090(12)(B) …………………………………………… 2, 17

H.R. Conf. Rep. No. 103–677 (1994) …………………………………………… 11, 14

Industrial Welfare Commission Wage Order 9-2001 ……………………… 1, 2, 3, 13, 14

## I.  **INTRODUCTION**

A putative class of employees asserts state law wage-and-hour claims against their employer, Aircraft Service International, Inc. ("ASII").  Plaintiff Christopher Perry worked on the airport tarmac at Los Angeles International Airport and was responsible for loading and unloading cargo planes.  ASII has moved for partial judgment on the pleadings on the basis that the Airline Deregulation Act ("ADA") preempts California meal and rest break requirements and derivative claims, and that the Railway Labor Act ("RLA") preempts the federal claim for overtime, and precludes the state overtime claim on the basis that Plaintiff was covered by a collective bargaining agreement.  For the reasons discussed below, Plaintiff's claims are not preempted and Defendant's motion should be denied in its entirety.

## II.  **BACKGROUND**

ASII provides ground handling services to a variety of airlines at LAX.  (Mot. at 3:13-15).  Plaintiff worked as a cargo ramp agent for ASII.  Compl. ¶ 11.  The putative Plaintiff classes are limited to "persons employed by Aircraft Service International, Inc. at Los Angeles International Airport as Cargo Ramp Agents and those with similar titles or job duties".  (Compl. ¶ 31).  Cargo ramp agents' duties included cargo loading and unloading.  (Mot. at 3:19).  Plaintiff and other cargo ramp agents were not provided with meal and rest periods where they were relieved of all duties.  (Compl. ¶ 12).[1]

Defendant moved for partial judgment on all of Plaintiff's claims arising under the California Labor Code, the California Business & Professions Code, and the Fair Labor Standards Act ("FLSA").  With respect to Plaintiff's First Claim, California Labor Code section 226.7 requires that employers comply with the State Industrial Welfare Commission's (IWC) rules governing meal and rest breaks.  Cal. Lab. Code § 226.7.

---

[1] ASII asserts in its Motion that ASII is "licensed" at LAX to provide other services, e.g., into-plane fueling, passenger services, cabin cleaning, and maintenance for airlines. It is unclear from the record which services ASII indeed provides at LAX.  In any case, this lawsuit involves only the ground handling services performed by its cargo ramp agents.  (Compl. § 31).

1  This mandate includes compliance with IWC Wage Order 9-2001 (Pl.'s Req. for Judicial

2  Notice ("Pl.'s RJN"), Ex. 15), which requires all employers in the transportation industry

3  to provide their employees with a ten-minute rest break for every four consecutive hours

4  of work.  *See* Cal. Code Regs. tit. 8, § 11090(12)(B).  The Wage Order and the statute

5  both mandate that employers "pay the employee one additional hour of pay at the

6  employee's regular rate of compensation for each work day that the meal or rest period is

7  not provided."  Cal. Lab. Code § 226.7(b); *see* also Cal. Code Regs. tit. 8, § 11090(12)(B)

8  (using language almost identical to section 226.7).  California Labor Code section 512

9  requires employers to provide employees with a thirty-minute meal break for every shift

10  longer than five hours.  Cal. Lab. Code § 512(a).  As with the rest break requirement,

11  employers must pay employees an additional hour of wages if they fail to provide a

12  required meal break.  Cal. Code Regs. tit. 8, § 11090(11)(D).

13      Under Plaintiff's Second Claim, Plaintiff and class members are entitled to accrued

14  but unpaid minimum wages and overtime on account of the services they performed for

15  ASII when they worked through their meal periods.  (Compl. ¶ 29).  Defendant failed to

16  timely pay Plaintiff and class members their minimum wages and overtime compensation

17  due and owing to them after discharge.  (Compl. ¶ 53).  Employees may not agree to

18  waive entitlement to the minimum wage.  Cal. Lab. Code § 1194.  California law requires

19  overtime to be paid after 40 hours are worked in one week, eight hours are worked in one

20  day (with double the hourly rate to be paid after 12 hours in a single day), or a seventh

21  consecutive day is worked in any workweek.  Cal. Lab. Code § 510.

22      With respect to the Third Claim, because Plaintiff and class members who were

23  separated from their employment did not receive wage premiums for missed meal and

24  rest periods, minimum wages, and proper overtime pay, they were not paid all their

25  wages at the time of discharge.  (Compl. ¶ 21).  Where the employer willfully violates the

26  provisions of the California Labor Code regarding timing of payment, California Labor

27  Code section 203 provides continuing wages of up to 30 days' wages.  With respect to

28  Plaintiff's Fourth Claim, Plaintiff has a derivative claim pursuant to California Business

1    & Professions Code section 17200 *et seq.*, alleging that Defendant's withholding of

2    wages constitutes an unlawful business practice under section 17200.  (Compl. ¶ 25).

3    With respect to Plaintiff's Fifth Claim for federal overtime, the FLSA requires employers

4    to pay at least the minimum wage for all hours worked (29 U.S.C. § 206) and to pay at

5    least one and a half times the employee's "regular rate" for hours worked in excess of 40

6    hours per week (29 U.S.C. § 207(a)(1)).

7    **III.   ARGUMENT**

8         ASII violated California's wage-and-hour and working condition laws.

9    Specifically, Plaintiff and class members did not receive: (1) minimum and overtime

10   wages for all hours worked (Cal. Lab. Code §§ 510, 1194 and FLSA, 29 U.S.C. §§ 206,

11   207); (2) required meal and rest breaks, or premium pay for missed meal periods and rest

12   breaks (Cal. Lab. Code §§ 226.7, 512; and Wage Order 9-2001 (Pl.'s RJN, Ex. 15)); and

13   (3) wages due at termination (Cal. Lab. Code §§ 201-03).  Pursuant to California's Unfair

14   Competition Law, California Business & Professions Code section 17200, et seq.,

15   Plaintiff and class members are entitled to restitution for these alleged violations.

16        Defendant erroneously argues that California's state laws are expressly preempted

17   by the ADA. (Mot. at 1:13).  When determining the scope of preemption, courts begin

18   with the "starting presumption that Congress does not intend to supplant state law." *N.Y.*

19   *State Conference of Blue Cross & Blue Shield v. Travelers Insurance Co.*, 514 U.S. 645,

20   654-55 (1995).  This presumption has more bite "where federal is said to bar state action

21   in fields of traditional state regulation." *Id.* at 665.  Accordingly, "the historic police

22   powers of the States [a]re not to be superseded by [a] Federal Act unless that was the

23   clear and manifest purpose of Congress." *Id.* (quotation marks omitted).  The inclusion

24   of an express preemption provision in a federal statute implies that Congress did not

25   intend to preempt other matters. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995).

