1  TERESA R. TRACY, ESQ. (SBN 89609)
   Email: ttracy@gladstonemichel.com
2  GLADSTONE MICHEL
   WEISBERG WILLNER & SLOANE, ALC
3  4551 Glencoe Avenue, Suite 300
   Marina del Rey, CA 90292-7925
4  Tel: (310) 821-9000 • Fax: (310) 775-8775

5  Attorneys for Defendant
   AIRCRAFT SERVICE INTERNATIONAL, INC.
6

7  KEITH A. JACOBY, ESQ. (SBN 150233)
   Email: kjacoby@littler.com
8  LITTLER MENDELSON P.C.
   2049 Century Park East, 5th Floor
9  Los Angeles, CA 90067-3107
   Tel: (310) 553-0308 • Fax: (310) 553-5583
10
11 Co-Counsel for Defendant
   AIRCRAFT SERVICE INTERNATIONAL, INC.
12

13                **UNITED STATES DISTRICT COURT**

14                **CENTRAL DISTRICT OF CALIFORNIA**

15

16 CHRISTOPHER PERRY,                )  CASE NO. CV13-00059-SVW (AGRx)
   individually and on behalf of all )
17 others similarly situated,        )  **NOTICE OF MOTION AND MOTION**
                                      )  **OF DEFENDANT AIRCRAFT**
18                Plaintiff,          )  **SERVICE INTERNATIONAL, INC.**
                                      )  **FOR SUMMARY JUDGMENT OR, IN**
19 vs.                               )  **THE ALTERNATIVE, PARTIAL**
                                      )  **SUMMARY JUDGMENT**
20 AIRCRAFT SERVICE                  )
   INTERNATIONAL, INC. and DOE       )  ***Under Separate Cover:***
21 ONE THROUGH AND                   )  ***(1) Declarations of Tony Lefebvre, Brian***
   INCLUDING DOE ONE                 )  ***Davis, Guillermo Marron, and Teresa R.***
22 HUNDRED,                          )  ***Tracy; (2) (Proposed) Separate***
                                      )  ***Statement; (3) Request for Judicial***
23                Defendants.        )  ***Notice; (4) (Proposed) Judgment***
                                      )
24 _____ )  Date:     November 17, 2014
                                      )  Time:     1:30 p.m.
25                                    )  Ctrm:     6
26
27
28

57381 Notice and MSJ-f.docx                    1

1   TO PLAINTIFF AND TO HIS COUNSEL OF RECORD:

2   NOTICE IS HEREBY GIVEN that on November 17, 2014, at 1:30 p.m., or as

3   soon thereafter as the matter may be heard, in Courtroom 6 of the above-entitled

4   court located at 312 N. Spring Street, Los Angeles, CA 90012, Defendant Aircraft

5   Service International, Inc. ("ASII") will and hereby does move the Court, pursuant to

6   Rule 56 of the Federal Rules of Civil Procedure, for summary judgment or, in the

7   alternative, partial summary judgment in its favor and against Plaintiff Christopher

8   Perry on the causes of action contained in Plaintiff's Complaint for Damages filed on

9   November 30, 2012.

10   ASII bases this motion on the ground that the Complaint, and each of the causes

11   of action in the Complaint, have no merit, and that based on the uncontroverted facts,

12   ASII is entitled to judgment as a matter of law on the entire Complaint.

13   In the alternative, ASII moves for partial summary judgment in its favor as to the

14   following causes of action and issues:

16   1.   Plaintiff's purported First, Second, Third, and Fourth Causes of Action,

17   all of which are claims brought under California state law, are

18   preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C.

19   §41713; and/or

20   2.   Plaintiff's purported First, Second, Third, and Fourth Causes of Action,

21   all of which are claims brought under California state law, are

22   preempted by the federal Interstate Commerce Clause;

23   3.   Plaintiff's purported Fifth Cause of Action (violation of Fair Labor

24   Standards Act, 29 U.S.C. §202, *et seq.*) alleging the failure to pay

25   overtime, fails because it is preempted by the Railway Labor Act

26   ("RLA"), 45 U.S.C. §151, et seq.; and/or

27   4.   Plaintiff's purported First, Second, Third, and Fourth Causes of Action,

28   are also not viable because they require the interpretation of an RLA-

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57381 Notice and MSJ-f.docx

2

covered collective bargaining agreement; and

5.   Plaintiff's Third Cause of Action, for state waiting time penalties, is also not viable because ASII has had a reasonable, good faith belief that state break and overtime requirements are preempted and because ASII paid all wages concededly due upon termination.

The uncontroverted facts and conclusions of law relied upon in support of this motion are set forth in ASII's Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.

This motion *only* addresses the preemption issues raised in the motion. ASII does not waive, and specifically reserves, the right to file a motion on the merits at a later time.

This motion is made following the conferences of counsel pursuant to Local Rule 7-3. Tracy Declaration, paragraph 2.

This motion is, and will be, based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities and Request for Judicial Notice in support thereof; the Statement of Uncontroverted Facts and Conclusions of Law filed herewith; the Declarations of Tony Lefebvre, Brian Davis, Guillermo Marron, and Teresa R. Tracy filed herewith; the pleadings and records on file in this action, and such other argument or evidence as the Court permits.

DATED: October 14, 2014

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

By: _____
TERESA R. TRACY
Attorneys for Defendant
AIRCRAFT SERVICE INTERNATIONAL, INC.

3

# TABLE OF CONTENTS

Page

1.   ALL OF PLAINTIFF'S CLAIMS ARE EITHER PREEMPTED OR OTHERWISE NOT VIABLE. ........................................................................ 1

2.   THE UNCONTROVERTED FACTS ESTABLISH PREEMPTION. ..................... 2

    A.   ASII's Services Are Traditionally Performed by Air Carriers. ........................ 2

    B.   The Air Carriers Exert Very Close Control over ASII's Services. ................... 3

    C.   ASII Must Adhere to Tight but Unpredictable Schedules. ................................ 3

    D.   The Reasons Air Carriers Who Use ASII Support Preemption ........................ 4

    E.   Strict Compliance with the State Break and Other Laws at Issue Would Significantly Impact the Services, Routes and Prices of Air Carriers. ............... 5

3.   SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE. ............................ 7

4.   THE ADA'S BROAD PREEMPTION APPLIES TO EVERY ACTIVITY SUCH AS THOSE INVOLVED HERE THAT DIRECTLY OR INDIRECTLY AFFECT A SERVICE, ROUTE, OR PRICE. ..................................................... 7

    A.   The Law and Supreme Court Precedent Establish Preemption. ...................... 7

    B.   Numerous Courts Have Correctly Held That California's Meal and Rest Break Requirements Are Preempted. .............................................................. 10

    C.   Requiring ASII to Comply with State Law Affects Services, Routes and Prices In an Impermissible Way. ................................................................... 15

    D.   ADA Preemption Extends to Providers Such as ASII. ................................... 18

5.   THE ICC ALSO PRECLUDES PLAINTIFF'S STATE CLAIMS. ........................ 22

6.   THE RLA PREEMPTS THE FEDERAL OVERTIME CLAIM. ............................ 23

7.   PLAINTIFF'S STATE CLAIMS FAIL BECAUSE HIS RLA CBA REQUIRES INTERPRETATION. ........................................................................................ 23

8.   PLAINTIFF'S WAITING TIME PENALTY CLAIM FAILS. ................................ 25

9.   CONCLUSION. ................................................................................................. 25

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1

# TABLE OF AUTHORITIES

Page

**Cases**

*ABC Charter, Inc. v. Bronson,*
  2009 U.S. Dist. LEXIS 312l83, *12 (S.D. Fla. 2009) .................................21

*Adames v. Executive Airlines, Inc.,*
  258 F.3d 7 (1st Cir. 2001).............................................................................24

*Air Transport Ass'n of Am. v. City & County of San Francisco,*
  266 F.3d 1064 (9th Cir. 2001) ......................................................................8

*Aircraft Serv. Int'l Group v. Teamsters Local 117,*
  742 F.3d 1110 (9th Cir. 2014) ....................................................................23

*Allis-Chalmers Corp. v. Lueck,*
  471 U.S. 202 (1985) ....................................................................................24

*American Airlines Inc. Privacy Litigation, In re,*
  370 F.Supp.2d 552 (N.D. Tex. 2005) .........................................................21

*American Airlines, Inc. v. Wolens,*
  513 U.S. 219 (1995) ..................................................................................8, 9

