TERESA R. TRACY, ESQ. (SBN 89609)
Email:  ttracy@gladstonemichel.com
GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Marina del Rey, CA  90292-7925
Tel:  (310) 821-9000 • Fax: (310) 775-8775

Attorneys for Defendant
AIRCRAFT SERVICE INTERNATIONAL, INC.

KEITH A. JACOBY, ESQ. (SBN 150233)
Email:  kjacoby@littler.com
LITTLER MENDELSON P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
Tel:  (310)553-0308  •  Fax: (310) 553-5583

Co-Counsel for Defendant
AIRCRAFT SERVICE INTERNATIONAL, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER PERRY, individually and on behalf of all others similarly situated, | CASE NO. CV13-00059-SVW (AGRx) |
| Plaintiff, | **DECLARATION OF BRIAN DAVIS IN SUPPORT OF AIRCRAFT SERVICE INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| AIRCRAFT SERVICE INTERNATIONAL, INC. and DOE ONE THROUGH AND INCLUDING DOE ONE HUNDRED, | |
| Defendants. | Date:: Time: Ctrm:     6 |

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

I, Brian Davis, declare:

1.     I am, and have been since November 19, 2013, the Regional Vice President of Aircraft Service International, Inc. ("ASII") for the region that includes Los Angeles International Airport ("LAX"). In this capacity, I have personal knowledge of the facts set forth in this Declaration as described below and if called as a witness I could competently testify from personal knowledge to the following.

2.     I asked Richard Piper, ASII's Senior Manager, Financial Planning and Analysis, to provide me with the operating profit or loss for Department 145 at "LAX." Plaintiff Perry worked in that department at LAX as an hourly cargo ramp agent. I also asked Mr. Piper to estimate the cost of paying a one-hour penalty payment for missed rest and meal breaks as applicable under California law for every cargo ramp agent such as Mr. Perry, who worked as an hourly cargo ramp agent in Department 145 at LAX. Department 145 only provides cargo ramp services to cargo air carriers at LAX. I and other ASII executives and managers rely on Mr. Piper to review and analyze financial data on a wide variety of issues. I also asked him to provide me with Department 145's operating profit during the period of time that he was analyzing.

3.     Mr. Piper confirmed my understanding and belief that during the period December 2008 through November 2013, ASII had experienced a significant operating loss in that department as follows:

| Operating Profit/ Loss | Dec 2008 | 2009 | 2010 | 2011 | 2012 | Jan-Nov 2013 | Total |
|---|---|---|---|---|---|---|---|
| In Dollars | (117,312) | (220,155) | 29,154 | 234,404 | (311,535) | (845,514) | ($1,231,959) |

Despite the fact that ASII was struggling to break even in this Department, it

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

continued to offer and provide cargo ramp service in the hope that it would eventually be able to turn a profit.  However, as the losses accumulated, it finally had little choice but to stop providing these services to its cargo air carrier customers in December 2013.

4.    The results of Mr. Piper's review and analysis establish that, if ASII had to pay meal and rest break penalties assuming that the reality of its operations did not allow it to guarantee strict compliance with California's meal and rest break requirements for every Department 145 cargo ramp agent at LAX, it would have more than doubled its cumulative operating loss for Department 145.  A summary of the estimated meal and rest break penalties, for the period November 30, 2008 through November 30, 2013, is:

| | 2008 | 2009 | 2010 | 2011 | 2012 | Jan-Nov 2013 | Total |
|---|---|---|---|---|---|---|---|
| Net Penalties Due | $37,466 | $418,223 | $418,767 | $418,492 | $343,268 | $274,586 | $1,910,802 |
| Prior Operating Profit/Loss | | | | | | | ($1,231,959) |
| Operating Profit/Loss (with penalties) | | | | | | | ($3,142,761) |

As shown in paragraph 3 above, it already had a cumulative operating loss for Department 145 of $1,231,959.  Adding an additional $1,910,802 in penalties would result in a cumulative operating loss of $3,142,761.