26   In every case, the scope of preemption ultimately turns on Congressional intent. *Blue*

27   *Cross & Blue Shield*, 514 U.S. at 655.  Thus, to determine whether Congress sought to

28

1   preempt California's meal and rest break laws, the Court must examine the purpose of the

2   ADA.

3          The ADA, which was passed by Congress as part of a scheme to deregulate the

4   airline industry, provides that state governments "may not enact or enforce a law,

5   regulation, or other provision having the force and effect of law related to a price, route

6   or service of an air carrier that may provide air transportation under this subpart."  49

7   U.S.C. § 41713(b)(1).  It is Defendant's burden to show that the ADA preempts

8   Plaintiff's claims.  *Abdu-Brisson v. Delta Airlines, Inc.*, 128 F. 3d 77, 83 (2d Cir. 1997).

9   As explained below, Defendant has not met this burden.

10          **A.     Applicability Of The ADA Preemption Provision**

11          The ADA's preemption provision applies only to state action affecting the "price,

12   route or service of an air carrier ***that may provide air transportation under this subpart.***"

13   (Emphasis added).  Defendant's opening brief conspicuously and tellingly omits all of the

14   words after "air carrier" in its block quote of this provision, and instead includes an

15   ellipsis to indicate omitted words.  Motion at 7:25-27.  Since ASII is not an "air carrier

16   that may provide air transportation under this subpart", ASII may not invoke the

17   preemption provision.[2]

---

18       [2] In *Iniguez v. Evergreen Aviation Ground Logistics Enter., Inc.*, CV 07-7181 (C.D.

19   Cal. 2009) (Pl.'s RJN, Ex. 7), a nearly identical case, Judge Matz criticized the

20   employer's counsel in that case for making similar distortions.  The court stated:

21          Defendant's opening brief conspicuously and tellingly omits all of the words
            after "air carrier" in its blockquote of this provision (and does not include an

22          ellipsis to indicate omitted words).

                                    . . .

23   In two respects Defendants counsel attempted to distort the analyses this
     Court has the duty to make: deleting the full text of 49 U.S.C. § 41713(b)(1)

24   and failing to acknowledge the true basis for the NMB and NLRB

25   certificates. They should be ashamed to have displayed such flagrant
     unprofessionalism. Such inappropriate lawyering always hurts the client's

26   interest. So egregious is this misconduct that Defendant's counsel are
     therefore ORDERED to deliver this ruling to the chief decision maker for

27   [Evergreen Aviation Ground Logistics Enter., Inc.] and to highlight and

28   discuss this footnote with the client. By not later than September 21, 2009,

Defendant cites to determinations made by the National Mediation Board ("NMB") as "precedent upon which to base a finding of ADA preemption." (Mot. 5:17-18). But Defendant only cites opinions from those Boards discussing the RLA, which applies to "every common carrier by air" *and* "every . . . person who performs any work as an employee or subordinate official of such carrier . . . ." 45 U.S.C. § 181. The agency opinions cited by Defendant did *not* conclude that ASII is an air carrier; they concluded only that ASII and its employees are subject to control by air carriers and are therefore covered by the RLA. (Def.'s RJN, Ex. 4-9). Indeed, the NMB letters and the NLRB order specifically noted that the test they applied related to a company that "does not fly aircraft" and is not an "air carrier engaged in the transportation of freight or passengers". (Def.'s RJN, Ex. 4-8). No provision in the ADA parallels the control provision of the RLA, 45 U.S.C. § 181, that is emphasized in Defendant's Motion (e.g., at 4:13-18), and these agency opinions thus have no relevance to an analysis of the ADA's preemption provision, 49 U.S.C. § 41713(b)(1).

Title 49 defines an "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102. Given that ASII provides only ground services, it is hard to understand how it could fit within the scope of this definition, notwithstanding that the ground services arguably help those who do provide air transportation. Also, Section 41713(b)(1) refers to an "air carrier *that may provide air transportation* under this subpart." If Congress meant § 41713(b)(1) to encompass the effects of state laws even on air carriers that only "indirectly" provide air transportation, it would not have added the phrase "that may provide air transportation." It would have just referred to "air carriers." Furthermore, it would make no sense to preempt laws that affect the "routes" of a company like ASII, which only provides ground services and thus flies no routes. In addition, Section

Defendant's counsel shall file a declaration confirming that he did so and identifying the individual to whom he showed this order. Further displays of shoddy game-playing by Defendant's counsel will result in sanctions. *Iniguez* at 5, n. 3.

1  41713(b)(1) refers to "air transportation *under this subpart*."  That language likely refers

2  to 49 U.S.C. § 41101, which states "an air carrier may provide air transportation only if

3  the air carrier holds a certificate issued under this chapter authorizing the air

4  transportation."  49 U.S.C. § 41101(a)(1).  ASII has provided no evidence that it holds

5  such a certificate.[3]

6       ASII filed a similar motion to dismiss which was denied in another case.  In *Alim*

7  *v. Aircraft Serv. Int'l, Inc.,* 2012 WL 3647403, 2012 U.S. Dist. LEXIS 119964 (N.D. Cal.

8  2012) (Def.'s RJN, Ex. 43), the plaintiffs worked for ASII as ground-service equipment

9  mechanics at San Francisco International Airport.  Judge Alsup denied ASII's motion to

10  dismiss and stated: "Because ASII is not itself an airline, but rather a provider of contract

11  services to airlines, it is possible that the application of California meal-and-rest break

12  regulations to ASII's employees would affect airline services in too tenuous, remote or

13  peripheral a manner to have a preemptive effect."  (Def.'s RJN, Ex. 43 at 4:21-26)

14  (quotation marks omitted).  As explained by Defendant, Judge Alsup requested discovery

15  on the extent of ASII's relationship to the airline industry.  The case was apparently

16  dismissed before he had the opportunity to consider the evidence and briefing and issue a

17  final ruling.  (Dkt. No. 62) (Def.'s RJN, Ex. 45).

---

20  [3] Moreover, the Complaint  alleges that Plaintiff and class members were *cargo ramp*
21  *agents*.  (Compl. ¶ 31).  No where does it allege that they worked near passenger gates.
22  The possibility of an effect on aircraft services seems even more remote under the facts
   of this case as opposed to others, because Plaintiff is not himself an employee of the
23  airlines and thus does not provide services directly to consumers.  Rather, his role is more
24  attenuated in that ASII merely contracts with airline companies to load and unload cargo.
   It is hard to imagine how a third-party cargo ramp agent could have the same impact on
25  the services of an airline as, for example, a flight attendant or a baggage carrier, who is a
26  direct employee of the airlines.  *See Jimenez–Ruiz v. Spirit Airlines, Inc.,* 794 F.Supp.2d
   344, 348 (D.P.R.2011) ("The court notes that the instances in which claims have been
27  preempted because they relate to "services" mostly involved "*services provided by*
   *individual airline employees directly to passengers,* such as ticketing, boarding, in-flight
28  service, and the like.").

1   In this case, no evidence is before the Court on how Plaintiff's state law claims

2   would affect the services, prices and routes of air carriers providing air transportation,

3   *i.e.*, the airlines ASII serves.  The preemption provision does not apply.