*American Trucking Assns., Inc. v. Los Angeles,*
  133 S.Ct. 2096 (2013).............................................................................10, 15

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 91 L.Ed.2d 202 (1986)..........................................................7

*Angeles v. US Airways, Inc.,*
  2013 U.S. Dist. LEXIS 22423 (N.D. Cal., Feb. 19, 2013) ..................11, 24

*Azubuko v. Bd. of Dirs. British Airways,*
  101 F.3d 106 (1st Cir. 1996)........................................................................8

*Barnhill v. Robert Saunders & Co.,*
  125 Cal.App.3d 1 (1981) ............................................................................25

*Blackwell v. SkyWest Airlines, Inc.,*
  2008 U.S. Dist. LEXIS 97955 (S.D. Cal. 2008) ........................8, 11, 17, 24

*Branche v. Airtran Airways, Inc.,*
  342 F.3d 1248 (11th Cir. 2003) ...............................................................8, 21

*Brinker Restaurant Corp. v. Superior Court,*
  53 Cal.4th 1004 (2012)..........................................................................5, 6, 10

*Brown v. United Airlines, Inc.,*
  720 F.3d 60 (1st Cir. 2013).........................................................................10

*Buck v. American Airlines, Inc.,*
  476 F.3d 29 (1st Cir. 2007).........................................................................17

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

*Calop Business Systems, Inc. v. City of Los Angeles,*
2013 U.S. Dist. LEXIS 169483 (C.D. Cal., Oct. 30, 2013)..................................21

*Campbell v. Vitran Express, Inc.,*
No. 12-56250 (Sept. 9, 2014) (unpublished) ...........................................13

*Chukwu v. Bd. of Dirs. British Airways,*
889 F.Supp. 12 (D. Mass. 1995) ..........................................................8

*Continental Airlines, Inc. v. American Airlines, Inc.,*
824 F.Supp. 689 (S.D. Tex. 1993) ........................................................21

*Cunningham v. Jet Aviation Flight Servs., Inc.,*
2013 U.S. Dist. LEXIS 58401 (D.N.J., April 24, 2013)................................12

*Dan's City Used Cars, Inc. v. Pelkey,*
133 S.Ct. 1769 (2013)........................................................................10

*Deep Vein Thrombosis, In re*
2005 U.S. LEXIS 4043 (N.D. Cal. 2005) ...............................................17

*Detomaso v. Pan American World Airways, Inc.,*
43 Cal.3d 517 (1987) ........................................................................24

*DiFiore v. American Airlines,*
646 F.3d 81 (1st Cir. 2011) ..........................................................11, 19

*Dilts v. Penske Logistics, Inc.,*
__ F.3d __, (September 9, 2014) ....................................................13, 15

*Fed. Express Corp. v. Cal. Pub. Utils. Comm'n,*
936 F.2d 1075 (9th Cir. 1991) ...........................................................20

*Firestone v. So. Cal. Gas Co.,*
281 F.3d 801 (9th Cir. 2002) .............................................................24

*Fitz-Gerald v. Skywest Airline, Inc.,*
155 Cal.App.4th 411 (2007) .........................................................23, 24

*Hallock v. National Aviation Services, LLC,*
State of Rhode Island Div. of Labor Standards, Claim Nos. LS:11-485, et al. ..........21

*Harris v. Pac Anchor Transportation Inc.,*
S194388 (Cal.S.Ct., July 28, 2014) ....................................................14

*Hodges v. Delta Airlines, Inc.,*
44 F.3d 334 (5th Cir. 1995) ...............................................................8

*Huntleigh Corp. v. La. State Bd. of Private Security Examiners,*
906 F.Supp. 357 (M.D. La. 1995) ......................................................20

*Jones v. Spherion Staffing, LLC,*
2012 U.S. Dist. LEXIS 112396 (C.D. Cal., 2012) ..................................25

*Kirby v. Immoos,*
53 Cal.4th 1244 (2012) ................................................................17, 25

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

*Korean Airlines, In re,*
  642 F.3d 685 (9th Cir. 2011) .................................................................19

*Lyn-Lea Travel Corp. v. American Airlines,*
  283 F.3d 282 (5th Cir. 2002) ................................................................21

*Marlow v. AMR Services Corp.,*
  870 F.Supp. 295 (D. Haw. 1994)...........................................................20

*Massachusetts Delivery Association v. Coakley,*
  ___F.3d ___, (Sept. 30, 2014) ..............................................................14

*Miller v. Southwest Airlines Co.,*
  923 F.Supp.2d 1206 (N.D. Cal. 2013) ..................................................12

*Mitchell v. US Airways, Inc.,*
  2012 U.S. Dist. LEXIS 96719 (D. Mass. 2012) ...................................19

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) ..............................................................8, 9, 18

*Musick v. Burke,*
  913 F.2d 1390 (9th Cir. 1990) .................................................................7

*N.H. Motor Transp. Ass'n v. Rowe,*
  448 F.3d 66 (1st Cir. 2006) ...................................................................19

*Nat'l Fed'n of the Blind v. United Airlines, Inc.,*
  2011 U.S. Dist. LEXIS 44366 (N.D. Cal. 2011) ...............................8, 10

*Nelson v. Alaska Airlines, Inc.,*
  2013 Cal.App. Unpub. LEXIS 4485 (June 25, 2013).............................19

*Northwest, Inc. v. Ginsberg,*
  134 S.Ct. 1422 (2014) .............................................................................9

*Rivera v. Phillip Morris, Inc.,*
  395 F.3d 1142 (9th Cir. 2005) .................................................................7

*Rowe v. N.H. Motor Transp. Ass'n,*
  552 U.S. 372 (2008) ................................................................................8

*Sanchez v. Aerovias De Mexico, S.A. DE C.V.,*
  590 F.3d 1027 (9th Cir. 2009) ..........................................................17, 20

*Sanchez v. Lasership, Inc.,*
  2013 U.S. Dist. LEXIS 49174 (E.D. Va., April 4, 2013) .......................19

*Smith v. Comair, Inc.,*
  134 F.3d 254 (4th Cir. 1998) ...................................................................8

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,*
  73 F.3d 1423 (7th Cir. 1996) ...................................................................8

*Triton Energy Corp. v. Square D. Co.,*
  68 F.3d 1216 (9th Cir. 1995) ...................................................................7

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57381 Notice and MSJ-f.docx

iv

*Tucker v. Hamilton Sunstrand Corp., Inc.,*
   268 F.Supp.2d 1360 (S.D. Fla. 2003) ....................................................................20

*United States v. Lopez,*
   514 U.S. 549 (1995) ...........................................................................................23

### Statutes

45 U.S.C. §181 ......................................................................................................23

49 U.S.C. §13102(23)(B) .........................................................................................7

49 U.S.C. §40102(a)(2) ...........................................................................................18

49 U.S.C. App. §1305(a) .........................................................................................18

Federal Aviation Administration Authorization Act of 1994,
Pub.L. No. 103-305, Title VI, §601(b)-(c), 108 Stat. 1569, 1605-06 (1994) (49 U.S.C.
§§14501(c)(1), 41713(b)(4)(A)) ................................................................................8

IWC Wage Order 9(2)(N) ......................................................................................5, 6

Labor Code §226.7 .............................................................................................5, 6

Labor Code §512(a) .................................................................................................5

Labor Code §553 ...................................................................................................5

### Rules

Fed. R. Civ. P. 56(c) ...............................................................................................7

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

**CV13-00059-SVW (AGRx)**
**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. ALL OF PLAINTIFF'S CLAIMS ARE EITHER PREEMPTED OR OTHERWISE NOT VIABLE.

Plaintiff sues his employer, Aircraft Service International, Inc. ("ASII"), on behalf of himself and a putative class of co-cargo ramp agents who worked in Department 145 at Los Angeles International Airport ("LAX"). He seeks compensation and penalties for meal and rest breaks that would only be due under state law, so the issue becomes whether California's break requirements are preempted by federal law. In mid-2013, the Court denied ASII's motion to dismiss all of Plaintiff's claims based on preemption, but invited ASII to renew its arguments supported by evidence rather than solely on the mere allegations of Plaintiff's complaint. The uncontroverted evidence submitted with this motion establishes that preemption applies to these claims. Therefore Plaintiff's action cannot succeed.