5.    I also asked Mr. Piper to estimate the cost of adding an additional cargo ramp agent for four hours to each of the estimated number of cargo ramp agent crews in Department 145.  I wanted this information to estimate the cost of

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  providing coverage for a cargo ramp agent who was on a meal break and still allow

2  ASII's crew to work and meet the time demands of its cargo air carrier customers.

3  The result of this analysis shows that during 2012 and 2013, ASII would again

4  have almost doubled its operating losses.  A summary of the estimated net

5  additional cost to add a cargo ramp agent for the period December 1, 2008 through

6  October 31, 2013, is:

|  | 2008 | 2009 | 2010 | 2011 | 2012 | Jan-Nov 2013 | Total |
|---|---|---|---|---|---|---|---|
| Net Increase | $16,870 | $146,001 | $209,494 | $206,914 | $191,715 | $135,088 | $906,082 |
| Prior Operating Profit/Loss |  |  |  |  |  |  | ($1,231,959) |
| Operating Profit/Loss (with additional agent) | (134,182) | (366,156) | (180,340) | 26,489 | (503,250) | (980,602) | ($2,138,040) |

As shown in paragraph 3 above, it already had a cumulative operating loss

for Department 145 of $1,231,959.  Adding an additional 4 hours of cargo ramp

agent time to each shift would have resulted in an additional cost of $906,082,

resulting in an adjusted cumulative operating loss of $2,138,040.

6.      Had ASII been incurring any of these kinds of huge operating losses

in this one department, I would have discontinued the cargo ramp services long

before they were, unless ASII's cargo air carriers agreed to pay these significantly

increased costs.  However, due to the very competitive nature of cargo air

transportation, ASII was not having success in getting its cargo air carrier

customers to agree to any increased prices.  Therefore, ASII gave its customers

notice and stopped providing cargo ramp services in November 2013, and the

GLADSTONE MICHEL WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  cargo ramp agents in that department were laid off even without the additional

2  operating losses attributable to "staffing up" to cover meal breaks.

3       7.      When Mr. Piper and I discussed the procedure for the analysis of

4  break penalties, we agreed on the following procedure:

5            A.      Use Kronos timekeeping data for the positions of ground

6  service, lead ground service, ground service supervisor, and cargo ground service

7  (union) (collectively, "class positions") for the period November 30, 2008 through

8  November 30, 2013 be reviewed and analyzed.  These positions are the positions

9  that are identified in the class that Mr. Perry has described in his complaint in this

10  matter.

11            B.      Estimate the number of shifts worked by the class positions

12  during this period.  This review and analysis resulted in an estimate of a total of

13  139,125 shifts being worked during this time period.

14            C.      Estimate how many shifts would be long enough to require a

15  rest break (shifts of 3.5 hours or more), and how many shifts would be long enough

16  to require a meal break (longer than 5 hours).  The analysis for that time period

17  resulted in an estimated total of 116,117 shifts being sufficiently long to have

18  required a rest break, and 66,013 being sufficiently long to require a meal break.

19  The breakdown by year from this analysis is as follows:

20

| Shifts | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Total |
|---|---|---|---|---|---|---|---|
| All | 2,477 | 30,511 | 30,160 | 32,397 | 25,877 | 17,703 | 139,125 |
| > 5 hrs. | 1,484 | 15,018 | 15,806 | 14,866 | 11,716 | 7,123 | 66,013 |
| ≥ 3.5 hrs. | 2,162 | 25,388 | 25,369 | 26,289 | 21,308 | 15,601 | 116,117 |

25

26            D.      Estimate the average hourly rate for the class positions during

27  this time period, so that an estimate of the penalty payments could be made.  This

28  analysis first divided the total regular wages paid to class position employees by

their total regular hours worked for each period.  This resulted in the following estimated average hourly rate of pay for class positions:

|  | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Total |
|---|---|---|---|---|---|---|---|
| Ave. Rate | $10.39 | $10.42 | $10.51 | $10.59 | $10.81 | $12.27 | N/A |

  E. Multiply the number of shifts that were eligible for a rest break by the average hourly rate of pay for each time period.  This gives an estimate of the total one-hour penalty payments that ASII would have had to pay on account of missed rest breaks for these periods of time, as shown on the following chart.  The results were:

|  | 2008 | 2009 | 2010[1] | 2011 | 2012[2] | 2013 | Total |
|---|---|---|---|---|---|---|---|
| Rest Pmt Due | $22,463 | $264,543 | $266,321 | $278,401 | $230,310 | $191,424 | $1,253,463 |

  F. Multiply the number of shifts that were eligible for a meal break by the average hourly rate of pay for each time period.  This gives an estimate of the total one-hour penalty payments that ASII would have had to pay on account of missed meal breaks for these periods of time, as shown on the following chart.  However, because ASII had paid some missed meal break penalties, I asked that the Kronos data be analyzed to determine how much had already been paid to employees each year as missed meal break penalties so that I could see not only that figure but also see what the net additional amount would be in penalty payments.  The result of this analysis is shown on the following chart:

---

[1]  The data indicated that during 2010, ASII paid $307 in rest break penalties, so the figure of $266,321 is the additional penalties that would be payable.