4   ## B.    Governing Case Law On ADA Preemption

5   Contrary to ASII's argument, ASII cannot establish that the ADA preempts

6   Plaintiff's state law claims.  Courts frequently interpret the ADA's preemption provision

7   in light of case law applying an identical provision that was enacted after the ADA in the

8   Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), a statute that

9   (despite its name) deregulated the trucking industry.  And the converse is also true:

10  Courts frequently interpret the FAAAA in light of prior analyses of the ADA.  *See, e.g.,*

11  *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008) (applying the FAAAA in light of

12  the Supreme Court's ADA precedents); *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520

13  F. 3d 218, 222-24 (2d Cir. 2008) (applying *Rowe* to hold that the ADA preempted a

14  "passengers' bill of rights").[4]

15  In *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*

16  ("*Mendonca*"), the Ninth Circuit applied the FAAAA's preemption provision to a

17  California wage-and-hour statute, and found as a matter of law that the law was not

18  preempted.  152 F. 3d 1184 (9th Cir. 1998), *cert. denied*, 526 U.S. 1060 (1999).

19  Defendant's brief does not address *Mendonca*.  Because *Mendonca* is directly on point

20  and is still good law, it governs the application of the ADA's preemption provision to

21  Plaintiff's wage-and-hour claims.  This brief will therefore discuss *Mendonca's* reasoning

22  and holding in some detail.

23  In *Mendonca*, a coalition of transportation contractors sued several California state

24  agencies for declaratory and injunctive relief from the enforcement of California's

25  prevailing wage law.  That law requires contractors awarded public works contracts to

26

27  [4] The FAAAA provision states that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . ." 49 U.S.C. § 14501(c)(1).  ASII's motion relies heavily on *Rowe*.

28

pay their workers not less than the general prevailing rate for work of a similar character in the locality in which the public work is performed.  Failure to pay prevailing wages results in penalties against the employer.  Cal. Lab. Code §§ 1771, 1775.  The contractors contended that the FAAAA preempted the prevailing wage law because the law increased the prices they charged to customers by 25 percent, caused them to utilize independent owner-operators, and compelled them to re-direct and re-route equipment to compensate for lost revenue.  *Id.* at 1186, 1189.

The Ninth Circuit began its analysis "with the assumption that state laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest."  *Id.* at 1186 (citing *Cal. Div. of Labor Standards v. Dillingham Constr., Inc.*, 519 U.S. 316, 330 (1997); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  The court then turned to the text of the preemption provision, which has a number of explicit exemptions that did not apply.  The Ninth Circuit concluded that the text offered little direction.  *Id.* at 1187.

Next, *Mendonca* considered the legislative history of the FAAAA, which revealed that (1) the FAAAA, like the ADA, was passed because Congress believed that deregulation was necessary to eliminate non-uniform state regulations; and (2) by passing a preemption provision for trucking companies identical to the ADA provision, Congress sought to "even the playing field" between air carriers and motor carriers.  The Ninth Circuit also noted that of the ten jurisdictions that Congress found did not regulate intrastate prices, routes, and services, seven of those jurisdictions had prevailing wage laws.  When coupled with the absence of any positive indication in the legislative history that Congress intended preemption in this area of traditional state power, the court considered this "indirect evidence" of Congress's intent.  *Id.* at 1187-88.

Finally, the Ninth Circuit turned to recent Supreme Court cases interpreting the preemptive scope of the ADA and ERISA preemption provisions, including *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) (holding that although the ADA may preempt state laws with only an indirect effect on rates, routes, or services, some state

1  action may affect fares in "too tenuous, remote, or peripheral a manner" to be

2  preempted), *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) (holding that ADA

3  preempted state regulation of frequent flyer program), *Blue Cross & Blue Shield*, *supra*,

4  514 U.S. 645 (reading *Morales* narrowly to hold that traditional state regulation having

5  no more than an indirect effect on ERISA plans were not "related to" such plans), and

6  *Dillingham Construction, supra* (holding that ERISA did not preempt prevailing wage

7  law).  The Ninth Circuit summarized these cases as "instruct[ing] that state regulation in

8  an area of traditional state power having no more than an indirect, remote, or tenuous

9  effect on a motor carriers' prices, routes, and services are [sic] not preempted."

10  *Mendonca*, 152 F. 3d at 1188.

11      Based upon this analysis, the Ninth Circuit concluded that California's prevailing

12  wage law is not "related to" prices, routes or services, even though the trucking coalition

13  asserted that the law increased its prices by 25 percent, caused it to utilize independent

14  owner-operators, and compelled it to re-direct and re-route equipment.  *Mendonca* held:

15          While [the prevailing wage law] in a certain sense is "related to" [the

16          employers'] prices, routes and services, we hold that the effect is no more

17          than indirect, remote and tenuous. . . . We do not believe that the [law]

18          frustrates the purpose of deregulation by *acutely* interfering with the forces

19          of competition. . . . Nor can it be said, borrowing from Justice Scalia's

20          concurrence in *Dillingham*, that [the prevailing wage law] falls into the

21          "field of laws" regulating prices, routes, or services.

22  *Id.* at 1189 (citations omitted).

23      Afterwards, the Supreme Court issued *Rowe*, *supra*, its third pronouncement on the

24  ADA/FAAAA provisions, but nothing in *Rowe* invalidates the holding in *Mendonca*.

25  *Rowe* concerned a Maine statute that required motor carriers transporting tobacco to

26  ensure that purchasers met certain age and identification requirements.  *Rowe*, like

27  *Mendonca*, relied heavily on *Morales* and *Wolens* but concluded that the FAAAA

28  preempted the Maine statute.  The Maine statute at issue in *Rowe* is unlike the wage-and

hour statute at issue in *Mendonca* or the claims in this case.  For example, unlike wage and-hour laws of general applicability, the Maine law was "aim[ed] directly" at trucking and motor carrier services, creating a direct "connection with" them.  *Rowe*, 552 U.S. at 370, 376.  The Maine statutory provisions that the Supreme Court found preempted by the FAAAA in *Rowe*, for instance, sought to regulate tobacco through its shipment and delivery processes.  552 U.S. at 368-70.  One of the provisions effectively required motor carriers transporting tobacco products to offer a new kind of delivery service (known as "recipient-verification"), *id.* at 368-69, while the other imposed new civil penalties on carriers who transported tobacco to unlicensed retailers (thereby requiring the carriers to examine every package they ship and to monitor constantly which Maine retailers have tobacco licenses), *id.* at 369.  Recognizing that each of these requirements had a "direct connection with motor carrier services," the *Rowe* Court held that both were preempted by the FAAAA.  *Id.* at 371 (citations omitted).  Because California's meal and rest break laws do not uniquely burden motor carriers in the same way, *Rowe* offers little support to Defendant here.

In addition, the Maine law required motor carriers to offer identification services that they did not already provide.  *Id.* at 369.  And although the Supreme Court was not convinced that the public-health purpose of the Maine statute exempted it from FAAAA preemption, *id.* at 374, the Court did not back away from its longstanding and general reluctance to preempt matters traditionally within a state's police powers, including labor standards.  *See generally Dillingham*, 519 U.S. at 330-32; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) ("Pre-emption of employment standards within the traditional police power of the State should not be inferred lightly."); *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987) ("[P]re-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State."); *WSB Elec., Inc. v. Curry*, 88 F. 3d 788, 791 (9th Cir. 1996) ("It is well settled that wages are a subject of traditional state concern. . . .").