Air carrier flight operations, including the cargo air transportation involved in this case, are a carefully choreographed sequence of tasks performed pursuant to tight but unpredictable schedules set solely by air carriers that change by the minute due to weather, equipment problems, air traffic control delays, flight diversions and other reasons. These tasks demand close and careful coordination because they occur in a combination of sequenced and parallel modalities. An air carrier's success depends on synchronized contributions from numerous parties including air traffic control, flight and ground crews, service providers, fuelers, and even other air carriers whose own flight snafus can have a disruptive cascade effect. By avoiding flight delays and using a service provider such as ASII, an air carrier can maximize the quality of its service, reduce costly delays, and maintain competitive prices on expanded routes, which benefits all who use air transportation.

ASII provides flight services to air carriers, including the cargo ramp services involved in this case. Its symbiotic relationship with air carriers make ASII an integral part of the air transportation industry – a segment long recognized for fierce

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

competition over service, routes and prices – and an important contributor to the success of its air carrier customers.

Congress recognized the unique need of the air transportation industry to be free from state regulations that might adversely impact competition by regulating service, routes, or price. To prevent a patchwork of statutes affecting such matters, the Airline Deregulation Act of 1978 ("ADA"), Pub. L. No. 95-504 §4(a), 92 Stat. 1705, 1708 (1978)(currently codified, as amended, at 49 U.S.C. §41713(b)(1)), has long prohibited states from enacting or enforcing any laws or regulations directly or indirectly "related to" an air carrier's services, routes, or prices. This ADA preemption is equally applicable whether the air carriers themselves engage in the activities or whether they contract with service providers such as ASII to do so. Because the ADA applies to ASII's work cargo ramp services at issue in this case, it preempts all of Plaintiff's state claims. Alternatively, the federal Interstate Commerce Clause preempts all of Plaintiff's state claims.

Similarly, in enacting the Railway Labor Act ("RLA"), 45 U.S.C. §151, et seq., Congress specifically recognized the need for federal preemption of certain employment claims, including federal overtime and derivative claims such as those asserted in this action. Under the RLA, a state claim that calls into question the interpretation of a collective bargaining agreement ("CBA") is also preempted by federal law. RLA preemption applies here because ASII is covered by the RLA and the two CBAs that cover Plaintiff require interpretation vis-a-vis his state claims.

Lastly, Plaintiff cannot establish he is entitled to waiting time penalties.

## 2.   THE UNCONTROVERTED FACTS ESTABLISH PREEMPTION.

### A.   ASII's Services Are Traditionally Performed by Air Carriers.

ASII provides services at LAX and six other airports in California. ASII contracts directly with international, national, and regional commercial air carriers to perform tasks that are traditionally performed by the air carriers' own employees. The air transportation industry is the only industry serviced by ASII. ASII provides three main

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

services to air carriers: ground service including cargo ramp service; into-plane fueling; and maintenance and fuel-related services. (UF 1-46, 59-65)[1] These services are part of a seamless and ongoing air transportation process.

Plaintiff, a cargo ramp agent, worked on a small ASII crew that provided a range of services directly related to air cargo transportation around, on, and inside the carrier's aircraft.[2] The cargo ramp agent crew's tasks include towing and marshaling the aircraft on the ramp; inspecting the aircraft; positioning and operating equipment in close proximity to the aircraft; operating locks and cargo-moving controls that were part of, and inside, the aircraft; unloading, loading, and accounting for the cargo; operating equipment to help start the aircraft's engines; and pushing back and marshaling the aircraft away from the ramp. (UF 1-46, 59-65)

## B.  The Air Carriers Exert Very Close Control over ASII's Services.

Two consequences flow from the fact that ASII and its cargo ramp agents such as Plaintiff provide cargo ramp services traditionally performed by the air cargo carriers' own employees: (a) ASII's business model is designed around servicing the needs of its cargo air carriers and in particular providing services that meet the performance standards demanded by those air carriers; and (b) the cargo air carriers exert continuous and close control over ASII's services and its cargo ramp agents in ways that actually or potentially directly affected Plaintiff. (UF 1-46, 59-65)

## C.  ASII Must Adhere to Tight but Unpredictable Schedules.

Every cargo air carrier requires that ASII meet the carrier's tight and unforgiving but ever-changing schedules; the cargo air carriers set strict limits on the time permitted for ASII to unload and load cargo. However, the actual arrival of any given cargo flight is highly unpredictable due to factors outside of ASII's control, and often

---

[1] "UF" refers to the Undisputed Facts.

[2] Department 145 at LAX, the department in which Plaintiff worked, closed at the end of 2013. (UF 14) The issue of preemption remains ongoing due Plaintiff's claims, and the possibility that ASII may in the future provide such services.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  outside of the control of the air carriers themselves, whether due to delays in the
2  arrival of the cargo to be transported, or changes in flight schedules due to weather or
3  traffic control. Until the aircraft arrives at the ramp, ASII cannot know the nature,
4  volume, or packaging requirements of the cargo that ASII's crews are required to
5  unload or load. The unpredictability of these variables impacts the time required to
6  load and unload the aircraft. Notwithstanding the foregoing, the air carriers still
7  require ASII to meet the air carrier's unloading/loading time limits. Air carriers rely on
8  ASII's ability to provide cargo ramp agents in sufficient number and with the correct
9  training on short notice regardless of intervening changes to flight schedules. Due to
10  the nature of these demands, cargo ramp agents' schedules are also highly
11  unpredictable. (UF 1-46, 59-65)

12      Delays are very costly to air carrier customers, and even a short delay has a signifi-
13  cant cascade effect. A delay can cause significant harm to the cargo itself, and result in
14  even further cargo delays if LAX is not the cargo's final destination. If there is time-
15  sensitive cargo waiting for the aircraft at its next stop, a delay at LAX could be
16  detrimental to that cargo as well. If a delayed aircraft blocks a ramp or runway, it may
17  block the use of that ramp or runway for other landing and departing flights, including
18  the flights of other carriers at the same or other airports around the world. Delay in
19  cargo unloading or loading can delay an aircraft, triggering this cascade effect. Delays
20  can and do result in increased significant costs to air carriers. Therefore, cargo air
21  carriers, who also work within the logistical confines of airport traffic and
22  unpredictability, seek to avoid delay from any corner, including any delay caused by
23  ASII. This is true regardless of why ASII may have caused a delay, and extends to a
24  cargo ramp agent or crew who stops working even if claiming entitlement to a state
25  law-mandated break of rigid length and at rigid times. (UF 8-13, 35, 43, 59-62)

26  **D.  The Reasons Air Carriers Who Use ASII Support Preemption.**

27      Air carriers traditionally used their own employees to do the support activities now
28  done by ASII. As air carriers face increasing competitive pressure to keep prices low

and maintain service and routes, they have increasingly turned to ASII and similar providers to more cost-effectively provide facilities, equipment, and employees. There are many reasons an air carrier might decide to provide their cargo services by using ASII. The ability of several air carriers to each leverage ASII's facilities, equipment, and employees at a lower per-air carrier cost than if the air carrier had to have its own equipment, facilities, and employees is significant. This allows the air carriers to provide both quality and more cost-effective service, routes, and prices to their customers. The air carriers' sensitivity to pricing is so great that ASII has lost a number of customers at LAX alone based on differences of fractions of cents. In addition, most carriers' sensitivity to delays and the impact of delays is amply evidenced by the hefty penalties that they impose on ASII for any delay attributable to ASII. (UF 2, 34, 59-65)

**E. Strict Compliance with the State Break and Other Laws at Issue Would Significantly Impact the Services, Routes and Prices of Air Carriers.**

Due to the exigencies of the air carrier cargo business, ASII cannot practicably comply with California's rigid meal[3] and rest[4] break requirements in the manner

---

[3] An employer may not employ an employee for a work period of more than 5 hours per day without providing the employee with a meal period of at least 30 uninterrupted minutes (net) during which the employee is relieved of all duties and free to leave the premises, or for more than 10 hours per work period without providing a second 30-minute meal period unless the total hours worked is not more than 12 hours. The first meal break must occur no later than 4 hours, 59 seconds after the employee started work, and the second meal break must occur no later than 9 hours and 59 seconds after the employee started work. There are very limited exceptions to these requirements, i.e.: (1) the employee may voluntarily consent to waive the first meal break if one hour or less will end the shift; (2) the employee may voluntarily consent to an "on duty" paid meal break under very limited conditions; (3) the employee may voluntarily waive the second meal break but only if the first meal break was not waived. A violation of the meal break requirements, which includes a shortened meal break, an interrupted meal break, or a meal break that is not compliant with the timing requirements, is not only a misdemeanor but subjects the employer to a one-hour penalty payment to the employee per day. An employer may not pressure, much less require, an employee to waive any meal break or enter into any of the possible voluntary agreements. Labor Code §§226.7, 512(a), 553; IWC Wage Order 9(2)(N), (11); *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004 (2012).