[2]  The data indicated that during 2012, ASII paid $29 in rest break penalties, so the figure of $230,310 is the additional penalties that would be payable.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

|  | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Total |
|---|---|---|---|---|---|---|---|
| Meal Penalty | $15,419 | $156,488 | $166,121 | $157,431 | $126,650 | $87,399 | $709,507 |
| Meal Penalty Paid | $416 | $2,808 | $13,675 | $17,340 | $13,692 | $4,237 | $52,168 |
| Total Net Due | $15,003 | $153,680 | $152,446 | $140,091 | $112,958 | $83,162 | $657,339 |

8.     Adding the rest break penalties and net meal break penalties resulted in the figures shown in Paragraph 4 of this Declaration.

9.     I also requested an estimate of the cost to add an additional cargo ramp agent for four hours to the estimated shifts that were eligible for a meal break.  My purpose was to get an idea of what it would cost to add these additional cargo ramp agents for the sole purpose of covering for another cargo ramp agent who was on a .5-hour meal break.  This analysis did not cover rest breaks, but if it did, the cost would be higher than the calculation that I requested.  I did not ask Mr. Piper to go back and actually re-create each crew on each shift because it would have been prohibitive in terms of time and expense to do so.  If one takes the example of an air carrier who gave ASII two hours between the aircraft's arrival at the ramp and its departure from the ramp within which to complete the unloading and loading of cargo with a 7-person crew, to provide coverage at all times so that each cargo ramp agent could stop working and take a timely and complete meal break, ASII would have required an additional cargo ramp agent on the crew for at least 3.5 hours (7 cargo ramp agents x .5 hour meal break) who was trained to do each of the various jobs done by the agents on that aircraft model for that cargo air carrier so he/she could cover while any agent (including a lead or supervisor) was not working and on a break.  If the crew consisted of 6 cargo ramp agents, this would be an additional person for 3 hours; if the crew consisted of 8

CV13-00059-SVW (AGRx)
DECLARATION OF BRIAN DAVIS

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

cargo ramp agents, this would be increased to an additional person for 4 hours.  I asked for this based on a 10-person crew (8 cargo ramp operations and two hourly supervisors), with an estimated 2 of these cargo ramp agents working a second shift, thus giving them the opportunity for a meal break without having to cover for them.  Thus, there would be 8 employees in this estimate whose .5 hour meal break would have to be covered, resulting in 4 additional hours of crew time.  Furthermore, this was the minimum number of hours in a shift for any full-time employee, pursuant to the collective bargaining agreements that covered Department 145, and most of the contracts between ASII and its cargo air carrier customers provided for 4-hour operation windows.  Realistically, the person providing coverage would have to be trained and certified to do every single aspect of the operation, including the hourly supervisor jobs.  It is my belief, therefore, that it would have to be a full-time employee since they are the ones with the most training and certification.  It should be noted that this same result occurs on any 8-person crew who works together during an entire shift.  I believe that this procedure gives a good  estimate of the impact.  The procedure can be summarized as follows, using data for the period December 1, 2008 through October 31, 2008:

    A.     The number of crews was estimated at 16,501.

    B.     The number of extra hours was reached by multiplying 16,501 (number of crews) times 4 hours, to reach a total number of additional hours of 66,004.

    C.     The estimated average hourly rate of fringe benefits was calculated and added to the estimated average hourly rate to give a total estimated hourly cost for one additional cargo ramp agent during each of the years or partial years being analyzed.

    D.     The total estimated hourly cost of a cargo ramp agent was then multiplied by 66,004 (the estimated number of additional crew hours that would be needed).  This analysis resulted in the following estimated costs.  Because ASII

actually paid missed meal penalties, I requested that they be backed out so that the total net additional cost of adding an additional person for four hours could be estimated.  This resulted in the following estimated numbers:

| | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Total |
|---|---|---|---|---|---|---|---|
| Add'l Cost | $17,286 | $148,809 | $223,169 | $224,254 | $205,407 | $139,325 | $958,250 |
| Meal Penalties Paid | $416 | $2,808 | $13,675 | $17,340 | $13,369 | $4,237 | $52,168 |
| Net Increase | $16,870 | $146,001 | $209,494 | $206,914 | $191,715 | $135,088 | $906,082 |

Adding four hours of cargo ramp agent time to each crew resulted in the figures shown in Paragraph 5 of this Declaration.