Here, the Labor Code sections that Defendant contends are preempted here – sections 201-203, 226.7, 510, 512, 1194 – apply broadly to all employers in California. The provisions do not specifically refer to the airline industry or even remotely resemble the area of regulation – prices, routes or services of an air carrier that may provide air transportation – targeted by the ADA's preemption clause. *Air Transport Ass'n of Am. v. City of S.F.*, 992 F. Supp. 1149, 1183 (N.D. Cal. 1998) ("Congress did not . . . through the [ADA's preemption clause], exempt the airlines from generally applicable employment laws."), aff'd, 266 F. 3d 1064, 1079 (9th Cir. 2001). Similarly, as the House Conference Report for the FAAAA ("Report") notes, the "[t]ypical forms of regulation" targeted by the FAAAA's preemption clause "include entry controls, tariff filing and price regulation, and types of commodities carried." H.R. Conf. Rep. No. 103-677 (1994), at 86 (Pl.'s RJN, Ex. 1). The Report does not specifically discuss whether the FAAAA was intended to preempt generally applicable employment laws. *See also Mendonca*, *supra*, 152 F. 3d at 1126 ("the legislative history of [the FAAA] does not establish that it was Congress's 'clear and manifest' intent to preempt state wage regulation; rather, it appears that Congress intended to preempt state law that more directly affects motor carrier prices and rates, such as entry controls, tariffs charged for transportation services and similar regulation."

In addition, the Ninth Circuit's holding in *Mendonca* is in line with that of other courts finding that the ADA and the FAAAA do not preempt employment laws with respect to claims brought by employees working in the airline industry. In a case nearly identical to the case at hand, *Iniguez v. Evergreen Aviation Ground Logistics Enter., Inc.*, Central District of California, Case No. CV 07-7181 AHM (VBK) (Sept. 11, 2009), ramp agents asserted state law wage-and-hour claims against their employer, Evergreen Aviation Ground Logistics Enterprise, Inc., which was not an air carrier. Judge Matz determined that the defendant was not an air carrier and denied the employer's motion for summary judgment. Relying on *Mendonca*, he ruled that the plaintiffs' meal and rest break claims were not preempted by the ADA. This case is no different, and the result

should follow.  Much of the analysis in this brief is borrowed from this well-reasoned and persuasive decision.

In *Fitz-Gerald v. Skywest Airlines, Inc.*, 155 Cal. App. 4th 411, 422 (Cal. Ct. App. 2007) (Pl.'s RJN, Ex. 8), the California Court of Appeal held that flight attendants' state meal and rest break claims and state minimum wage claims against the airline were not preempted by the ADA.  The Court stated: "Although the ADA has been broadly interpreted as preempting state enforcement actions having a connection with, or reflect to, airline 'rates, routes or services,' it has its limits. [Citations.] If the rule was otherwise, any string of contingencies is sufficient to establish a connection with price, route, or service, [and] there will be no end to ADA preemption."  (Quoting *Morales*, *supra*, 384 and *Air Transport Ass'n of Am.*, *supra*, 992 F. Supp. at 1183).

The Ninth Circuit has found claims relating to employees working in the airline industry are not preempted.  *See Air Transport Ass'n of Am. v. City & County of S.F.*, 266 F. 3d 1064 (9th Cir. 2001) (employee benefit antidiscrimination law not preempted); *Duncan v. Northwest Airlines, Inc.,* 208 F. 3d 1112 (9th Cir. 2000) (flight attendant's personal injury claim not preempted by ADA); *Aloha Islandair Inc. v. Tseu,* 128 F. 3d 1301 (9th Cir. 1997) (pilot's disability discrimination claim not preempted by ADA).[5]

---

[5] Also other circuits have recognized that the claims brought by employees working in the airline industry generally escape preemption.  *See Gary v. Air Group, Inc.,* 397 F. 3d 183 (3d Cir. 2005) (copilot's whistleblower retaliation claim not preempted by ADA); *Branche v. Airtran Airways, Inc.,* 342 F. 3d 1248 (11th Cir. 2003) (airline employee's whistleblower retaliation claim not preempted); *Wellons v. Northwest Airlines, Inc.,* 165 F. 3d 493 (6th Cir. 1999) (airline employee's race discrimination claim not preempted by ADA); *Parise v. Delta Airlines, Inc.,* 141 F. 3d 1463 (11th Cir. 1998) (airline employee's age discrimination claim not preempted by ADA); *Abdu-Brisson*, *supra*, 128 F. 3d 77 (pilots' age discrimination claim not preempted by ADA); *Anderson v. American Airlines, Inc.,* 2 F. 3d 590 (5th Cir. 1993) (airline employee's retaliation claim not preempted by ADA).  The rationale has generally been that while state laws may relate to airline prices, routes, or services, such a relationship is too tenuous to support preemption. E.g., *Gary*, 397 F. 3d at 189.  Other district courts have held that the claims at issue were not preempted.  *See DiFiore v. Am. Airlines, Inc.,* 483 F. Supp. 2d 121 (D. Mass. 2007) (skycaps' claims of violations of Massachusetts Tips Law not preempted by ADA); *Santoni Roig v. Iberia Aereas de Espana*, 688 F. Supp. 810 (D.P.R. 1988) (claims

1    Defendant's reliance on *American Trucking Association, Inc. v. City of Los*

2  *Angeles*, 660 F. 3d 384 (9th Cir. 2011), is misplaced.  (Mot. at 10:18-11:1).  In that case,

3  the Ninth Circuit analyzed the impact of a series of drayage services concession

4  agreements between the cities of Los Angeles and Long Beach and local motor carrier,

5  on the motor carrier industry.  The Ninth Circuit found that under the FAAAA, when the

6  state law's effect on rates, routes, and services of motor carriers is only indirect, the

7  proper preemption inquiry is whether the provision, directly or indirectly, binds the

8  carrier to a particular price, route, or service and thereby interferes with competitive

9  market forces within the industry.  *Id.* at 397.  In its analysis, the Ninth Circuit cited to its

10 decision in *Mendonca*, which held that a State minimum wage statute did not affect rates,

11 routes or services.  *Id.*  In short, several provisions of the concession agreements were

12 determined not to be preempted.[6]

13    For these reasons, *Mendonca* is still the governing law of this Circuit, and controls

14 the application of the ADA preemption provision in this case.

15

16

17 ─────────────────────────────

18 of air carriers' employees for violation of local minimum  wage and overtime pay laws
   not preempted by FAAAA).  The Alaska Supreme Court reached the same conclusion.

19 *Dayhoff v. Temsco Helicopters, Inc.*, 848 P. 2d 1367 (Alaska 1993) (pilot's state wage
   claims not preempted by FAAAA).