[4] An employer must provide each employee with 10 minute paid rest periods (net) for work shifts from 3.5 to 6 hours in length, 20 minutes (2 separate breaks) for shifts of more than 6 hours up to 10 hours, 30 minutes (3 separate breaks) for shifts of more than 10 hours up to 14 hours, and so on. Rest breaks must, as far as is practicable, be provided in the middle of each work period. A rest period can only be waived if the employee voluntarily decides to do so. A violation of the rest break requirements, which includes a shortened rest break or an

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

contemplated by the Labor Code without significantly and adversely impacting the services, prices or routes of its cargo air carrier customers. State-mandated meal breaks have several rigid requirements that make them completely incompatible with the unpredictability of cargo air transportation and the air carriers' tight flight schedules: meal breaks are required when an employee has worked a specific number of hours even if the employee was not originally scheduled or reasonably anticipated to work that number of hours and regardless of whether that point comes during a time-critical point; meal breaks must be for a net minimum number of minutes regardless of time-critical operational exigencies; meal breaks must be taken no later than specific times during the work period regardless of whether that occurs during time-critical points in the operations; the employee must be allowed to leave the work area and engage in personal activities for the net length of the break.

State-mandated rest breaks have similar problems in the context of air transportation: they are required when an employee has worked a specific number of hours regardless of original schedule or unforeseen additional time worked; they must be for a net number of minutes; while there is some flexibility in the timing of breaks, they must generally be in the middle of the work period.

Here, ASII cannot unilaterally extend the operations window for cargo ramp services. ASII has no ability to schedule flights, require that the cargo flights arrive at the cargo ramp at a specific time, or control the availability of load-ready cargo at the air carrier's warehouse for loading. A delay of the cargo flight attributable to ASII has a deleterious and unacceptable impact on the cargo air carriers, the cargo, and the persons sending or receiving the cargo. The nature of the cargo ramp services does not allow for work to stop or the staggering of breaks as ways to comply with state meal

---

interrupted rest break, is not only a misdemeanor but subjects the employer to a one-hour penalty payment to the employee per day. An employer may not pressure, much less require, an employee to waive any rest break. Labor Code §§226.7. IWC Wage Order 9(2)(N), (12). *Brinker, supra.*

GLADSTONE MICHEL
WEISBERG, WILLNER & SLOANE, ALC

1  and rest break laws. Paying break-related penalties is prohibitive and would have to be

2  passed along to the cargo air carriers. "Staffing up" to provide coverage during breaks

3  is similarly cost-prohibitive and would have to be passed on to the cargo air carriers.

4  In short, while ASII tried to provide breaks, if ASII has to guarantee vigorous

5  compliance by allowing each of the cargo ramp agents to stop work for rigidly-defined

6  periods at rigidly-specific times, it would have a significant adverse impact on the air

7  carriers' services, routes, and prices. (UF 1-48, 51-52, 56, 59-74, 78)

**3.   SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE.**

Summary judgment is appropriate because the pleadings and evidence show that there is no genuine issue as to any material fact and that ASII is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Plaintiff must raise a genuine issue of material fact on an issue on which he has the burden of proof. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990); *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216 (9th Cir. 1995); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 250-251, 91 L.Ed.2d 202 (1986). A "mere scintilla" of evidence supporting Plaintiff's position is insufficient. *Rivera v. Phillip Morris, Inc.,* 395 F.3d 1142, 1146 (9th Cir. 2005).

**4.   THE ADA'S BROAD PREEMPTION APPLIES TO EVERY ACTIVITY SUCH AS THOSE INVOLVED HERE THAT DIRECTLY OR INDIRECTLY AFFECT A SERVICE, ROUTE, OR PRICE.**

**A.   The Law and Supreme Court Precedent Establish Preemption.**

The ADA explicitly and broadly preempts state law:

> [A] State … may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier that may provide air transportation[5] under this subpart. (49 U.S.C. §41713(b)(1))

The statute is written in the disjunctive. As long as an impermissible, direct or indirect

---

[5] 49 U.S.C. §13102(23)(B) defines "transportation" in relevant part as "services related to th[e] movement" of property, "including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration . . . storage, handling, packing, unpacking, and interchange of passengers and property."

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

effect exists as regards service[6], route, *or* price, then the ADA preempts the state law.

Finding preemption is the only conclusion that is consistent with Supreme Court precedent. The Supreme Court has repeatedly and consistently interpreted and applied the ADA's preemption provision broadly to find preemption, consistent with the intent of the law. In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992), the Court held that the ADA expresses a broad preemptive purpose that displaces all state laws that fall within its sphere, including state laws that are consistent with its substantive requirements. *Id.,* at 386-387. According to the Court, the law's purpose is to ensure that the states will not undo federal deregulation with their own regulations. *Id.,* at 378. It concluded that certain state consumer protection laws relating to airline fare advertising are therefore preempted. Congress expressly endorsed the holding in *Morales* when it recodified Title 49, noting that it "did not intend to alter the broad preemptive interpretation adopted by the U.S. Supreme Court in *Morales* …." H.R. Conf. Rep. No. 103-677 at p. 83 (1993). A year after this sweeping endorsement and recodification, the Court reiterated the broad scope of ADA preemption in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 229 (1995), and applied it to preempt a consumer challenge to an air carrier's frequent flyer program. Any doubt about the broad reach of ADA preemption is further resolved by *Rowe, supra,* in which the Court held that the FAAAA[7] preempted state regulation of in-state tobacco shipments. It held that

---

[6] "Service" includes systems for picking up, sorting, and carrying goods, frequency and scheduling of transportation, boarding, deplaning, baggage handling, and customer service. *Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 372-373 (2008); *Air Transport Ass'n of Am. v. City & County of San Francisco,* 266 F.3d 1064, 1071 (9th Cir. 2001); *Nat'l Fed'n of the Blind v. United Airlines, Inc.,* 2011 U.S. Dist. LEXIS 44366 (N.D. Cal. 2011), at *14-15; *Blackwell v. SkyWest Airlines, Inc.,* 2008 U.S. Dist. LEXIS 97955, at 48-50 (S.D. Cal. 2008); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir. 1996); *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336-38 (5th Cir. 1995) (en banc); *Branche v. Airtran Airways, Inc.,* 342 F.3d 1248, 1257 (11th Cir. 2003); *Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir. 1998); *Chukwu v. Bd. of Dirs. British Airways,* 889 F.Supp. 12, 13 (D. Mass. 1995), *aff'd sub nom, Azubuko v. Bd. of Dirs. British Airways,* 101 F.3d 106 (1st Cir. 1996).

[7] The preemption provision in the subsequently enacted Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), Pub. L. No. 103-305, Title VI, §601(b)-(c), 108 Stat. 1569, 1605-06 (1994)(currently codified at 49 U.S.C. §§14501(c)(1), 41713(b)(4)(A)), has much the same preemptive effect. See *Rowe, supra,* 364, 370.

there are no exceptions or exemptions because of the type of state law, whether it is or is not targeted at a covered company providing transportation, or whether it has a salutary purpose. *Id.,* at 371-75. Permitting state requirements could easily lead to a patchwork of state laws, rules and regulations which would be inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive transportation marketplace. *Id.,* at 373.