10.   Lastly, I requested an alternative estimate of what it would cost ASII to add an additional .5 hour to the estimated number of shifts of over 5 hours. However, this is not a realistic option to guarantee compliance with state break requirements, due to the unpredictability of the cargo flights and the short ramp times that ASII had to meet.  This would not necessarily allow the crew to meet the operational demands of ASII's cargo air carrier customers, since typically an employee wants the meal period toward the middle of a shift, and state law is very strict about when the meal break has to begin.  It was my belief that in a very high number of instances, the meal break would therefore occur in the middle of the actual unloading and loading of cargo and therefore in the middle of the "gate time," a period of time that could not be extended by ASII.  This would not allow ASII to meet its cargo air carriers' operational requirements.  For this purpose, I asked that it be assumed that this would have provided adequate coverage to avoid the payment of any missed meal break penalties, so the actual penalties paid by

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

CV13-00059-SVW (AGRx)
DECLARATION OF BRIAN DAVIS

ASII were backed out.  This analysis resulted in the following estimated cost increases for the period November 30, 2008 through November 30, 2013:

| | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | Total |
|---|---|---|---|---|---|---|---|
| .5 hrs. per shift | $17,605 | $213,727 | $192,993 | $209,753 | $175,546 | $147,379 | $957,003 |
| Prior Operating Profit/Loss | | | | | | | (1,231,959) |
| Net Operating Profit/ Loss | (134,917) | (433,882) | (163,839) | $23,650 | (487,081) | (995,277) | (2,191,346) |
| | | | | | | | |
| .5 hrs. per shift > 5 hrs. | $10,381 | $103,774 | $94,634 | $86,687 | $71,987 | $56,767 | $424,409 |
| Prior Operating Profit/Loss | | | | | | | (1,231,959) |
| Net Operating Profit/ Loss | (127,692) | (323,930) | (65,480) | $146,537 | (383,522) | (903,240) | (1,657,327) |

Even with this admittedly unrealistic approach, the operating losses would be staggering – significantly more that the already unacceptable losses that ASII was incurring.

11.    Regardless of which of the above approaches is taken, the resulting estimated cost to ASII is sufficiently high that it would have to pass the additional cost to the air carriers using its services.  In the future ASII will have to include estimates like this in its labor cost in its bids for cargo ramp agent service at LAX and at other airports in California where it provides these services, unless the Court rules that federal law preempts California's meal and rest break requirements.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

12.     I have been involved in negotiating contracts between ASII and cargo air carriers.  The air carrier always expressed the vital importance to them of the reduced cost to them using ASII to provide cargo ramp services compared with what it would cost them to provide these services using their own employees.

13.     Many of the contracts between ASII and its cargo air carrier customers at LAX were fixed cost contracts, i.e., ASII agreed to provide specified services at a specified price to the cargo air carrier unless the contract was modified. However, there were instances in which ASII's labor costs increased and ASII notified a carrier that ASII wanted to renegotiate the economic terms of the contract.  The air carrier almost always responded by putting the contract out to bid.  I am aware of instances in which a request by ASII for a minimal increase in its price resulted in the cargo air carrier putting the contract out to bid rather than agreeing to that small price increase, even though the cargo air carrier was otherwise satisfied with the services that ASII is providing.

14.     Most contracts between ASII and cargo air carriers, and between other service providers like ASII and air carriers, are entered into through a bidding process.  The air carrier will publish a request for bids (sometimes called a request for proposals) in which it describes the kinds of services that it is seeking.  Service providers then submit sealed bids.  The air carrier selects from among the bids it has received.  There have been times that ASII was not the selected provider for cargo ramp services.  When that happened with respect to a cargo air carrier, I tried to follow up with the air carrier to find out why ASII was not selected.  In some instances the air carrier responded that another service provider came in at a lower price that was extremely minimal to that of ASII, and on that basis the other provider was selected over ASII.   There have been times in which ASII has won a bid because it quoted a price that was a small fraction of a cent lower than the next higher bidder.

1    I declare under penalty of perjury under the laws of the United States and of

2 the States of Florida and California that the foregoing is true and correct.

3    Executed on <u>September 26th</u>, 2014, at <u>Fortlauderdale,</u> Florida.

4

5

6    _____

7    BRIAN  DAVIS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57381 Davis Decl -r10 (2).docx        12

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2014, a copy of the following document was filed electronically:

**DECLARATION OF BRIAN DAVIS IN SUPPORT OF AIRCRAFT SERVICE INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's System:

JONATHAN RICASA, ESQ.
LAW OFFICE OF JONATHAN RICASA
2341 Westwood Blvd., Suite 7
Los Angeles, CA  90064
Email:  jricasa@ricassalaw.com

KEITH A. JACOBY, ESQ.
LITTLER MENDELSON P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
Email:  kjacoby@littler.com

DATED: October 14, 2014

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

By: _____
       TERESA R. TRACY

Attorneys for AIRCRAFT SERVICE
INTERNATIONAL, INC.
E-Mail:  ttracy@gladstonemichel.com