20    [6] ASII also cites a cases discussing Florida law, *Tucker v. Hamilton Sundstrand Corp.,*

21 268 F. Supp. 2d 1360 (S.D. Fla. 2003).  The district court held that the ADA preempted
   an aircraft generator repair company employee's Florida Whistleblowers Act claim

22 alleging violation of Federal Aviation Regulations in that company did not have proper

23 written procedures for "rewind" operations in rotor repair division; the claim was related
   to "service of an air carrier."  *Id.* at 1364.  The Tucker case is not helpful because it lacks

24 a detailed analysis regarding the definition of service.

25    ASII points to a Louisiana district court case, *Huntleigh Corp. v. Louisiana State*

26 *Board of Private Security Examiners,* 906 F. Supp. 357, 361 (M.D. La. 1995), which held
   that ADA preempted state laws governing the registration and training of private security

27 officers performing airport screenings.  Since California's wage and hour laws of course
   do not prescribe airline safety provisions that compete with or conflict with the ADA,

28 *Huntleigh* does not apply to this case.

1

2

**C.      Plaintiff's Claim for Meal and Rest Breaks – The Second Claim – Is Not Preempted By The ADA.**

3

4

5

6

7

8

9

10

11

Plaintiff's Second Claim is that Defendant failed to provide statutorily required meal and rest periods at the required times, or compensation for days in which no meal or rest periods were provided.  Cal. Lab. Code §§ 226.7, 512; IWC Wage Order 9-2001 (Pl.'s RJN, Ex. 15), ¶¶ 11-12.  Defendant asserts that complying with these requirements would delay air carriers' services and impact their pricing and routes (Mot. at 15:2), and would hold up planes at the gate (Mot. at 15:4-5).  Defendant also asserts that hiring more employees to avoid these consequences of complying with California law "would result in increased labor costs and associated pricing, passed along to the airlines and ultimately to consumers."  (Mot. at 15:16-16).

12

13

14

15

16

17

18

Like the prevailing wage claim at issue in *Mendonca*, Plaintiff's claim for statutorily-required meal and rest breaks is fundamentally a claim about working conditions that ASII contends will affect its labor costs if it hires more workers in order to comply and maintain its current level of service.  And like wage regulation, regulation of employment labor standards has long been an area of state concern.  *See Hawaiian Airlines, Inc.*, *supra*, 512 U.S. at 252; *Fort Halifax Packing Co., Inc.*, *supra*, 482 U.S. at 21.

19

20

21

22

23

24

25

The similarity between Plaintiff's meal and rest period claim and *Mendonca's* wage-related claims is even more apparent when one considers that in lieu of providing breaks, an employer may compensate an employee for missed breaks.  *See* Cal. Lab. Code § 226.7(b) ("If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.")

26

27

*Mendonca* is in line with that of other district courts finding that the ADA and the FAAAA do not preempt California's meal and rest break requirements:

28

- *Iniguez*, *supra*, CV 07-7181 (C.D. Cal. Sept. 11, 2009) (Pl.'s RJN, Ex. 7).

See discussion above, on page 11.

- In *Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973, 2012 U.S. Dist. LEXIS 165221 (N.D. Cal. Nov. 19, 2012) (Pl.'s RJN, Ex. 9), Judge Wilken of the Northern District denied a motor carrier's motion for summary judgment on the issue of whether the FAAA preempted California's meal and rest period laws.  She stated: "As the Ninth Circuit recognized in *Mendonca*, generally applicable wage protections can affect a motor carrier's prices without falling under the FAAA Act's scope." *Id.*, 2012 WL 5868973 at *6; 2012 U.S. Dist. LEXIS 165221 at *16.  Labor Code sections 226.7 and 512 "apply broadly to all employers in California" and "[n]either provision specifically refers to the motor carrier industry or even remotely resembles the '[t]ypical forms of regulation' that the House Conference Report originally identified as targets of the FAAA Act's preemption clause. *See* H.R. Conf. Rep. No. 103–677 (1994), at 86 (listing state "entry controls, tariff filing and price regulation, and [regulation of] types of commodities carried" as justifications for the Act's preemption clause). *Id.*, 2012 WL 5868973 at *4; 2012 U.S. Dist. LEXIS 165221 at *8.[7]

- In *Dunbar Armored, Inc. v. Rea*, 3:04-cv-602 WQH WMC (S.D. Cal. 2011) (Pl.'s RJN, Ex. 11), Judge Nguyen of the Southern District, also relying on *Mendonca*, *supra*, 152 F. 3d 1184, was convinced by the evidence that the meal and rest break laws did not have a sufficient effect on the defendant's prices, routes, or services; thus, FAAA

---

[7] Numerous state courts have reached the same conclusion.  *See Driscoll et al. v. Granite Rock Company*, Superior Court of California, County of Santa Clara, Case No. 1-08-CV-103426 (Aug. 25, 2011) (Pl.'s RJN, Ex. 13) (relying on *Mendonca*, *supra*, 152 F. 3d 1184, truck drivers' meal period claims not preempted by FAAAA); *Cemex Wage Cases,* JCCP CJC–07–004520 (S.F. Super. Ct. Feb. 19, 2010) (Pl.'s RJN, Ex. 10) (court found "as a matter of law and without the need to consider the factual evidence presented, that Congress did not intend to preempt, under the [FAAAA] . . . California's meal and rest period regulations"); *Morrison v. Knight Transportation, Inc.*, Superior Court of California, County of Tulare, Case No. 228016 (Oct. 1, 2009) (Pl.'s RJN, Ex. 12) (defendant's motion for summary judgment denied, finding "sufficient evidence to show that there are disputed facts as to whether the subject meal break requirement is tenuous, remote or peripheral to carrier 'rates, routes, or services' so as not to have been pre-empted by federal law."

preemption was not found.

- In *Cardenas v. McLane Foodservices*, 796 F. Supp. 2d 1246 (C.D. Cal. July 8, 2011) (Pl.'s RJN, Ex. 17), Judge Carter held genuine issues of material fact existed, as to whether compliance with California meal and rest break laws impacted the motor carrier's price, service and routes, precluding summary judgment on basis of preemption under the FAAAA.

- In *Reinhardt v. Gemini Motor Transport,* 869 F. Supp. 2d 1158 (E.D. Cal. April 25, 2012) (Pl.'s RJN, Ex. 18), Judge Ishii of the Eastern District denied the defendant's motion to dismiss meal and rest break claims as applied to interstate truck drivers because of the "potential importance of evidence beyond the allegations of a complaint in determining FAAAA preemption". *Id.* at 1166.

- In *Bustillos v. Bimbo Bakeries USA, Inc.*, 2009 WL 1765683 2009 U.S. Dist. LEXIS 52009 (N.D. Cal. June 19, 2009) (Pl.'s RJN, Ex. 14), Judge Illston of the Northern District denied, without prejudice, an FAAAA pre-emption-based motion for summary judgment against driver meal and rest break claims.