The Court has continued to broadly and expansively interpret and apply the preemptive effect of the ADA and FAAAA. In *Northwest, Inc. v. Ginsberg,* 134 S.Ct. 1422 (2014), the court unanimously reinforced the broad preemptive effect of the ADA, rejecting the Ninth Circuit's narrower interpretation. The Court noted that Ninth Circuit had relied on pre-*Wolens* precedent when the Circuit Court erroneously (a) held that a breach of implied covenant claim was too tenuously connected to airline regulation to trigger preemption under the ADA, and (b) used the standard of whether the claim "force[d] the Airlines to adopt or change their prices, routes or services" as the prerequisite for finding preemption. 134 S.Ct. at 1428. The Court reiterated that in *Morales* it had recognized that the ADA's key phrase "related to" expressed a broad preemptive purpose. *Id.* It further reiterated its holding in *Morales* that a claim relates to services, routes, or prices within the meaning of the ADA if the claim has a connection with, or reference to, airline rates, routes, or services. *Id.* The *Ginsberg* Court described its *Wolens* decision as "reaffirm[ing] *Morales'* broad interpretation of the ADA pre-emption provision". *Id.* The Court went on to emphasize that "[w]hat is important . . . is the effect of a state law, regulation or provision, not its form." *Id.,* at 1429. The *Ginsberg* Court found that the state law before it, which involved a frequent flyer program, related to rates, routes or services, under the broad preemptive intent and interpretation that it had previously described. It held that frequent flyer program on which the claim was based was connected to "rates" because **it could affect the rate** that the customer pays for the service. It held that program was also connected to "services", i.e., access to flights and to service levels. *Id.,* at 1430.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

The Court in *American Trucking Assns., Inc. v. Los Angeles,* 133 S.Ct. 2096 (2013)("*ATA*"), stated at 2104: "We have often rejected efforts by States to avoid preemption by shifting their regulatory focus from one company to another in the same supply chain." The Court went on to hold that the regulation at issue before it was preempted although the regulation was targeted at terminal operations, not on the trucking companies that serviced the terminal.

Similarly, the Court in *Dan's City Used Cars, Inc. v. Pelkey,* 133 S.Ct. 1769 (2013), focused first on the preemption language of the FAAAA and noted that the phrase "related to" embraced state laws that had a connection with or reference to carrier services, routes, or rates, whether directly or indirectly. The only area in which this broad preemptive effect did not apply would be a state law that only had a "tenuous, remote, or peripheral" effect. The Court upheld the preemptive effect as to vehicle towing activities. It only stopped short of finding preemption once the towed vehicle was in storage and then disposed of because at the point of storage, the vehicle was no longer in transport. The FAAAA contains one conspicuous and "massively limiting" difference from the ADA, i.e., the FAAAA requires that the item still be in transport. *Id.,* at 1778. In any event, ASII's cargo ramp agents load and unload cargo that is clearly still in transit.

Furthermore, there is nothing that requires a defendant to prove that the cost of compliance would be burdensome. *Nat'l Fed'n of the Blind, supra,* at *16-17.

### B. Numerous Courts Have Correctly Held That California's Meal and Rest Break Requirements Are Preempted.

The California Supreme Court recently confirmed the rigid timing and length of meal and rest break requirements under state law. *Brinker, supra.*

The First Circuit held that a state law regulating wages, hours, and working conditions is ADA-preempted. *Brown v. United Airlines, Inc.,* 720 F.3d 60 (1st Cir. 2013)(skycaps' state common law claims based on airlines' imposition and retention of baggage-handling fees for curbside service preempted); *DiFiore v. American Airlines,*

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

646 F.3d 81 (1ˢᵗ Cir. 2011)(state tip law preempted as it applied to skycaps because it involved the way that an air carrier had decided to provide skycap service). In *DiFiore*, the court noted that the tip law in question had a *direct connection* to the air carrier's prices and services and could fairly be said to regulate both. The air carrier's "conduct in arranging for transportation of bags at curbside into the airline terminal en route to the loading facilities is itself a part of the 'service' referred to in the federal statute, and the airline's 'price' includes charges for such ancillary services as well as the flight itself." Therefore, the court held that the tip law "directly regulates how an airline service is performed and how its price is displayed to customers – not merely how the airline behaves as an employer or proprietor." *DiFiore, supra,* at 87-88.

Three federal district courts have now specifically held that the ADA preempts state meal and rest break requirements and related and derivative state claims. ***Two involved ramp service agents similar to those involved in this case***:

• *Angeles v. US Airways, Inc.*, 2013 U.S. Dist. LEXIS 22423 (N.D. Cal., Feb. 19, 2013): The court held that ***ramp service*** employee meal and rest break claims as well as derivative claims were ADA-preempted. According to the court, the job duties that included loading cargo, moving aircraft to and from the ramp, and other duties that ASII's cargo ramp agents also perform, directly impacted the transportation of cargo. Therefore, enforcing state break requirements would impermissibly regulate service. The court found it "easy to imagine" a situation in which a mandated break would prevent cargo from being unloaded such that it would impact the schedule of point-to-point cargo transportation. *Id.*, at *29-30.

• *Blackwell v. SkyWest Airlines, Inc.*, 2008 U.S. Dist. LEXIS 97955 *48-50, *53-54, *59 (S.D. Cal., Dec. 3, 2008): The ADA preempted cross-trained ***ramp service*** and gate employee state meal and rest break laws and derivative state claims. There, as here, the employees marshaled aircraft, inspected and documented aircraft damage, and coordinated activities with similar employees and aircraft crew. There, as here, the operations were "irregular," i.e., factors such as inclement weather and cascading delays

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

resulted in the employees having irregular work hours with short "turn" times between the aircraft's arrival and departure. There, as here, requiring state-mandated breaks could result in, among other things, further cascading flight delays. Thus, the breaks could significantly and impermissibly impact point-to-point air carrier service. This case also amply establishes the impact of breaks on an air carrier's routes and prices due to the cost impact of providing mandated breaks. *Id.,* at *48-55.

• *Miller v. Southwest Airlines Co.,* 923 F.Supp.2d 1206, 1212-13 (N.D. Cal. 2013): Operations agents' meal and rest break claims were ADA-preempted. There, as here, the agents' duties included many aspects of customer service and ensuring flight timeliness and safety. The court held that strict compliance with break requirements would impact an air carrier's scheduling and service because it would dictate when, during the course of a shift, an employee could go off-duty. Thus, there was ADA preemption of these claims. *Id.,* at 1213.

The ADA would preempt Plaintiff's state meal and rest break claims, and derivative claims, if they were brought against a cargo air carrier. *See also, Cunningham v. Jet Aviation Flight Servs., Inc.,* 2013 U.S. Dist. LEXIS 58401 (D.N.J., April 24, 2013)(unpublished)(ADA preempted pilot's whistleblower claims under analogous facts. The pilot flew for one client, often on short notice. She claimed a violation of rules requiring specified rest time between flights. The employer's inability to contact her for assignments was tantamount to a refusal to fly, which affected the service of the air carrier. The claimed violation of a specified number of days off per quarter related to the employer's ability to provide services on a particular day. Her suggestion that someone be hired to cover for her reinforced the conclusion that this directly impacted the employer's ability to maintain its level of service of on-demand flights each day); *Regner v. Northwest Airlines, Inc.,* 652 N.W.2d 557 (Minn.App. 2002)(airline mechanic claims were ADA-preempted because an aircraft mechanic can interrupt services by grounding an aircraft).

While the Ninth Circuit recently decided that there was no preemption of state

12

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

break requirements for intrastate truck drivers under the FAAAA, its decisions were based on factors in the ground transportation industry that are very different from factors in the air transportation industry such as those here. Therefore, they are neither binding nor persuasive.[8] *Dilts v. Penske Logistics, Inc.,* __ F.3d __, 2014 U.S. App. LEXIS 17818 (Sept. 9, 2014), *Campbell v. Vitran Express, Inc.,* No. 12-56250 (Sept. 9, 2014)(unpublished). Furthermore, the mandate in those cases have been stayed pending further review. (RJN Ex. 30, 54). In both cases, the court considered truck drivers who worked exclusively on routes within the state of California, frequently in pairs. The court believed that the state break requirements were, in this context, similar to prevailing wage requirements; that they did not "bind" the motor carrier employer to specific prices, routes or services; or determine to a significant degree the prices, routes or services that the motor carrier employer provided. The court observed that the ground transportation employer could schedule service as frequently or infrequently and whenever it chose, hire more drivers or stagger their breaks for any long period in which continuous service was necessary, decide whether to provide the service at all, and have their drivers make "minor deviations" from a route such as pulling into a truck stop. Further, the employers submitted no evidence to show that the break laws would decrease the availability of routes to their customers or meaningfully decrease the availability of routes to motor carriers in California; the court noted that the drivers already had to incorporate into their schedule such things as fuel breaks, pick ups, and drop offs. The court was also persuaded by the amicus brief submitted by the Secretary of Transportation, which took the position that there was no preemption, although the Department of Transportation is not tasked with implementing that statute.