The cases relied on by Defendant do not help Defendant.  Here, unlike the defendants in *Morales* and similar cases where the ADA was found to preempt the plaintiffs' state law claims, Defendant in this action is not actually an airline.  *See Morales*, *supra*, 504 U.S. 374 (defendant was Trans World Airlines); *Wolens*, 513 U.S. 219 (defendant was American Airlines).  Defendant heavily relies on a district court order finding that ADA preempted claims brought under California's meal and rest break statutes.  (Mot. at 17, n. 8; 18:3-13).  *See Blackwell v. Skywest Airlines, Inc.*, No. 06-0307, 2008 WL 5103195, 2008 U.S. Dist. LEXIS 97955 (S.D. Cal. Dec. 3, 2008).  But *Blackwell* neither cited nor discussed *Mendonca*.  Moreover, the record in *Blackwell* is distinguishable from the record in this case.  *Blackwell* was brought by a Skywest employee who alleged that Skywest — a defendant that directly provided airline service (as opposed to ASII, which only handles ground operations) — failed to provide meal periods or paid rest periods.  Unlike ASII, Skywest presented "robust and

1    uncontroverted" evidence that high labor costs had led Skywest to discontinue services

2    on routes to 16 stations across 11 states, that compliance would likely cause smaller

3    communities to lose access to air transportation, that it would cost over $3,250,000 in

4    additional annual labor costs if Skywest complied with California law, and that to retain

5    profitability Skywest would have to pass labor costs on to the consumer.  *Id.*, 2008 WL

6    5103195 at *18-19; 2008 U.S. Dist. LEXIS 97955 at *51-*53.  There is no such record of

7    price and service effects in this case.

8        Defendant also cites other cases from other California federal district courts that

9    addressed the question of whether the FAAAA preempts California's meal and rest break

10   laws: *Campbell v. Vitran Express, Inc.,* 2012 WL 2317233, 2012 U.S. Dist. LEXIS

11   85509 (C.D. Cal. June 8, 2012); *Aguiar v. Cal. Sierra Express,* 2012 WL 1593202, 2012

12   U.S. Dist. LEXIS 63348 (E.D. Cal. May 4, 2012); *Esquivel v. Vistar Corp.,* 2012 WL

13   516094, 2012 U.S. Dist. LEXIS 26686 (C.D. Cal. Feb. 8, 2012); and *Dilts v. Penske*

14   *Logistics*, 819 F. Supp. 2d 1109 (S.D. Cal. 2011).  In each of these cases, the court held

15   that the FAAAA preempts California's meal and rest break laws.  These cases offer only

16   limited guidance here because none of them recognize the full flexibility that California's

17   meal and rest break laws offer employers.  For instance, the decisions fail to address the

18   fact that an employer may comply with section 226.7's rest break requirement by simply

19   paying its employees an additional hour of wages.[8]  Cal. Lab. Code § 226.7(b); Cal. Code

20   Regs. tit. 8, § 11090(12)(B).  This option allows motor carriers to satisfy the rest break

21   requirement without altering their routes or services whatsoever.  Although the additional

22   wages might have a slight impact on a motor carrier's prices, this impact would not be

23   large enough to raise preemption concerns.  As the Ninth Circuit recognized in

24   *Mendonca,* generally applicable wage protections can affect a motor carrier's prices

25   without falling under the FAAAA's preemptive scope.  152 F. 3d at 1189 (holding that

26

27        [8] *Aguiar* and *Campbell*, for instance, do not mention the wage alternative at all.
     Although *Dilts* and *Esquivel* both briefly acknowledge that this option is available, each
28   dismisses it as not viable without explanation.

1    even if the California's prevailing wage law raised a motor carrier's prices by twenty-five

2    percent, the effect would still be considered "no more than indirect, remote, and tenuous"

3    for the purposes of determining FAAAA preemption).  The wage alternative thus

4    significantly reduces section 226.7's impact on motor carrier prices, routes, and services

5    and undercuts the reasoning of the four cases that Defendant cite, all of which assume

6    that section 226.7 inflexibly requires motor carriers to provide drivers with numerous

7    breaks throughout the day.  *Cf. Dilts,* 819 F. Supp. 2d at 1118 ("The fairly rigid meal and

8    break requirements impact the types and lengths of routes that are feasible.").  Unlike in

9    this case, *Dilts* had the benefit of an evidentiary record that demonstrated the disruption

10   that the meal and rest period laws would have on prices, routes, or services.

11          Because of this wage alternative, the only breaks that employers must actually

12   provide to its employees are the less-frequent meal breaks.  And California law allows

13   even that requirement to be partially waived at the employee's discretion.  Cal. Lab. Code

14   § 512(a) ("meal period may be waived by mutual consent of both the employer and

15   employee").  State regulations also permit employers to provide "on-duty" meal periods

16   when "the nature of the work" makes off-duty meal periods infeasible and the employee

17   consents.  Cal. Code Regs. tit. 8, § 11090(11)(C); see DLSE opinion letter, Sept. 4, 2002

18   (Pl.'s RJN, Ex. 16).  When combined with section 226 .7's wage alternative, these

19   waivers and on-duty meal period options could reduce the overall burden on employers to

20   providing a single thirty-minute break during any six- to twelve-hour shift.[9]  The meal

21   and rest break laws therefore offer employers significantly more flexibility than

22   Defendant would have this Court recognize.

23

24

25      [9] Employees who work more than five hours in a day are entitled to a meal period of

26   at least 30 minutes; and a second meal period of at least 30 minutes if they work more
     than ten hours in a day.  By mutual consent of the employer and employee, employees

27   may: waive a meal break where the work day does not exceed 6 hours; or waive a second
     meal break where the work day is longer than 10 hours but less than 12 hours, and the

28   first meal break was not waived.  Cal. Lab. Code § 512(a).

It is important to stress that even if *Mendonca* did not apply, on the record before this Court by way of judicial notice and what is alleged in the Complaint, there would be no basis to find that Plaintiff's claims are preempted.  ASII does not fly aircraft, is not an air carrier engaged in the transportation of freight or passengers, and is not directly or indirectly owned by an air carrier.  (Def.'s RJN, Ex. 4 at page 370; Ex. 5 at page 38; Ex. 6 at page 212; Ex. 7 at page 269).  Furthermore, Defendant's assertions regarding the impact of requiring ASII to comply with California's meal and rest break laws *are based solely on speculation* – e.g., that the air carriers who contract with ASII would be "competitively disadvantaged either in services, prices or routes because they have elected to provide these services through [ASII]" (Mot. at 14:25-26); that providing meal breaks "delays the carrier's services and impacts pricing in routes" (Mot. at 15:2), and that "staffing would need to be dramatically increased in order to ensure that its cargo agents . . . could be relieved for meal and rest breaks" (Mot. at 11-14).  Defendant fails to provide the contextual facts that would allow a reasonable trier of fact to evaluate these claims.  Defendant's assertions as to the feasibility of compliance are also dubious in light of the fact that on occasion it utilizes a time reporting form for cargo ramp agents to report when they were not provided a meal period, which was used to pay one hour of premium pay when a meal period was not provided.  Compl. ¶ 12.  Also its collective bargaining agreement provides for lunch and rest periods. (Def.'s RJN, Ex. 40 at 5.  *Cf. Air Transport Ass'n*, 266 F. 3d at 1075 (fact that airlines had already begun complying with allegedly preempted statute even though not obligated to do so "further evidences that the costs of providing these benefits are not enough to compel the Airlines to change their routes and services").  And as above, there is no evidence that hiring more employees to avoid service disruptions would affect the prices airlines charge consumers. (Mot. at 15:14-16).  Without any contextual facts — such as the profit margin of the airlines ASII serves, their ability to cut costs in other areas, or their ability to hold prices steady despite higher labor costs — this Court cannot find preemption based on ASII's naked assertion of price effects. *Cf. City & County of S.F.*, *supra*, 266 F. 3d at 1074