   Notably, the Ninth Circuit stopped far short of holding that state break requirements were not preempted as to *all* employers and certainly did not address the unique

---

[8] Numerous district courts had previously found preemption in the context of the ground transportation industry. *Dilts, supra, at* n. 1.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

factors inherent in air transportation.[9] Here, as described below, the facts are very different than those before the Ninth Circuit. ASII does not schedule flights – the cargo air carriers do. ASII does not control when an aircraft arrives – factors such as weather and wind, and independent actors such as federal air traffic control do. ASII cannot change or delay an aircraft's departure time – the air carrier and other third parties do. ASII cannot instruct a carrier's aircraft to simply pull off mid-flight at a nearby "airplane rest area" so that ASII cargo ramp agents can take a timely break and be ready when the aircraft arrives. Similarly, ASII cannot instruct an air carrier to disrupt its tight flight schedule due to a delay caused by the need of ASII cargo ramp agents to take a break during the permissible window for such breaks. Local ground transportation is far more predictable and does not have the tight turnaround times as national and international air transportation.

Further, ASII's evidence establishes a direct and substantial impact on the services, routes, and prices of cargo air transportation. If an ASII cargo ramp agent stopped work to take a break during the unloading/loading process, the effect is on the air carrier is the same as if the carrier's own employee did this. Furthermore, unlike a truck that is running late because the driver took a state-mandated rest or meal break – which only affects that truck – a disruption in flight schedules has a cascading effect far beyond one aircraft. This is true whether the break is a meal break or rest break and whether the aircraft was early, on time, or late: in any of these scenarios, a work stoppage prior to the arrival of the aircraft at the ramp would interfere with the smooth

---

[9] *Harris v. Pac Anchor Transportation Inc.*, 59 Cal.4th 772 (2014), is similarly stayed pending a petition for writ of certiorari with the Supreme Court of the United States. 2014 Cal. LEXIS 6294 (Cal., Aug. 27, 2014). In any event, it is distinguishable. The "narrow question" in that case was whether an unfair competition claim brought against a trucking company for misclassifying workers as independent contractors was preempted by the FAAAA. The court held that a company was free to use independent contractors as long as it properly classified them as such under state law. The requirement to properly classify workers as independent contractors was not preempted by the FAAAA. Notably, the First Circuit recently held that an attempt to require ground transportation companies to use employees rather than independent contractors was preempted. *Massachusetts Delivery Association v. Coakley*, 2014 U.S. App. LEXIS 18703 (Sept. 30, 2014)(RJN Ex. 53) The Court declined to apply a general rule that "background requirements" were not preempted.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

loading and unloading of cargo critical to meeting tight "turn" schedules established by the air carrier, and such a stoppage during the critical operations window when the aircraft is at the ramp being loaded or unloaded would impermissibly delay the operation and the flight and possibly air traffic landing and departures from that airport. Of course, once the aircraft leaves the ramp, the mandated deadline to take a break may have come and gone. Since a late, shortened, or missed meal break, each carries the same penalty or would require the same overstaffing, the consequences of trying to guarantee compliance for every cargo ramp agent for every shift becomes apparent. While rest breaks may be more easily squeezed into the beginning or end of shifts, they too may become problematic if they need to be guaranteed:again, a late, shortened, or missed break each carries the same penalty or would require the same overstaffing.

Indeed, the very Secretary of Transportation amicus brief that the Ninth Circuit found to be persuasive in *Dilts* (RJN Ex. 33, at p. 31 of 68) stated:

> Similarly, the preemption analysis would differ significantly if the state law were applied to airline employees. As noted above, the [ADA] has preemption provisions that are essentially identical to those set forth in the FAAA Act, and the Supreme Court has held that the two statutes should be similarly construed. [cite] But unlike motor carriers, an airline cannot readily interrupt tightly scheduled flight operations to accommodate state-mandated rest breaks for its staff. Moreover, federal aviation safety laws and regulations apply in this area and would inform any preemption analysis. Application of the state break law to airlines thus entails significantly different considerations.

## C. Requiring ASII to Comply with State Law Affects Services, Routes and Prices In an Impermissible Way.

The evidence, similar to that in the above air carrier cases that found preemption, establishes that mandatory compliance by ASII with state break requirements affects air carriers in the same way as the effects that triggered preemption in the above cases. It is simply an impermissible refocusing of those laws from one employer to another in the same chain of air cargo transportation, as noted in *ATA, supra.* Since the

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  requirements are preempted for air carriers themselves, they are also preempted for
2  ASII.

3      The evidence establishes that requiring ASII to comply with state break laws af-
4  fects air carrier *service* because the air carrier customers dictate when services must be
5  performed by an ASII cargo ramp agent (singly or on a small crew). Requiring that
6  Plaintiff or any other cargo ramp agent stop all work to receive rigid time off at rigid
7  intervals for rest and meal breaks would make the individual effectively unavailable
8  for work and would directly affect the air carrier's ability to load and unload its cargo
9  – an integral part of its air cargo transportation services. Because the provision of
10 cargo ramp services is directly related to air transportation – a *service* provided by an
11 air carrier – and California's meal and rest break laws adversely impact the provision
12 of that service, those laws are ADA-preempted.

13     The evidence establishes that the ASII cargo ramp agents work in a highly irreg-
14 ular, unpredictable environment. Further, ASII does not have the trained staff available
15 to simply replace one employee with another since the entire crew works at the same
16 time. Thus, requiring mandatory breaks of rigid length and timing directly and
17 unavoidably limits the schedule and violates air carrier customer contracts that require
18 continuous and uninterrupted services. An aircraft cannot leave the ramp before the
19 unloading and loading is completed. The result of requiring guaranteed compliance
20 will therefore be longer ramp times, i.e., either a delayed flight or forcing the air car-
21 rier to contract longer "turn" times. Requiring ASII to hire additional employees to
22 cover for employees on a break reinforces the conclusion that state break requirements
23 impact ASII's ability to maintain its level of service in providing on-demand cargo
24 loading and unloading in the context of a highly unpredictable environment with short
25 "turn" times. The evidence also establishes that it is not possible to simply stagger the
26 breaks because the crew works as a coordinated unit and the absence of one cargo
27 ramp agent interferes with the continued service of the remaining crew. Nor can ASII
28 fully comply with the law by simply paying the penalties for not providing breaks.

*Kirby v. Immoos*, 53 Cal.4th 1244 (2012). *See also, In re Deep Vein Thrombosis*, 2005 U.S. LEXIS 4043 (N.D. Cal. 2005)(court rejected plaintiff's argument that air carrier could simply pay damages rather than reconfiguring seats). While state law and Wage Order 9 allow waiver of certain breaks under very limited conditions, one of the major conditions is that the employee must voluntarily agree to do so. Therefore, the employee ultimately has control over this - employee control that is inconsistent with preemption.

Just as in the cases where preemption has already been found, the impact would be increased due to resulting, cascading flight delays. Therefore, such a requirement has a direct and dramatic impact on the service levels of the air carrier.

The necessary and inevitable result of slowed cargo handling due to mandated stops in activity also impermissibly causes an effect on *prices*, for all of the same reasons that were found to exist as to the air carriers themselves. *See Blackwell, supra*, at *52-54. The evidence establishes that (a) extended ramp time can cost the air carrier additional fees; (b) mandatory work stoppages would result in costly delays to the air carrier; and (c) ASII would incur additional and significant expense under any of the alternatives that would guarantee strict compliance with the state break requirements and that it would pass these along to the air carriers. Under each of these scenarios, there would be a direct impact to the air carriers, again at the "point of service."

Courts have already recognized that air carriers must account for these costs when setting their own prices, thus constituting an impact on prices. Customers are sensitive to the full price they pay, not just the amount that stays in the air carriers' pockets. *Sanchez v. Aerovias De Mexico, S.A. DE C.V.*, 590 F.3d 1027, 1030 (9th Cir. 2009); *Buck v. American Airlines, Inc.*, 476 F.3d 29, 34-36 (1st Cir. 2007). A customer of the air carrier will be concerned with the overall air shipping costs, including costs associated with loading and unloading the cargo. When an air carrier customer of ASII quotes a cargo shipping rate, it necessarily covers ASII's charges. In the deregulated, cost-sensitive environment in which the air carriers operate, ASII provides services

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

that clearly affect the air carrier's *prices.*

The state break laws also impact air carrier *routes.* A provider like ASII that can competitively service air carriers at any given airport eliminates a barrier to entry for new and expanded routes. Furthermore, it is not a leap of imagination to realize that any carrier who uses one or more of ASII's services must have decided to do so in order to increase its competitiveness. State laws such as the break requirements at issue, that reduce the availability of these services at the time, in the manner, and at a price that is attractive to air carriers, can have a definite impact on routes.