1  ("Indeed, the costs of providing the domestic partner employment benefits at issue here

2  — the only costs the Airlines complained about — are a small, if not inconsequential,

3  fraction of the Airlines' costs of flying through SFO."). And as to the effect of

4  compliance on the prices charged by airlines — the only effect that is probably relevant

5  under the ADA preemption provision — is found nowhere in the record.

6       ASII's Motion does not cite any particular part of the record that would establish a

7  "significant effect" on prices. Its Motion makes only a passing mention to the record, by

8  making vague reference to "Plaintiff's own allegations and judicially noticed material".

9  (Mot.15:8): Again, the agency opinions cited by Defendant did *not* conclude that ASII is

10  an air carrier; they determined whether its employees were subject to control by air

11  carriers. (Def.'s RJN, Ex. 4-9). No provision in the ADA parallels the control provision

12  of the RLA, and these agency opinions thus have no relevance to an analysis of the

13  ADA's preemption provision, 49 U.S.C. § 41713(b)(1).

14       Therefore, the ADA does not preempt Plaintiff's First Claim for meal and rest

15  periods. Defendant's Motion should be denied with respect to this claim.

16  **D.  Plaintiff's Other State Claims – The Second, Third, And Fourth – Are**

17  **Not Preempted By The ADA.**

18       Plaintiff's First Claim is for failure to pay minimum wages and proper overtime

19  compensation. (Compl. ¶¶ 24, 29, 53, 76). *See* Cal. Lab. Code §§ 201, 510, 1194.

20  Plaintiff's Third Claim is for failure to pay wages due at termination. *See* Cal. Lab. Code

21  §§ 201-03. Plaintiff's Fourth Claim alleges that the above-discussed violations of

22  California's Labor Code constitute unlawful activity prohibited by California's Unfair

23  Competition Law ("UCL"), California Business & Professions Code section 17200.

24  Defendant erroneously contends that the ADA preempts these claims because complying

25  with California's wage and compensation laws "would have the impermissible effect of

26  relating to a service, price or route of an air carrier." (Mot. at 7:15-16).

27       Plaintiff's claims for minimum wage, overtime compensation, and continuing

28  wages fall squarely within the holding of *Mendonca*. Like the prevailing wage law at

1    issue in that case, Plaintiff's claims go to whether an employer compensated its

2    employees at the legally required rate.  Under *Mendonca*, the ADA does not preempt

3    these types of claims.  Again, even if *Mendonca* were not directly on point, this Court

4    should still deny Defendant's motion for partial judgment on the pleadings based on the

5    record which does not show that compliance with California's employee compensation

6    laws would actually result in a "forbidden significant effect" (Mot. at 9:26) on the prices

7    charged by the airlines that ASII services.

8         In the *Wolens* case, *supra*, a case relied on by Defendant, the Supreme Court held

9    that an Illinois statute similar to the UCL was preempted by the ADA when it was

10   applied to regulate frequent flyer programs.  The Supreme Court characterized the act in

11   that context as "a means to guide and police the marketing practices of the airlines," and

12   found the plaintiff's *claims* (not the entire statute) preempted because the ADA left

13   largely to the airlines "the selection and design of marketing mechanisms."  *Id.* at 228.

14   But in this case the UCL and the California Labor Code, for that matter, are not being

15   used to regulate marketing mechanisms.  Similarly, in the *Morales* case, *supra*, another

16   case relied on by Defendant, the Supreme Court held that the ADA preempted "States

17   from prohibiting allegedly deceptive airline fare advertisements through enforcement of

18   their general consumer protection statutes."  504 U.S. 374, 378 (1992); *see also id.* at 391

19   ("We hold that the fare advertising provisions of the NAAG guidelines are pre-empted by

20   the ADA . . . .").  Again, the Supreme Court did not find preempted *all* claims brought

21   under consumer protection statutes, and in this case Plaintiff's UCL claim and state

22   wage-and-hour claims do not address airline advertising.

23        In sum, the ADA does not preempt Plaintiff's state law claims asserted in his

24   Second, Third, and Fourth Claims.  Defendant's Motion should be denied with respect to

25   these claims.

26        **E.    Plaintiff's Fifth Claim For Federal Overtime Is Not Preempted By The**

27            **RLA.**

28        Defendant argues that Plaintiff's Fifth Claim for federal overtime is preempted by

1   the RLA, on the basis that ASII and its employees are covered by the RLA.  On the

2   contrary, as whether ASII is sufficiently under the direction or control of an airline that it

3   could be considered a "carrier" under the RLA so as to render Plaintiff subject to the

4   FLSA's air carrier exemption is a matter which requires factual development through

5   discovery.  ASII's argument that Plaintiff and the cargo ramp agents at LAX are covered

6   by the RLA rather than the FLSA is premised on the Court accepting ASII's argument

7   that the NMB has already determined that they are covered by the RLA.  ASII attempts to

8   establish this through its Request for Judicial Notice of various NMB determinations

9   involving ASII.[10]  However, those NMB determinations are inapplicable to the claim for

10  federal overtime of the particular group of employees alleged in the Complaint in this

11  matter.

12          Assuming *arguendo* that the NMB determinations would apply to ASII cargo ramp

13  agents at LAX, ASII has misconstrued the nature of these NMB determinations.  In the

14  cited NMB determinations (Def.'s RJN, Ex. 4-7), the NMB concluded that the RLA

15  applied *to particular operations* of ASII only after conducting an investigation into the

16  particular operations at issue.  These determinations did not specifically apply to ASII's

17  cargo ramp agents at LAX.  In these NMB determinations, there was no suggestion that

18  ASII was a "carrier" within the meaning of the RLA; rather in these cases the NMB

19  determined whether ASII's operations were under the direct or indirect ownership or

20  control of a carrier.  (Def.'s RJN, Ex. 4 at page 370; Ex. 5 at page 38; Ex. 6 at page 212;

21  Ex. 7 at page 269).  To make those determinations, the NMB conducted an investigation

22  into the contractual relationships in existence at the time with certain carriers at various

23

24

25

26          _____

27          [10] To the extent that ASII seeks Judicial Notice of the NMB determinations simply to
     make reference to those NMB determinations, Plaintiff has no objection; to the extent,
     however, that ASII seeks to rely on those NMB determinations to convince the Court that
28   the RLA covers the claims of Plaintiff and the putative class, Plaintiff objects.