If one state specifies when and for exactly how long cargo ramp agents must take a break, other states can do the same, and do so differently. The resulting regulatory patchwork of breaks that air carriers would have to factor into their transportation services, prices and routes is an anti-competitive, anti-innovation factor that led Congress to adopt the ADA's *express preemption provision.*

### D. ADA Preemption Extends to Providers Such as ASII.

The state laws at issue are clearly preempted as to the air carriers.[10] Their application to ASII – whose employees are proxies for traditional air carrier employees – is an impermissible attempt to shift state focus from one company to another in the same "supply chain" of air transportation. Many courts have already recognized this reality when they extended ADA preemption to service providers such as ASII because of the impact on air carriers' service, routes, or prices.

Cases already extending ADA preemption to providers such as ASII have followed the Supreme Court precedent rejecting the argument that the ADA only prevents states from actually prescribing an airline's services, rates or routes, or that only state laws specifically addressed to the airline industry are preempted. *Morales, supra,* at 383-86. Preemption as to one group can be extended to the entire group. See, *N.H. Motor*

---

[10] An "air carrier" under the FAA undertook "whether *directly or indirectly or by a lease or any other arrangement*, to engage in air transportation." 49 U.S.C. App. §1305(a). The ADA continues to define "air carrier" as "a citizen of the United States undertaking *any means, directly or indirectly*, to provide air transportation." 49 U.S.C. §40102(a)(2).

*Transp. Ass'n v. Rowe,* 448 F.3d 66, 77 (1st Cir. 2006), *aff'd*, 552 U.S. 364, (2008)("if a state law is preempted as to one carrier, it is preempted as to all carriers."). This Court would not be charting a new course, but rather following well-established precedent, by extending the preemption of state meal and rest breaks – that has already been found as to air carriers – to ASII and its cargo ramp agents.

The following are examples of the decisions from federal courts, state courts and state regulatory agencies that have applied ADA or FAAAA preemption to service providers or others who are not themselves *directly* air carriers because, as here, there was an effect on services, prices or routes of a direct or indirect air carrier:

• *DiFiore, supra* (preemption found where the tip law regulated how an air carrier provided for transportation of bags at curbside into the airline terminal en route to the loading facilities and how the price was displayed to customers – fact that the skycaps were not directly employed by the air carriers was not a deciding factor);

• *Mitchell v. US Airways, Inc.,* 2012 U.S. Dist. LEXIS 96719 (D. Mass. 2012)(skycaps' state claims arising from the discontinuation of their services after their unsuccessful challenge to the collection of curbside check-in fees, filed against their employer – a service provider like ASII – as well as the airline customer preempted; how and who an air carrier uses to provide curbside check-in has a direct connection to the manner in which the air carrier provides its service of curbside baggage transportation);

• *In re Korean Airlines,* 642 F.3d 685 (9th Cir. 2011)(ADA preemption although airline was foreign air carrier and not within ADA definition of "air carrier");

• *Sanchez v. Lasership, Inc.,* 2013 U.S. Dist. LEXIS 49174 (E.D. Va., April 4, 2013)(FAAAA preempted state law limiting the type of permissible relationship between the defendant transportation company that arranged for the transport of customer packages and individuals who provided services to it);

• *Nelson v. Alaska Airlines, Inc.,* 2013 Cal.App. Unpub. LEXIS 4485 (June 25, 2013)(challenge to a variety of fees and charges imposed by other entities was

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

preempted. Although in one sense those fees and charges were separate from the air carrier's own base fare, the two were inexplicably intertwined because the purchaser is concerned with the overall price of the flight, not the pricing components. Thus, when an air carrier established its base price, it had to be cognizant of the other surcharges that would be imposed. It was "freshman-year economics" that higher prices mean lower demand, and that purchasers are sensitive to the full price they have to pay, not just the portion that will stay in the air carrier's coffers. Thus, the air carrier had to account for those fees and charges when setting its own rates, creating a clear connection with the prices charged by the air carrier); the court relied heavily on *Sanchez v. Aerovias De Mexico, S.A. DE C.V.*, 590 F.3d. 1027 (9th Cir. 2009), which had used the same analysis and reached the same conclusion.) *See also, Fed. Express Corp. v. Cal. Pub. Utils. Comm'n*, 936 F.2d 1075, 1078 (9th Cir. 1991)("Terms of service determine costs. To regulate them is to affect price.");

• *Tucker v. Hamilton Sunstrand Corp., Inc.,* 268 F.Supp.2d 1360 (S.D. Fla. 2003) (employee claims against a service provider like ASII that repaired aircraft parts for airlines were preempted; if the part at issue was not working correctly, the aircraft would often not be able to leave the gate. The court *rejected* the argument that there was no preemption because the employer was not itself the airline, stating, "aircraft generator maintenance is sufficiently related to air carrier service that [the employee's] claims are also preempted." *Id.,* at 1364);

• *Huntleigh Corp. v. La. State Bd. of Private Security Examiners,* 906 F.Supp. 357, 362 (M.D. La. 1995)(state law governing security officers employed by service provider like ASII affected "services" of air carriers and was preempted. "Plaintiff, as the agent of the air carriers with whom it has contracted to perform pre-departure screening, is within the reach of the preemptive statute.");

• *Marlow v. AMR Services Corp.,* 870 F.Supp. 295, 298-299 (D. Haw. 1994) (claims of employee of service provider like ASII that did jet bridge maintenance for airlines preempted; "the defendant need not be an air carrier so long as the state laws …'relate

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

to' airline rates, routes or services." It was irrelevant that the employee was not *directly* employed by an airline; the state claims had the necessary "connection with or reference to" air carrier service. Jet bridges "are an integral part of air carrier services, no matter who maintains them" and thus their maintenance had the necessary "connection with or reference to" air carrier service for ADA preemption);

• *Lyn-Lea Travel Corp. v. American Airlines,* 283 F.3d 282 (5th Cir. 2002)(claims against third party provider of air carrier's computer reservation system preempted; ADA preemption is not limited to claim brought directly against air carriers and are preempted if they "relate to" the services, prices, or routes of an air carrier);

• *In Re American Airlines Inc. Privacy Litigation,* 370 F.Supp.2d 552, 561 (N.D. Tex. 2005)(laws of general applicability may be preempted by ADA and need not actually prescribe airline prices, routes, or services since ADA preemption is not limited to claims brought directly against air carriers); *see, also, Branche v. Airtran Airways Inc.,* 342 F.3d 1248, 1254 (11th Cir. 2003)(preemption mandated whether or not the state law specifically addresses the airline industry);

• *ABC Charter, Inc. v. Bronson,* 2009 U.S. Dist. LEXIS 312l83, *12 (S.D. Fla. 2009)(ADA preemption extends to indirect air carriers such as travel agents);

• *Continental Airlines, Inc. v. American Airlines, Inc.,* 824 F.Supp. 689, 696 (S.D. Tex. 1993)(claim against parent company of an air carrier who was not itself an air carrier was preempted because nothing in the ADA suggests that it applies only to suits against an air carrier. Rather, it preempts the enforcement of any state laws that have a connection with or reference to airline rates, routes or services);

• *Hallock v. National Aviation Services, LLC,* State of Rhode Island Div. of Labor Standards, Claim Nos. LS:11-485, et al. (state claims by employees of air carrier service provider such as ASII preempted over a broad range of state laws);

• *Calop Business Systems, Inc. v. City of Los Angeles,* 2013 U.S. Dist. LEXIS 169483 (C.D. Cal., Oct. 30, 2013)(court's discussion assumed the ADA applied in case involving local wage ordinance by a contractor that was not itself an airline).

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

Air carriers' decisions regarding how to provide cargo ramp services to their cargo customers, like the use of service providers considered by the courts in the above cases, clearly extends the ADA preemption to ASII.