1    airports.  The NMB did not specifically investigate the work performed by cargo ramp
2    agents at LAX.[11]

3         Thus, the NMB's determinations of whether a non-carrier is subject to RLA
4    jurisdiction because the employer is under the direct or indirect ownership or control of a
5    carrier is a *fact-specific* determination that varies depending on the degree of ownership
6    or control exercised by a carrier in any particular set of circumstances.  Compare, for
7    example, the NMB determination in *Quantem Aviation Services*, 37 NMB 209 (2010)
8    (Pl.'s RJN, Ex. 2).  The employees at issue were ramp agents who worked on aircraft
9    loading and unloading air cargo at St. Petersburg/Clearwater Airport in Clearwater,
10   Florida.  The employer asserted that it was subject to the RLA based on the control of
11   Quantem's operations exercised by UPS Co., which the NMB determined was an RLA
12   carrier.  The NMB declined to assert jurisdiction in *Quantem*, however, finding that the
13   contracts between Quantem and its carrier customer illustrated the lack of significant
14   direct or indirect control between the carrier and the contractor.  Several NMB
15   determinations reach the same conclusion that employees working in the airline industry
16   were not covered by the RLA.[12]  In sum, the NMB determinations cited by ASII do not
17   render Plaintiff and the cargo ramp agents working at LAX during the relevant period to
18   be under the jurisdiction of the RLA.

19        Therefore, Plaintiff's Fifth Claim for overtime is not preempted by the RLA.

20

21        [11] Instead, the airports included Detroit Metropolitan Airport in 2004 (Def.'s RJN, Ex.
22   4), LaGuardia Airport, Flushing New York in 2004 (Def.'s RJN, Ex. 5), Pittsburgh
     International Airport in 2006 (Def.'s RJN, Ex. 6), and Albuquerque International Airport
23   in 2006 (Def.'s RJN, Ex. 7).
24        [12] See also, *Aero Port Services, Inc.*, 40 NMB 139 (2013) (Pl.'s RJN, Ex. 3) (cargo
25   security employees at LAX not subject to RLA); *Huntleigh USA Corp.,* 40 NMB 130
     (2013) (Pl.'s RJN, Ex. 4) (cargo security employees at George Bush Intercontinental
26   Airport in Houston, Texas not subject to RLA); *Air Serv Corporation*, 39 NMB 54 (2012)
     (Pl.'s RJN, Ex. 5) (shuttle service employees at La Guardia Airport not subject to RLA);
27   *Boston MedFlight*, 38 NMB 52 (2010) (Pl.'s RJN, Ex. 6) (nurses and paramedics at
28   Hascom Airforce Base in Bedford, Massachusetts and Plymouth Airport in Plymouth,
     Massachusetts not subject to RLA).

1   Defendant's Motion should be denied with respect to this claim.

2       **F.    California's Overtime Requirements Apply Despite ASII's Assertion**

3             **That A Collective Bargaining Agreement Was Entered Into Under The**

4             **RLA.**

5           ASII argues that California's overtime requirements do not apply because there is a

6   collective bargaining agreement entered into under the RLA.  ASII is incorrect.  First, as

7   discussed above, whether the RLA applies to Plaintiff remains to be proven on a case-by-

8   case basis.  Second, even if the RLA does apply to Plaintiff, the RLA would not preempt

9   Plaintiff's overtime claims under state law because the source of Plaintiff's right to

10  overtime compensation is independent of the collective bargaining agreement.  *Norris*,

11  *supra*, 512 U.S. at 258 (relying on NLRA precedent).  The Supreme Court determined:

12  "Where a state cause of action merely requires a court to consult a collective bargaining

13  agreement, for example to determine an employee's rate of pay, federal labor law does

14  not require preemption."  *Livadas v. Bradshaw,* 512 U.S. 107 (1994) (NLRA).  The Ninth

15  Circuit has further clarified that simply consulting a collective bargaining agreement does

16  not require preemption if the meaning of a contract term is not in dispute.  *Gregory v.*

17  *SCIE, LLC,* 317 F. 3d 1050, 1052 (9th Cir. 2003).  Referring to a collective bargaining

18  agreement to ascertain bargained-for wage rates does not warrant preemption.  *Burnside*

19  *v. Kiewit Pac. Corp.,* 491 F. 3d 1053, 1060 (9th Cir. 2007).

20          Third, Defendant is not excepted from complying with California Labor Code

21  section 510 because the collective bargaining agreement governing Plaintiff's

22  employment does not meet all of the requirements set forth in section 514.[13]  Because,

23  ASII's collective bargaining agreement does not provide premium wage rates for all

24  overtime hours worked, Labor Code section 514 does not exempt Defendant from

25  _____

26      [13] Sections 510 and 511 do not apply to an employee covered by a valid collective

27  bargaining agreement if the agreement expressly provides for the wages, hours of work
    and working conditions of the employees, and if the agreement provides premium wage
    rates for *all* overtime hours worked and a regular hourly rate of pay for those employees

28  of not less than 30% more than the state minimum wage.

OPP'N TO MOT. FOR PARTIAL JUDGMENT ON THE PLEADINGS

compliance with Labor Code section 510.[14]  Therefore, the RLA does not preempt the California's overtime requirements on this basis.

### G. Even If The ADA's Or RLA's Preemptive Reach Extended To ASII, Which It Does Not, ASII's Motion Should Be Denied Because Further Discovery Would Be Required

The cases discussed above clearly suggest a finding that California's wage laws, including its meal and rest break laws, are not preempted under the ADA or RLA.  As discussed above, ASII's evidence does not come close to overcoming that finding.  *See* Fed. R. Civ. P. Rule 56.[15]  Even if the Court were to determine that the ADA could preempt California's meal and rest break laws when the defendant is not *itself* an airline, discovery would be required on the impact that ASII's compliance would have on the prices, service, and routes of the airlines that it serves.

### CONCLUSION

For the foreign reasons, Plaintiff's claims are not preempted.  The Court should deny Defendant's motion for partial judgment on the pleadings in its entirety.

DATED:  March 13, 2013                    LAW OFFICE OF JONATHAN RICASA

                                          /S/ - Jonathan Ricasa
                                          Jonathan Ricasa
                                          Attorney for Plaintiff Christopher Perry

---

[14] In *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, 2013 U.S. Dist. LEXIS 22423 (N.D. Cal. 2013), a case cited by ASII, the district court reached the same conclusion. The district court dismissed the plaintiff's overtime claim "insofar as the overtime claim is premised on violation of Wage Order 9-2001" but "*[t]he Court disagree[d] with Defendant that Plaintiffs' overtime claim should be dismissed with respect to California Labor Code section 510.*"  *Id.*, 2013 WL 622032 at \*4-\*5, 2013 U.S. Dist. LEXIS 22423 \*13-\*14 (emphasis added).

[15] Federal Rule of Civil Procedure Rule 56 provides: "If, on a motion for judgment on the pleadings, matter outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."