The Court has clear evidence of Plaintiff's duties, the nature of ASII's operations, and their relationship to and impact on air carriers. Air carriers could provide these services using their own employees, but have chosen to use ASII as a service provider instead. The air carriers' decisions on how to provide these services have a direct connection to the manner in which each carrier provides its services and what it charges for them on the routes they fly. If the air carriers provided cargo ramp services with their own employees, meal and rest break and derivative claims would be preempted. The air carriers control ASII and ASII's cargo ramp agents, as established by the evidence and confirmed by the numerous decisions of the National Mediation Board. ASII is acting, in effect as stand-in for the air carriers. If an ASII cargo ramp agent stops work to take a state-required break, it impacts the air carrier's services, pricing, or routes in the same manner and to the same extent as if the air carrier's own employees stopped work to take a break.

The facts and judicially noticeable material establish that if ASII has to strictly comply with California's meal and rest break requirements, it would impermissibly affect air carrier's services, pricing or routes. Accordingly, these state requirements directly conflict with the ADA's mandate that the airline industry be free from state regulation so as to increase competition through service, prices, and rates.

## 5.   THE ICC ALSO PRECLUDES PLAINTIFF'S STATE CLAIMS.

The Interstate Commerce Clause of the United States Constitution precludes the application of state meal and rest break requirements, minimum wage and overtime, waiting time penalties, and derivative claims, from being applied to ASII. Art. I, section 8, cl. 3.[11] ASII's cargo ramp agents perform services directly related to air

---

[11] There are three categories of activity that Congress may regulate under the Commerce Clause: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, and persons or things in interstate commerce; and (3) activities having a

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

carriers carrying cargo in interstate commerce. It is an instrumentality of interstate commerce because it handles things in interstate commerce. Its activities such as the loading and unloading of cargo for air carriers clearly and substantially affect inter-state commerce. Therefore, this case is governed by cases finding preemption on this basis and the same conclusion should be reached. *Fitz-Gerald v. Skywest Airline, Inc.,* 155 Cal.App.4th 411, 422 (2007), and cases cited therein.

## 6.   THE RLA PREEMPTS THE FEDERAL OVERTIME CLAIM.

Section 13(b)(3) of the FLSA expressly exempts from its federal overtime require-ments any employee of a carrier by air subject to the provisions of Title II of the RLA.[12] The uncontroverted evidence indisputably establishes that ASII and Plaintiff were covered by the RLA, as was recently found by the Ninth Circuit in *Aircraft Serv. Int'l Group v. Teamsters Local 117,* 742 F.3d 1110 (9th Cir. 2014), and has been found by the National Mediation Board many times in cases involving ASII and similar service providers. (UF 76, RJN Ex. 4-12). Indeed, the CBAs that covered cargo ramp agents at LAX like Plaintiff reference the RLA and include a grievance procedure that covers disputes about breaks and overtime. (*See* second paragraph on page 2; Article 2 (Recognition, p. 3) and Appendix "A," p. 19). (UF 49-50, 53, 75, 77). The Court should find RLA coverage, and RLA preemption, of Plaintiff's Fifth Claim for federal overtime.

## 7.   PLAINTIFF'S STATE CLAIMS FAIL BECAUSE HIS RLA CBA REQUIRES INTERPRETATION.

Wage Order 9's overtime requirements expressly do not apply where, as here, an employee is covered by a CBA under the RLA. Wage Order 9 (1)(E); *Fitz-Gerald,*

---

substantial relation to interstate commerce, i.e., activities that substantially affect interstate commerce. *United States v. Lopez,* 514 U.S. 549, at 558-559 (1995).

[12] Title II of the RLA applies to "every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States Government, and every . . . other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service." 45 U.S.C. §181.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  *supra,* at  418 (overtime claims dismissed due to RLA-covered CBA); *Blackwell,*

2  *supra,* at \*27-29 (same); *Angeles, supra,* \*11-13 (same). The NMB has consistently

3  held that ASII and its employees are covered by the RLA. The Court now has evidence

4  to independently establish this coverage.

5  State law independent of Wage Order 9 is preempted. The RLA preempts state

6  laws regarding pay and working conditions. This unique preemption is due to the need

7  for uniform rules regarding pay and working conditions throughout the entire

8  transportation sector to avoid interruption of the operation of common carriers. A

9  conflict between the RLA and a state wage order or statutory protection is of sig-

10  nificant concern. *Fitz-Gerald, supra,* at 418; *Blackwell, supra*, at \*27-29 (state

11  overtime independent of Wage Order was RLA-preempted because CBA required

12  interpretation); *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985); *accord,*

13  *Detomaso v. Pan American World Airways, Inc.,* 43 Cal.3d 517, 529 (1987)(RLA

14  preemption extends to any claim premised on facts inextricably intertwined with

15  matters subject to the grievance procedures of a CBA); *Adames v. Executive Airlines,*

16  *Inc.,* 258 F.3d 7, 12 (1st Cir. 2001)(Puerto Rico law for wages, overtime and meal

17  breaks preempted by RLA), cited with approval in *Firestone v. So. Cal. Gas Co.,* 281

18  F.3d 801, 802 (9th Cir. 2002). State law yields to the preemptive effect of the RLA.

19  *Adames, supra,* at 12; *Fitz-Gerald, supra,* at 419-422; *Blackwell, supra,* at \*35-42.

20  RLA preemption applies here because the RLA applies and then CBAs require

21  interpretation. Article 7 of the CBAs governs the workday and workweek, including

22  meal breaks, rest breaks, and overtime. It goes on to say, however,

23  Due to the nature of the Cargo business, all Cargo employees are exempt
   from the provisions of this article. All full time Cargo employees will as

24  much as possible be scheduled for at least 35 hour[s] of work per week, based
   on their seniority. Reasonable efforts will be made to call employees to set

25  work schedules.

26  The interpretation and application of this CBA provision, taken together with the

27  remaining provisions of the CBA provisions (UF 14-16, 36, 49, 50, 53-55), requires

28

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

interpretation, e.g., did the parties intend that breaks and overtime would be provided based on the minimum "call-in" time or actual time worked?  Was there an on-duty lunch period such that no penalties were triggered? Plaintiff's claims are "inexplicably intertwined" with the meaning of the CBAs.[13] RLA preemption is not negated just because Labor Code §514 does not except RLA-covered CBAs, like the Wage Order does. None of the state laws that the courts have found to be RLA-preempted contained an RLA carve-out, which is why the courts stepped in to find it. ASII requests the Court to revisit its earlier holding on this issue.

**8.   PLAINTIFF'S WAITING TIME PENALTY CLAIM FAILS.**

Even if not preempted, a good faith dispute precludes waiting time penalties. *Barnhill v. Robert Saunders & Co.,* 125 Cal.App.3d 1, 7-9 (1981). ASII's belief that Plaintiff's claims were preempted creates a good faith dispute. No waiting time penalties under Labor Code §203 are due based on missed break penalties. *Immoos, supra; Jones v. Spherion Staffing, LLC*, 2012 U.S. Dist. LEXIS 112396 (C.D. Cal., 2012). Plaintiff's final paycheck was available for him as required. (UF 57-58)

**9.   CONCLUSION.**

ASII does not have a sporadic, peripheral or insignificant relationship with cargo air carriers. It provides necessary, integral cargo ramp services on a day-in, day-out basis under the very close control of its air carrier customers. Its employees are proxies for the carriers' own employees. ASII's motion should be granted in its entirety as to all of Plaintiff's claims.

DATED:  October 14, 2014

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

By: _____
TERESA R. TRACY
Attorneys for Defendant AIRCRAFT
SERVICE INTERNATIONAL, INC.

---

[13] Plaintiff did not work following July 1, 2013. However, the state overtime claim would not be viable at least as of that date if he had. At that point the CBA met all of the requirements under Labor Code §514: it provided for wages, hours of work and working conditions, premium wage rates for all overtime hours, and a regular hourly rate of not less than 30% above minimum wage (minimum wage was $8.00).

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2013, a copy of the following document was filed electronically:

**NOTICE OF MOTION AND MOTION OF DEFENDANT AIRCRAFT SERVICE INTERNATIONAL, INC. FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System:

JONATHAN RICASA, ESQ.
LAW OFFICE OF JONATHAN RICASA
2341 Westwood Blvd., Suite 7
Los Angeles, CA  90064
Email:  jricasa@ricassalaw.com

KEITH A. JACOBY, ESQ.
LITTLER MENDELSON P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
Email:  kjacoby@littler.com

DATED:  October 14, 2014

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

By: _____
       TERESA R. TRACY
Attorneys for AIRCRAFT SERVICE
INTERNATIONAL, INC.
E-Mail:  ttracy@gladstonemichel.com

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC