1   Jonathan Ricasa (SBN 223550)
    jricasa@ricasalaw.com
2   LAW OFFICE OF JONATHAN RICASA
    2341 Westwood Boulevard, Suite 7
3   Los Angeles, California 90064
    Telephone: (424) 248-0510
4   Facsimile: (424) 204-0652

5   Attorney for Plaintiff
    Christopher Perry
6

7

8

9                    UNITED STATES DISTRICT COURT

10                        CENTRAL DISTRICT

11

12  Christopher Perry, individually and          )   Case No. CV13-00059-SVW(AGR)
    on behalf of all others similarly            )
13  situated,                                    )   **PLAINTIFF CHRISTOPHER
                                                 )   PERRY'S OPPOSITION TO
14              Plaintiff,                        )   DEFENDANT AIRCRAFT SERVICE
                                                 )   INTERNATIONAL, INC.'S MOTION
15       v.                                      )   FOR SUMMARY JUDGMENT OR,
                                                 )   IN THE ALTERNATIVE, PARTIAL
16  Aircraft Service International, Inc.,        )   SUYMMARY JUDGMENT
    and Doe One through and including           )
17  Doe One Hundred,                             )   ***Under Separate Cover:
                                                 )   (1) Response to Statement of
18              Defendants.                       )   Uncontroverted Facts; (2) Declaration
                                                 )   of Jonathan Ricasa; (3) Request for
19                                               )   Judicial Notice***
                                                 )
20                                               )   Hon. Stephen V. Wilson
                                                 )   Courtroom 6
21                                               )
                                                 )   Date:  November 17, 2014
22                                               )   Time:  1:30 p.m.
                                                 )   Place: 312 North Spring Street
23                                               )          Courtroom 6
                                                 )          Los Angeles, California 90012
24                                               )
                                                 )   Complaint Filed: November 30, 2012
25                                               )   Removal Date: January 4, 2013
                                                 )   Pre-Trial Conf. Date: None
26                                               )   Trial Date: None
27  _____)

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ……………………………...…………………….... 1

II.   LEGAL STANDARD ………………………………………………… 2

III.  ARGUMENT …………………………………………..……………… 3

    A.    The ADA Does Not Preempt Meal And Rest Break Laws ……….…...…. 3

        1.    There is ordinarily a strong presumption against preemption ………. 3

        2.    Congress did not intend for the ADA to preempt generally applicable state wage and hour laws …………………………………….…….... 3

        3.    The Ninth Circuit in Dilts held that California's meal and rest break laws plainly are not the sorts of laws related to prices, routes, or services that Congress intended to preempt…………………………. 7

        4.    Courts have upheld California's meal and rest breaks laws with respect to claims brought by employees in the airlines industry ..… 11

    B.    ASII Has Failed To Provide Facts Showing That Its Compliance With Meal and Rest Period Laws "Bind" Air Carriers To Particular Prices, Routes, Or Services …………………………………………………………....... 12

        1.    The Declaration of Brian Davis should be stricken because it constitutes improper expert testimony and lacks foundation ………. 14

        2.    The evidence does not show that ASII's compliance with meal and rest period laws binds *air carriers* to particular prices, routes, or services …………………….……………………….......................... 17

    C.    Defendant's Cases Are Distinguishable And/Or Unpersuasive ………….. 18

    D.    Plaintiff's State Law Claims Are Not Precluded By The Interstate Commerce Clause ………………………………………………….. 20

    E.    Plaintiff's Fifth Claim For Federal Overtime Is Not Preempted By The RLA …………………………………………………..…………… 21

i

F.     Plaintiff's State Law Claims Are Not Barred Based On ASII's Assertion That A Collective Bargaining Agreement Requires Interpretation ………. 22

G.     ASII Has Failed To Provide Facts Showing That Plaintiff's Third Claim For Continuing Wages Fails …………………………………...………... 24

CONCLUSION ………………………………………………………… 25

# TABLE OF AUTHORITIES

Page

## Cases

Air Transport Ass'n of Am., Inc. v. Cuomo,
520 F. 3d 218 (2d Cir. 2008) …………………………………………………….. 7

Air Transport Ass'n of Am. v. City & Cnty. of San Francisco
266 F.3d 1064 (9th Cir. 2001) ………………………...……………………… 5, 6, 7, 10, 14

Air Transport Ass'n of Am. v. City & Cnty. of San Francisco
992 F.Supp 1183 (N.D. 1998) …………………………………………………….. 12

Aircraft Serv. Int'l Group v. Teamsters Local 117
742 F.3d 1110 (9th Cir. 2014) …………………………………………………… 21

Allis-Chambers Corp. v. Luek
471 U.S. 202 (1985) …………………………………………………...……… 24

American Trucking Ass'ns, Inc. v. City of Los Angeles
660 F.3d 397 (9th Cir. 2011) ……………...……………………………………… 10

Angeles v. U.S. Airways, Inc.
2013 WL 622032 (N.D. Cal. 2013), 2013 U.S. Dist. LEXIS 22423 ………. 18, 19, 22, 23

Blackwell v. SkyWest Airlines, Inc.
2008 U.S. Dist. LEXIS 97955 (S.D. Cal. 2008) ………………………..……… 18, 19

Burnside v. Kiewit Pac. Corp.
491 F. 3d 1053 (9th Cir. 2007) ………………………………………………… 23

Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.
519 U.S. 316 (1997) …………………………………...……………………… 4, 5

Californians for Safe & Competitive Dump Truck Transp. v. Mendonca
152 F.3d 1184 (9th Cir. 1998) …………………….…………… 4, 9, 10, 11, 18, 19, 20

Californians For Safe and Competitive Dump Truck Transp. v. Mendonca
957 F.Supp. 1121 (N.D. Cal.1997) …………………..…………………………… 3

Calop Business Systems, Inc. v. City of Los Angeles
984 F.Supp.2d 981 (C.D. Cal. 2013) ……………………………….………………... 23

Cardenas v. McLane Foodservices
796 F. Supp. 2d 1246 (C.D. Cal. July 8, 2011) ……………..………….….………… 13

Celotex Corp. v. Catrett
477 U.S. 317 (1986) …………………………….……..…….……………………… 3

Charas v. Trans World Airlines, Inc.
160 F.3d 1259 (9th Cir. 1998) …………………….a…..………………………… 6

Dilts v. Penske Logistics, LLC
769 F.3d 637 (9th Cir. 2014) ……………………………..…. 1, 2, 7, 8, 18, 19, 20

Dilts v. Penske Logistics, LLC
819 F. Supp. 2d 1109 (2011) ……….…..……………………………………….. 8

Fitz-Gerald v. Skywest Airlines, Inc.
155 Cal. App. 4th 411, 422 (2007) ………………….………………….. 12, 19, 24

Fort Halifax Packing Co., Inc. v. Coyne
482 U.S. 1 (1987) …………….……..………………………………………… 4

Ginsberg v. Northwest, Inc.
695 F.3d 873 (9th Cir. 2012) …………….……………………………………… 5

Godfrey v. Oakland Port Services Corp.
230 Cal. App. 4th 1267 (2014) …………………….…………………...…………… 20

Gregory v. SCIE, LLC
317 F. 3d 1050 (9th Cir. 2003) …………………….………………….…………… 23

Iniguez v. Evergreen Aviation Ground Logistics Enter., Inc
Central District of California, Case No. CV 07-7181 AHM (VBK) (Sept. 11, 2009)
…………………………………………………………………………….. 11, 12, 13

Jimena v. UBS AG Bank
2010 U.S. Dist. LEXIS 117596, at *15, 2010 WL 4644408 (E.D. Cal. Nov. 5, 2010) ... 16

Jimenez v. Allstate Ins. Co.

765 F.3d 1161 (9th Cir. 2014) ……………………………………………… 25

Jones v. Spherion Staffing, LLC
2012 U.S. Dist. LEXIS 112396 (C.D. Cal. 2012) ……………………..…….. 25

Kirby v. Immoos
53 Cal. 4th 1244 (2012) ……………………………………………….……… 25

Livadas v. Bradshaw
512 U.S. 107 (1994) ………………………………………………………… 23

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.
475 U.S. 574 (1986) ………………………………………………………... 3

Medtronic, Inc. v. Lohr
518 U.S. 470 (1996) ……………………………………………..…………… 3

Miller v. Southwest Airlines Co.
923 F.Supp.2d 1206 (N.D. Cal. 2013) …………………………………… 18, 19, 20

Morales v. Trans World Airlines, Inc.
504 U.S. 374 (1992) ………………………………………………… 6, 12

Murphy v. Kenneth Cole Productions, Inc.
40 Cal. 4th 1094 (2007) …………………………………………………...……… 25

OrtizLopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico
248 F.3d 29 (1st Cir.2001) …………………………………………..…………… 15

Rowe v. N.H. Motor Transp. Ass'n
552 U.S. 364 (2008) …………………………………………… 1, 7, 11, 18, 19

Salgado v. General Motors Corporation
150 F.3d 135 (7th Cir.1998) ………………………………..……………… 16

Sanchez v. Aerovias De Mexico, S.A. De C.V
590 F.3d at 1027 (9th Cir. 2010) ………………………………………………… 4

Shaw v. Delta Air Lines, Inc.
463 U.S. 85 (1983) …………………………………………………………… 4

State v. Brown

836 S.W.2d 530 (Tenn.1992) ………………………………..…………………… 14

Tillison v. Gregoire
424 F.3d, 1093 (9th Cir. 2005) …………………………………………………….. 8

Tocher v. City of Santa Ana
219 F.3d 1040 (9th Cir.2000) ……………………………………………………… 20

Ventress v. Japan Airlines
603 F.3d 676 (9th Cir. 2010) …………………………………………………… 4, 6

Yeti by Molly v. Deckers Outdoor Corp.
259 F.3d 1101 (9th Cir. 2001) ………………………….…………………….. 15, 1


**State Statutes and Regulations**

California Labor Code
§ 201 …………………………………………………………………....… 24, 25
§ 202 …………………………………………………………………....… 24, 25
§ 203 ……………………………………………………………………...…… 24
§ 226.7 ……………………………………………………………………… 1, 11
§ 510 …………………………………………………………………… 22, 23, 24
§ 511 …………………………………………………………………………… 22
§ 512 ……………………………………………………………………….… 1, 11
§ 514 …………………………………………………………………… 22, 23, 24


**Federal Statutes**

29 U.S.C.
§ 213 (a) …………………………………………………...………… 21

45 U.S.C.
§ 181……………………………………………………………………… 21

49 U.S.C
§ 14501(c)(1) …………………………………………………………… 7
§ 14501(c)(2) …………………………………………………………… 9
§ 14501(c)(3) …………………………………………………………… 9
§ 40120 …………………………………………………………………… 4
§ 41713 (b)(1) …………………………………………………………… 4, 7

## I.   **INTRODUCTION**

The state laws at issue in this case are California's meal and rest break laws codified in California Labor Code sections 226.7 and 512.  These laws are not specific to any particular industry, rather, "[t]hey are the normal background rules for almost *all* employers doing business in the state of California."  See Dilts v. Penske Logistics, LLC, 769 F.3d 637, 647 (9th Cir. 2014) (emphasis in original).  The Ninth Circuit generally summarized the requirements contained in these laws and their corresponding regulations as follows:

> Employers must provide a meal break of 30 minutes for an employee who works more than five hours a day, plus a second meal break of 30 minutes for an employee who works more than 10 hours a day. For employees who work no more than six hours, the meal break may be waived by mutual consent of the employer and employee; for employees who work no more than 12 hours, one of the two meal breaks may be waived by mutual consent. If the nature of the work prevents an employee from taking an off-duty meal break, the employer and employee may agree to an on-duty meal break by mutual consent. For transportation workers whose daily work time is at least three and one-half hours, employers must provide a paid rest period of 10 minutes for every four hours . . . The regulations governing transportation workers are consistent with those governing workers in other industries.

See id. at 641-42 (internal citations omitted).

These state laws requiring all workers to take breaks for meals and rest do not directly regulate an air carrier's prices, routes, or offered services.  Accordingly, the critical question is whether the law's "indirect" effect on air carriers' prices, routes, and services has a significant enough impact on Congress' deregulatory goal to warrant preemption.  See Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008).  The Ninth Circuit answered this question in July in the context of the trucking industry and

1  the Federal Aviation Administration Authorization Act (the "FAAAA"), the analog to the

2  Airline Deregulation Act of 1978 ("ADA").  Applying the controlling Supreme Court

3  case law and relevant Ninth Circuit rulings, the Circuit held that "California's meal and

4  rest break laws plainly are not the sorts of laws 'related to' prices, routes, or services that

5  Congress intended to preempt."  See Dilts, 769 F.3d at 647.

6       In the face of this on-point precedent, Aircraft Service International, Inc. ("ASII")

7  argues that since Dilts addresses FAAAA preemption in the context of the trucking

8  industry, Dilts is neither binding nor persuasive.  This Memorandum addresses the Ninth

9  Circuit's reasoning in reaching its non-preemption holding and explains why Defendant's

10 situation is not distinguishable in ways that require the Court to find that the state laws

11 are preempted as applied to it.

12      ASII has also failed to factually demonstrate that its compliance with California's

13 meal and rest period laws binds air carriers to particular prices, routes, or services.

14 ASII's evidence consists of declarations from ASII's employees.  These employees

15 identify no evidence of any study, report, evaluation, etc., regarding the impact of

16 California's meal and rest period laws on routes, services, or prices of ASII's client-

17 companies.  ASII claims it fully complied with California's meal and rest break laws, but

18 provides no evidence of the impact on any of its client-companies' prices, routes or

19 services.

20      Furthermore, Plaintiff's fifth claim for federal overtime is not preempted by the

21 Railway Labor Act ("RLA").  Moreover, Plaintiff's state law claims are not barred based

22 on ASII's assertion that a collective bargaining agreement requires interpretation.

23 Finally, ASII has failed to provide facts showing that Plaintiff's third claim for

24 continuing wages fails.  Accordingly, the Motion should be denied in its entirety.

25 **II.**   **LEGAL STANDARD**

26      Summary judgment is only appropriate when it is demonstrated that there exists

27 "no genuine issue as to any material fact and that the movant is entitled to judgment as a

28 matter of law."  Fed.R.Civ.P. 56(c).  Under summary judgment practice, the moving

1   party always bears the responsibility of identifying those portions of "the pleadings,

2   depositions, answers to interrogatories, and admissions on file, together with the

3   affidavits, if any," which it believes demonstrate the absence of a genuine issue of

4   material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, (1986), quoting Fed.R.Civ.P.

5   56(c).  All reasonable inferences that may be drawn from the facts placed before the court

6   must be drawn in favor of the opposing party.  Matsushita Elec. Indus. Co. v. Zenith

7   Radio Corp., 475 U.S. 574, 587 (1986).

8   **III.   ARGUMENT**

9       **A.    The ADA Does Not Preempt Meal And Rest Break Laws.**

10          ASII argues Congress intended the ADA to preempt California's long-standing

11   meal and rest break laws.  This argument is contrary to well-established law.  Both the

12   United States Supreme Court and the Ninth Circuit have made clear that generally

13   applicable state wage and hour laws are not preempted as a matter of law.

14              1.    There is ordinarily a strong presumption against preemption.

15          Any preemption analysis "begins with the starting presumption that Congress does

16   not intend to supplant state law."  Californians For Safe and Competitive Dump Truck

17   Transp. v. Mendonca ("Mendonca"), 957 F.Supp. 1121, 1124 (N.D. Cal.1997), *cert*

18   *denied*.  "It is never assumed lightly, that Congress has derogated state regulation."  Id.

19   "[T]the question [of] whether a certain state action is pre-empted by federal law is one of

20   congressional intent. The purpose of Congress is the ultimate touchstone."  Id.  A

21   presumption against preemption exists.  See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485

22   (1996) (federal laws do not supersede the historic police powers of States unless

23   Congress clearly intends to do so).

24              2.    Congress did not intend for the ADA to preempt generally
                      applicable state wage and hour laws.
25

26          The preemption clause in the ADA provides that a "State . . . may not enact or

27   enforce a law, regulation, or other provision having the force and effect of law related to

28

a price, route, or service of an air carrier . . . ."  49 U.S.C. § 41713(b)(1).[1]  When

interpreting a preemption clause, courts "must give effect to [its] plain language unless

there is good reason to believe Congress intended the language to have some more

restrictive meaning."  Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983).  In all

preemption cases, "the purpose of Congress is the ultimate touchstone."  See Sanchez,

590 F.3d at 1029-30.  The Court's preemption analysis "is also guided by the

presumption that because the States are independent sovereigns in our federal system, . . .

Congress does not cavalierly preempt state-law causes of action."  Ventress v. Japan

Airlines, 603 F.3d 676, 682 (9th Cir. 2010) (internal quotation marks omitted).  "This is

especially true in the area of employment law, which 'falls within the traditional police

power of the State.'"  Id. (quoting Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1,

21 (1987)).

   With respect to the FAAAA, in Mendonca, the Ninth Circuit found no preemption,

reasoning, "[t]he language and structure of the [FAAAA] does not evidence a clear and

manifest intent on the part of Congress to preempt [California prevailing wage laws]."

Mendonca, 152 F.3d at 1185.  Noting the FAAAA's lack of express terms demonstrating

any intent to displace state wage and hour laws, the Ninth Circuit examined case law on

identical "related to" preemption clauses in laws such as ERISA and the Anti-

Deregulation Act of 1978.  Citing Cal. Div. of Labor Standards Enforcement v.

Dillingham Constr., N.A., 519 U.S. 316 (1997), the Ninth Circuit held that California's

wage laws had "no more than an *indirect, remote, and tenuous* effect on motor carriers"

---

[1] The ADA, originally located at 49 App. U.S.C. § 1301, et seq. was recodified in
1994 at 49 U.S.C. § 40120, et seq. and renamed the Federal Aviation Authority
Authorization Act.  Courts continue to refer to it as the ADA.  See Sanchez v. Aerovias
De Mexico, S.A. De C.V., 590 F.3d 1027, 1029 n.3 (9th Cir. 2010).  As originally
enacted, the preemption clause applied to an air carrier's "rates, routes, or services," but
Congress indicated that the change from "rates" to "prices" was intended to have no
substantive impact.  See id. (citing H.R.Rep. No. 103–677, at 83 (1994) (Conf. Rep.),
reprinted in 1994 U.S.C.C.A.N. 1715, 1755).

1    and, as such, were not intended to be preempted" by the FAAAA.  Id. (emphasis in

2    original).

3          In making this ruling, the Ninth Circuit considered evidence the challenged law

4    increased prices by 25% and caused the defendant to adjust its routes.  Id., at 1186-1187.

5    Despite these price increases and route adjustments, the Ninth Circuit, citing Justice

6    Scalia's concurrence in Dillingham, held "that [prevailing wage laws do not fall] into the

7    field of laws regulating prices, routes, or services."  Id. at 1189.[2]  The Ninth Circuit

8    reasoned:

9          Of particular note is Justice Scalia's concurrence in *Dillingham*. He stressed

10         . . . the " 'relate to' clause of the preemption provision is meant, not to set

11         forth a test for preemption, but rather to identify the field in which ordinary

12         field pre-emption applies. . . ."  Justice Scalia further stated that "applying

13         the 'relate to' provision [to prevailing wage laws] was . . . doomed to failure,

14         since . . . everything is related to everything else."

15   Id. (citing Dillingham, 519 U.S. at 336).  Justice Scalia reasoned the "relate to" language

16   was only to identify the field of preemption, and "except as establishing that, 'relates to'

17   is irrelevant."  Dillingham, 519 U.S. at 336 (emphasis added).

18         "Congress's clear and manifest purpose in enacting the ADA was to achieve . . .

19   the economic deregulation of the airline industry. Specifically, the ADA . . . was

20   designed to promote maximum reliance on competitive market forces."  Air Transport

21   Ass'n of Am. v. City & Cnty. of San Francisco, 266 F.3d 1064, 1070 (9th Cir. 2001)

22   (internal quotation marks omitted).  More precisely, Congress concluded that "state-by

23   state regulation was inefficient," Ginsberg v. Northwest, Inc., 695 F.3d 873, 876 (9th Cir.

24   2012), and that "'maximum reliance on competitive market forces' would best further

25

26         [2] See also id. at fn. 6: "The test for . . . ordinary 'field preemption'. . . is whether

27   Congress has declared it policy with respect to the matter on which the state asserts the

     right to act. To repeat, nowhere in the FAAAA Act do we find any mention of Congress's

28   intent to occupy the field of general prevailing wage laws." (Citations omitted).

1  'efficiency, innovation, and low prices' as well as 'variety [and] quality . . . of air

2  transportation services.'" Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378

3  (1992). "To ensure that States would not undo federal deregulation with regulation of

4  their own, the ADA included a pre-emption provision . . . ." Id.

5        To repeat, the preemption clause provides that "a state . . . may not enact or

6  enforce a law, regulation, or other provision having the force and effect of law related to

7  a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The Supreme Court

8  defines "related to" as "having a connection with, or reference to carrier rates, routes, or

9  services," Morales, 504 U.S. at 383 (emphasis added). Although the Supreme Court has

10 not defined "service," our circuit defines "service" as " 'the prices, schedules, origins and

11 destinations of the point-to-point transportation of passengers, cargo, or mail.' "

12 Ventress, 603 F.3d at 682 (quoting Charas v. Trans World Airlines, Inc., 160 F.3d 1259,

13 1261 (9th Cir. 1998) (en banc)). "Airlines' 'rates' and 'routes' generally refer to the

14 point-to-point transport of passengers. 'Rates' indicates price; 'routes' refers to courses of

15 travel." Charas, 160 F.3d at 1265.

16       "To determine whether a local law has a prohibited 'connection with' a price, route

17 or service, [courts] look both to the objectives of the [ADA] statute as a guide to the

18 scope of the state law that Congress understood would survive, as well as to the nature of

19 the effect of the state law on [price, route or service]." Air Transport, 266 F.3d at 1071

20 (internal citation and quotation marks omitted). The Supreme Court has held, for

21 example, that if the State attempts to regulate how airlines may advertise airfares, this has

22 a "forbidden significant effect upon fares" and unavoidably "relate to" airline rates.

23 Morales, 504 U.S. at 388-89. Morales also held, however, that a state law may "relate to"

24 airline services, prices, or routes, and thereby be preempted, "even if the law is not

25 specifically designed to affect such [services, prices, or routes], or the effect is only

26 indirect." Id. at 386 (internal quotation marks omitted). At a minimum, however, courts

27 require the effect on rates, routes or services to be more than "tenuous, remote, or

28 peripheral." Id. at 390. To determine if the State has crossed that threshold, the proper

inquiry is whether the challenged provision, directly or indirectly, "binds the air carrier to a particular price, route or service and thereby interferes with competitive market forces within the air carrier industry." <u>Air Transport</u>, 266 F.3d at 1072.

> ### 3.   The Ninth Circuit in <i>Dilts</i> held that California's meal and rest break laws plainly are not the sorts of laws related to prices, routes, or services that Congress intended to preempt.

Two federal regulatory schemes in particular contain preemption clauses: the ADA of 1978, dealing with air carriers, and the FAAAA of 1994, dealing with the motor carriers (the trucking industry).  Both laws bar the application of California laws "relating to the rates, routes, or services" of any air or motor carrier.  The ADA, which was passed by Congress as part of a scheme to deregulate the airline industry, provides that state governments "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier that may provide air transportation under this subpart."  49 U.S.C. § 41713(b)(1).  Enacted in 1994, the FAAAA was modeled on the ADA.  <u>See</u> <u>Dilts v. Penske Logistics, LLC</u>, 769 F.3d at 643.  The FAAAAA provides: "States may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).  Although <u>Dilts</u> is an employment class action in the context of the trucking industry, the ADA and the FAAAA's preemption provisions should be interpreted consonantly inasmuch as they contain identical language, <u>Rowe</u>, 552 U.S. at 370.

Contrary to ASII's argument, the Ninth Circuit decision in <u>Dilts</u> is controlling here. Courts frequently interpret the ADA's preemption provision in light of case law applying the FAAAA, an identical provision that was enacted after the ADA.  And the converse is also true: Courts frequently interpret the FAAAA in light of prior analyses of the ADA. <u>See</u>, <u>e.g.</u>, <u>Rowe</u>, 552 U.S. at 364 (applying the FAAAA in light of the Supreme Court's ADA precedents); <u>Air Transport Ass'n of Am., Inc. v. Cuomo</u>, 520 F. 3d 218, 222-24 (2d Cir. 2008) (applying <u>Rowe</u> to hold that the ADA preempted a "passengers' bill of

1    rights"). In Defendant's earlier motion for judgment on the pleadings, Defendant stated
2    that "precedent under . . . the ADA, and the FAAA are used interchangeably." (Dkt. 16
3    at page 8, fn. 4).

4        On July 9, 2014, the Ninth Circuit in <u>Dilts v. Penske Logistics, LLC</u>, ruled that
5    "California's meal and rest break laws plainly are not the sorts of laws 'related to' prices,
6    routes, or services that Congress intended to preempt." <u>See Dilts</u>, 769 F.3d at 647.  In
7    <u>Dilts</u>, delivery drivers for Penske Logistics LLC argued that their work environment
8    precluded them from taking 30-minute unpaid meal breaks and ten-minute paid rest
9    breaks, which employers must provide under California law.  Previously, U.S. District
10   Judge Bencivengo of the Southern District of California dismissed the certified class'
11   claims, holding that the application of state meal and rest break laws to these truck
12   drivers would have a significant effect on the company's prices, routes, and services,
13   because the break requirements would impact the types and lengths of feasible routes.
14   <u>Dilts v. Penske Logistics, LLC</u>, 819 F. Supp. 2d 1109 (2011).

15       On appeal, the Ninth Circuit reversed, reasoning that: "Preemption analysis begins
16   with the presumption that Congress does not intend to supplant state law. Although
17   Congress clearly intended FAAAA to preempt some state regulations of motor carriers
18   who transport property, the scope of preemption must be tempered by the presumption
19   against the preemption of state police power regulations." <u>Dilts</u>, 769 F.3d at
20   642-43 (quoting <u>Tillison v. Gregoire</u>, 424 F.3d, 1093, 1098 (9th Cir. 2005)).  "Wage and
21   hours laws constitute areas of traditional state regulation[.]" <u>Id.</u> (citing <u>Dillingham</u>, 519
22   U.S. at 330-34).

23       In discussing Congress' intent in crafting the FAAAA's "related to" preemption
24   test, the Ninth Circuit explained that "[t]he sorts of laws that Congress considered when
25   enacting the FAAAA included barriers to entry, tariffs, price regulations, and laws
26   governing the types of commodities that a carrier could transport." <u>Id.</u> at 644 (citing H.R.
27   Conf. Rep. No. 103-677, at 86 (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1758).  In
28   the statute, "[t]he FAAAA expressly does not regulate a state's authority to: enact safety

1   regulations based on vehicle size, weight, and cargo; impose certain insurance, liability,

2   or standard transportation rules; regulate the intrastate transport of household goods and

3   certain aspects of tow-truck operations; or create uniform cargo or antitrust immunity

4   rules." <u>See</u> <u>id.</u> (citing 49 U.S.C. § 14501(c)(2), (3)).  This list of types of laws that would

5   not be preempted under the FAAAA was "'not intended to be all inclusive, but merely to

6   specify some of the matters which are not "prices, rates or services" and which are

7   therefore not preempted.'" <u>See</u> <u>id.</u> (quoting H.R. Conf. Rep. No. 103-677, at 84

8   (1994), reprinted in 1994 U.S.C.C.A.N. 1715, 1756).  "Accordingly, Congress did not

9   intend to preempt generally applicable state transportation, safety, welfare, or business

10  rules that do not otherwise regulate prices, routes, or services." <u>Id.</u>

11       The Ninth Circuit explained that, under the FAAAA, "[l]aws are more likely to be

12  preempted when they operate at the point where carriers provide services to customers at

13  specific prices." <u>Id.</u> at 646.  Further, the Ninth Circuit explained:

14       On the other hand, generally applicable background regulations that are

15       several steps removed from prices, routes, or services, such as prevailing

16       wage laws or safety regulations, are not preempted, even if employers must

17       factor those provisions into their decisions about the prices that they set, the

18       routes that they use, or the services that they provide.  Such laws are not

19       preempted even if they raise the overall cost of doing business or require a

20       carrier to redirect or reroute some equipment.

21  <u>Id.</u> (citing <u>Mendonca</u>, 152 F.3d at 1189) (holding that the FAAAA does not preempt

22  California's minimum wage law because, although it increased prices by up to 25%, the

23  law was only related to prices, routes, and services in an "indirect, remote, and tenuous

24  way" and did not "acutely interfere[] with the forces of competition.").  "Nearly every

25  form of state regulation carries some cost. The statutory text tells us, though, that in

26  deregulating motor carriers and promoting maximum reliance on market forces, Congress

27  did not intend to exempt motor carriers from every state and regulatory scheme of general

28  applicability." <u>Id.</u>  The Ninth Circuit concluded:

1   In short, even if state laws increase or change a motor carrier's operating

2   costs, 'broad law[s] applying to hundreds of different industries' with no

3   other 'forbidden connection with prices[, routes,] and services' – that is,

4   those that do not directly or indirectly mandate, prohibit, or otherwise

5   regulate certain prices, routes, or services – are not preempted by the

6   FAAAA.

7   Id. at 647 (quoting Air Transp. Ass'n, 266 F.3d at 1074).

8       The Ninth Circuit did not have a difficult time applying these FAAAA preemption

9   principles to California's meal and rest break laws:

10  Although we have in the past confronted close cases that have required us to

11  struggle with the "related to" test, and refine our principles of FAAAA

12  preemption, we do not think that this is one of them . . . California's meal

13  and rest break laws plainly are not the sorts of laws "related to" prices,

14  routes, or services that Congress intended to preempt. They do not set prices,

15  mandate or prohibit certain routes, or tell motor carriers what they may or

16  may not provide, either directly or indirectly. They are "broad law[s]

17  applying to hundreds of different industries" with no other "forbidden

18  connection with price[s, routes,] and services." Air Transp. Ass'n, 266 F.3d

19  at 1072. They are normal background rules for almost all employers doing

20  business in the state of California. And while motor carriers may have to

21  take into account the meal and rest break requirements when allocating

22  resources and scheduling routes – just as they must take into account state

23  wage laws, Mendonca, 152 F.3d at 1189, or speed limits and weight

24  restrictions, 49 U.S.C. § 14501(c)(2) – the laws do not "bind" motor carriers

25  to specific prices, routes, or services, Am. Trucking, 660 F.3d at 397. Nor do

26  they "freeze into place" prices, routes, or services or 'determin[e] (to a

27  significant degree) the [prices, routes, or] services that motor carriers will

28  provide,' Rowe, 552 U.S. at 372.

1

2     Further, applying California's meal and rest break laws to motor carriers

3     would not contribute to an impermissible "patchwork" of state-specific laws,

4     defeating Congress' deregulatory objectives. The fact that laws may differ

5     from state to state is not, on its own, cause for FAAAA preemption. In the

6     preemption provision, Congress was concerned only with those state laws

7     that are significantly "related to" prices, routes, or services. A state law

8     governing hours is, for the foregoing reasons, not "related to prices, routes or

9     services" and therefore does not contribute to "a patchwork of state service-

10    determining laws, rules, and regulations." Rowe, 552 U.S. at 373 (emphasis

11    added by Ninth Circuit). It is instead more analogous to a state wage law

12    which may differ from the wage law adopted in neighboring states but

13    nevertheless is permissible. Mendonca, 152 F.3d at 1189.

14    Id. at 647-48.  Thus, the Ninth Circuit held that the FAAAA does not preempt

15    California's meal and rest break laws contained in California Labor Code sections 226.7

16    and 512.  Id. at 650.

17        ASII's arguments here are essentially the same as the arguments made by the

18    defendants in *Dilts*—arguments that the Ninth Circuit in *Dilts* rejected.  The holding in

19    *Dilts* therefore defeats Defendant's attempt to use the ADA to preempt Perry's state law

20    claims.  Defendant's Motion should be denied.

21            4.    Courts have upheld California's meal and rest breaks laws with
                    respect to claims brought by employees in the airline industry.
22

23        ASII fails to identify or even attempt to distinguish the numerous cases where

24    courts have found that the ADA does not preempt employment laws with respect to

25    claims brought by employees in the airline industry.  In a case nearly identical to the case

26    at hand, Iniguez v. Evergreen Aviation Ground Logistics Enter., Inc., Central District of

27    California, Case No. CV 07-7181 AHM (VBK) (Sept. 11, 2009) (Pl. Request for Judicial

28    Notice, Ex. 7), ramp agents asserted state law wage-and-hour claims against their

employer, Evergreen Aviation Ground Logistics Enterprise, Inc., which was not an air carrier.  The court determined that the defendant was not an air carrier and denied the employer's motion for summary judgment.  Relying on <u>Mendonca</u>, the court ruled that the plaintiffs' meal and rest break claims were not preempted by the ADA. This case is no different, and the result should follow.

In <u>Fitz-Gerald v. Skywest Airlines, Inc.</u>, 155 Cal. App. 4th 411, 422 (2007), the California Court of Appeal held that flight attendants' state meal and rest break claims and state minimum wage claims against the airline were not preempted by the ADA.  The Court stated: "Although the ADA has been broadly interpreted as preempting state enforcement actions having a connection with, or reflect to, airline 'rates, routes or services,' it has its limits. [Citations.] If the rule was otherwise, any string of contingencies is sufficient to establish a connection with price, route, or service, [and] there will be no end to ADA preemption." (Quoting <u>Morales</u>, <u>supra</u>, 384 and <u>Air Transport Ass'n of Am.</u>, <u>supra</u>, 992 F. Supp. at 1183).

Unlike ASII's outlier cases (discussed below), the significant weight of authority faithfully adheres to <u>Iniguez</u> and <u>Fitz-Gerald</u> and recognizes the ADA was never intended to supplant generally applicable state wage laws.

**B.   ASII Has Failed To Provide Facts Showing That Its Compliance With Meal And Rest Period Laws "Bind" Air Carriers To Particular Prices, Routes, Or Services.**

In addition to the fact that the ADA was not intended to preempt California meal and rest period laws, the Motion should be denied for another reason: ASII's failure to offer any competent and persuasive evidence demonstrating that compliance with California's meal and rest period laws "binds" ***air carriers*** to particular prices, routes, or services.

In <u>Cardenas v. McLane Foodservices</u>, 796 F. Supp. 2d 1246 (C.D. Cal. July 8, 2011), the court denied the employer's motion for summary judgment which, like ASII's motion, was based on the argument that the FAAAA preempts California meal and rest

period laws.  The court held summary judgment was improper because the employer relied on speculative and attenuated evidence to suggest the impact that compliance with California's meal and rest period laws would have on prices, routes, or services.  Overall, it is the employer's burden to provide competent evidence demonstrating meal and rest period laws have more than an "indirect, remote or tenuous effect" on prices, routes, or services.  Id.  Simply showing that the employer may make changes to its routes, for example, is entirely insufficient.  Id.

The approach taken by the court in Cardenas is consistent with Iniguez.  In determining that ramp agents' claims were not preempted by the ADA, the court made a detailed factual inquiry into whether each of the challenged provisions had more than a tenuous or remote effect on price, routes, or services.  For example, in considering Evergreen Aviation Ground Logistics Enterprise, Inc.'s "evidence" that hiring more ramp agents to comply with California's meal and rest break laws would significantly increase its costs, the Court concluded that "Defendant has not presented any evidence on how hiring more employees to avoid service disruptions would affect the prices airlines charge consumers."  (Pl. Request for Judicial Notice, Ex. 7, at page 14).

In the present case, this Court denied ASII's earlier motion to dismiss on the preemption issue.  The Court stated:

> At this early stage, the Court has no factual context in which it may assess how enforcing these laws against contractors would impact ***air carriers***. While the Court expresses no view on the ultimate merits of that question, it seems that such a determination would depend, at a minimum, on the economics of, and market for, hiring private contractors. In any event, the Court cannot conclude as a matter of law that enforcing these laws against contractors such as Defendant would necessarily bind air carriers to particular services, routes, or prices, so as to interfere with competitive market forces in the airline industry. Air Transport, 266 F.3d at 1072.

1 (Ricasa Decl., Ex. 2, at page 6).  Further, the Court explained: "At this stage, no

2 pleadings foreclose the possibility, for example, that cargo agents can work at staggered

3 intervals, such that different agents may take breaks at different times without

4 appreciably interfering with the provision of cargo services to the airlines." (Ricasa

5 Decl., Ex. 2, at page 7).

6        Here in ASII's motion for summary judgment, ASII relies on speculative and

7 inadmissible evidence to demonstrate the impact compliance with meal and rest period

8 laws has on the operations of air carriers.  ASII has also maintained throughout this

9 litigation that it has always complied with California meal and rest period laws.

10 However, ASII fails to provide any specifics of where or how this alleged compliance has

11 limited or impacted the operations of its air carrier customers.  This lack of evidence is an

12 independent reason to deny ASII's motion.

13              1.    <u>The Declaration of Brian Davis should be stricken because it</u>

14                    <u>constitutes improper expert testimony and lacks foundation.</u>

15        This Court should exclude the declaration of Brian Davis ("Davis").  The

16 undisputed evidence makes clear that Davis, ASII's Regional Vice President, is

17 completely unqualified to render any expert opinions on the impact of California's meal

18 and rest period laws on ASII's operations and that his conclusions are completely

19 unsubstantiated and false.

20        First, there is little doubt Davis's declaration constitutes expert testimony.  "[T]he

21 distinction between lay and expert witness testimony is that lay testimony 'results from a

22 process of reasoning familiar in everyday life,' while expert testimony 'results from a

23 process of reasoning which can be mastered only by specialists in the field.' " Fed. R.

24 Evid. 701 <u>advisory committee's note</u> (2000 amendments) (<u>quoting</u> <u>State v. Brown</u>, 836

25 S.W.2d 530, 549 (Tenn.1992)).  Davis's declaration offers opinions on matters outside

26 the ordinary knowledge of judges or jurors, or even cargo ramp agents for that matter,

27 including: his opinion that the results of a review and analysis purportedly performed by

28 Richard Piper, ASII's Senior Manager, Financial Planning and Analysis, establish that

strict compliance with California's meal and rest period laws would have more than doubled its cumulative operating loss for Department 145 (Davis Decl., ¶ 4); his opinion that compliance with California's meal and rest period laws, by adding additional cargo ramp agent for four hours to each of the crews, would have almost doubled its operating losses (Davis Decl., ¶ 5); and his opinion that the additional *hypothetical* cost of compliance with California's meal and rest period laws would have to have been passed to the air carriers using its services (Davis Decl., ¶ 11).

Each of the above opinions can and should only be rendered by persons knowledgeable of the economics of, and market for, hiring private contractors that provide cargo services to air carriers. Davis's declaration is simply an improper attempt to offer expert testimony by an unqualified lay witness.

Although his declaration contains only expert testimony, ASII never disclosed Davis as a witness as required by Rule 26 of the Federal Rules of Civil Procedure. (Ricasa Decl. ¶ 5). Indeed, ASII has still not designated Davis as an expert witness. (Ricasa Decl. ¶ 6). ASII's failure to comply with Rule 26 is grounds to strike his testimony.[3]

In addition to the failure to comply with Rule 26, Davis's declaration should be stricken because it lacks foundation. There is nothing which demonstrates Davis is qualified to issue opinions on the matters in his declaration. The only facts that the declaration provides about his background is that he has been with ASII since November

---

[3] The Ninth Circuit gives "wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." Yeti by Molly v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001), citing OrtizLopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 248 F.3d 29, 34 (1st Cir.2001). Notably, the Ninth Circuit has found "even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the . . . disclosure requirements of Rule 26(a)." Id. Moreover, the sanction of exclusion is self-executing, and "is thus automatic and mandatory unless the part to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." Jimena v. UBS AG Bank, 2010 U.S. Dist. LEXIS 117596, at *15, 2010 WL 4644408 (E.D. Cal. Nov. 5, 2010), quoting Salgado v. General Motors Corporation, 150 F.3d 135, 142 (7th Cir.1998); see also Yeti by Molly, 259 F.3d at 1106.

2013 and is the Regional Vice President for the region that includes Los Angeles International Airport. Davis Decl., ¶ 1. It is not axiomatic that someone in his position at a company that serves as a private contractor of cargo services, is qualified to opine on how meal and rest periods affect prices, routes, or services of the airlines ASII serves. His declaration does not detail his primary job responsibilities or his involvement in the economics of the company.

Despite the lack of information regarding his background, Davis nevertheless offers wide-ranging expert testimony on the impact of meal and rest period laws on the services ASII provides and the hypothetical costs of complying with those laws. Davis's declaration does not lay the foundation that he is qualified to speak on such matters.

Davis also fails to identify any specific documents he relied on for his conclusions, other than making vague references to an analysis purportedly supplied by Mr. Piper. There is no study, examination, report, data or anything else which demonstrates, for example, that compliance with California's meal and rest period laws would necessarily impact air carrier's services, routes or prices. Further, Davis does not identify any particular service, route, or price of air carriers that would be impacted. He also does not estimate the cost that compliance with meal and rest period laws would have (or has) on air carrier's operations. His conclusions are therefore wholly speculative, lacking in any evidentiary support, and should and must be stricken. See Fed. R. Evid. 702 (expert testimony must be based on sufficient facts and data).

It is clear that Davis's declaration should be disregarded and that ASII has failed to meet its burden to establish preemption.

2.   The evidence does not show that ASII's compliance with meal and rest period laws binds ***air carriers*** to particular prices, routes, or services.

ASII claims that compliance with California meal and rest period laws would dramatically impact its operations at LAX, which in turn would impact its client-companies. According to ASII, however, it has always complied with these laws. For

example, in the parties' Joint Report of Early Meeting of Counsel Pursuant to FRCP Rule 26(f) and LR 26-1 ("Joint Report") (Ricasa Decl., Ex. 3) at 3:14 -4:7, ASII contends Plaintiff "was paid a missed meal break penalty on approximately 5.6% of the days he was potentially eligible for a meal break" and that class members were paid missed meal break penalties approximately 2,838 times).  [See Def.'s [Proposed] Statement of Uncontroverted Facts, No. 22 ("There was often downtime between the time the cargo ramp agent started work and the arrival of the aircraft at the ramp, and during this time the cargo ramp agents could take a break.")].  As such, it should be able to articulate the specific impact this alleged compliance has had on the prices, routes or services of its client-companies.  It has not and cannot.

Given the inapplicability of the ADA to state law effects on ASII's prices and services, ASII's motion presents little evidence of how Plaintiff's state law claims would affect the services, prices and routes of ***air carriers*** providing air transportation, *i.e.*, the airlines ASII serves.  For example, ASII offers no evidence of any services that its client-companies have not been able to provide in California that are provided in other states because of California's meal and rest period laws.  There is no evidence whether its client-companies had to raise prices because of compliance with California's meal and rest period laws.  There is no evidence of any change or impact on routes of air carriers as a result of ASII's compliance with California meal and rest period laws.  There is no evidence of any study, report, evaluation, etc., regarding the impact of California's meal and rest period laws on routes, services, or prices of ASII's client-companies.  This is consistent with ASII's discovery responses, which admitted ASII has no documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws.  (Ricasa Decl., Ex. 5).

Ultimately, ASII has not demonstrated as a matter of law that its compliance with California's meal and rest period laws binds its client-companies to particular routes, prices, or services.  The Motion must be denied.

### C.    Defendant's Cases Are Distinguishable And/Or Unpersuasive.

ASII cites three non-binding district court decisions that found California's M&RB laws are preempted, <u>Angeles v. U.S. Airways, Inc.</u>, 2013 WL 622032 (N.D. Cal. 2013), 2013 U.S. Dist. LEXIS 22423, <u>Blackwell v. SkyWest Airlines, Inc.</u>, 2008 U.S. Dist. LEXIS 97955 (S.D. Cal. 2008), and <u>Miller v. Southwest Airlines Co.</u>, 923 F.Supp.2d 1206 (N.D. Cal. 2013).  Each of these cases were issued before <u>Dilts</u> and are distinguishable, and inconsistent with <u>Dilts</u>, <u>Rowe</u>, and <u>Mendonca</u>.

In <u>Blackwell</u>, the district court found that the ADA preempted claims brought under California's meal and rest break statutes.  But <u>Blackwell</u> neither cited nor discussed <u>Mendonca</u>.  Moreover, the record in <u>Blackwell</u> is distinguishable from the record in this case.  <u>Blackwell</u> was brought by a Skywest employee who alleged that Skywest — a defendant that directly provided airline service (as opposed to ASII, which only handles ground operations) — failed to provide meal periods or paid rest periods.  Unlike ASII, Skywest presented "robust and uncontroverted" evidence that high labor costs had led Skywest to discontinue services on routes to 16 stations across 11 states, that compliance would likely cause smaller communities to lose access to air transportation, that it would cost over $3,250,000 in additional annual labor costs if Skywest complied with California law, and that to retain profitability Skywest would have to pass labor costs on to the consumer.  <u>Id.</u> at *18-19.  There is no such record of price and service effects with respect to ASII's client-companies in this case.

As for <u>Angeles</u> and <u>Miller</u>, the chief deficiency in these cases is that preemption was found without *any factual showing* from the *air carrier* company defendants that compliance with California's meal and rest period laws had a significant impact on price, routes, and services.  Instead, the preemption determination was made in the context of a motion for judgment on the pleadings *as a matter of law*.  Angeles, 2013 WL 622032 at *8-9; <u>Miller</u>, 923 F.Supp.2d at 1212-13.  This approach is completely at odds with <u>Dilts</u>, where the courts undertook detailed factual analyses to determine whether the regulations

1    and laws at issue significantly impacted the motor carriers' operations.  Moreover,

2    Angeles neither cited nor discussed Mendonca.

3         In any event, the conclusions reached in Angeles, Blackwell, and Miller (that

4    compliance with California's meal and rest break laws would significantly interfere with

5    air carrier's operations) is belied by the position of ASII throughout this litigation that it

6    has fully complied with California's wage laws.  ASII claims it leaves it up to cargo ramp

7    agents when to take a break, and that cargo ramp agents' downtime allow them to take

8    meal and rest periods.  (Def.'s [Proposed] Statement of Uncontroverted Facts, No. 22).

9    That is the exact opposite of the conclusions drawn in Angeles, Blackwell, and Miller.

10        More generally, each of those district court cases are inconsistent with Dilts, Rowe,

11   and Mendonca, which held *as a matter of law* that generally applicable state wage and

12   hour laws are not preempted.  Miller's attempt to distinguish Mendonca on the grounds

13   that this case dealt with California's prevailing wage law as opposed to California's meal

14   and rest break laws is unavailing.  First, there is nothing in the Supreme Court's or Ninth

15   Circuit's jurisprudence which suggests laws dealing exclusively with wages should be

16   treated differently than other generally applicable labor laws.  There is no logical reason

17   to do so.  On the contrary, in Rowe, the United States Supreme Court held the FAAAA

18   was not intended to preempt generally applicable state laws which are designed to protect

19   the health and safety of citizens.  Rowe, 552 U.S. at 375-376.

20        In addition, because an employer can comply with California's meal and rest

21   period laws by simply paying an additional hour of wages, these laws are akin to the

22   wage law in Mendonca, even if they have an additional purpose (public safety).  Miller

23   fails to adequately explain how prevailing wage laws which significantly increase costs

24   are only tenuously related to price, routes, and services, but laws which have much less

25   (if any) impact (such as only an additional hour of pay) are not.

26        It is clear the Ninth Circuit and the Supreme Court do not approve of the reasoning

27   in the district court cases ASII relies on to argue Congress intended to supplant

28

California's century-old meal and rest period laws.  This Court need not, and should not, follow those decisions.

### D.   Plaintiff's State Law Claims Are Not Precluded By The Interstate Commerce Clause.

ASII maintains that the Interstate Commerce Clause precludes the application of California's meal and rest period requirements.  However, the motor carrier in Dilts which operated solely within California was subject to regulation under the Commerce Clause, and California's meal and rest period laws were determined not to be preempted.  See Godfrey v. Oakland Port Services Corp., 230 Cal. App. 4th 1267, 1281 ("Nothing in Dilts suggests that the Dilts defendants did not participate in interstate commerce, despite their operations being confined geographically to California.") and at fn. 16 ("Despite operating solely within California, the Dilts defendants and AB [Trucking] are equally subject to regulation under the Commerce Clause . . . 'This court has previously recognized that [motor vehicles] are instrumentalities of commerce even when used solely for intrastate purpose . . . That view seems to be shared universally among federal courts . . . Because a motor carrier is defined under the [FAAAA] as "a person providing motor vehicle transportation for compensation," . . . [the FAAAA] is within Congress' Commerce power because it regulates an instrumentality of commerce.' (Tocher v. City of Santa Ana (9th Cir.2000) 219 F.3d 1040, 1052. . . .").  The Motion must be denied.

### E.   Plaintiff's Fifth Claim For Federal Overtime Is Not Preempted By The RLA.

Defendant next argues that it is exempt from overtime requirements under the Fair Labor Standards Act ("FLSA") because Defendant is a "common carrier by air" subject to the RLA.  The FLSA exempts from overtime liability "any employee of a carrier by air subject to the provision pay of Title II of the Railway Labor Act."  29 U.S.C. § 213(a).  This carve-out encompasses "every common carrier by air engaged in interstate or foreign commerce, . . . and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their

1   continuing authority to supervise and direct the manner of rendition of his service." 45

2   U.S.C. § 181.  Defendant does not fall within this exemption.  The record does not

3   establish that any carrier exercises sufficient control over ASII's operations with respect

4   to its cargo ramp agents at LAX to support a finding of RLA jurisdiction.  (See Pl.'s

5   Resp. to Statement of Uncontroverted Facts).

6       Defendant's reliance on Aircraft Serv. Int'l Group v. Teamsters Local 117, 742

7   F.3d 1110 (9th Cir. 2014) ("Teamsters Local 117") and various decisions by the National

8   Mediation Board ("NMB") concluding that Defendant falls within the RLA is misplaced.

9   Teamsters Local 117 is inapposite because it the case involved a strike injunction at

10  Seattle–Tacoma International Airport.  The NMB decisions are inapposite because they

11  only conclude that specific operations of Defendant at particular airports during a certain

12  time period, fell within the ambit of the RLA.  Although the Court may take judicial

13  notice of the fact that the NMB made these determinations, it may not judicially note the

14  disputed fact that the circumstances surveyed in the NMB decisions apply with equal

15  force to this case.  In other words, whether Plaintiff and the putative class of cargo ramp

16  agents working at LAX during the relevant period are within the RLA exemption is a

17  question subject to reasonable dispute.  For comparison, several NMB determinations

18  reach the conclusion that employees working in the airline industry are not covered by

19  the RLA.  (See Pl.'s Request for Judicial Notice, Exs. 2 - 6).  Accordingly, based on the

20  record in this case and for the reasons discussed above, ASII's cargo ramp agents at LAX

21  are not subject to the RLA and therefore, Plaintiff's fifth claim for federal overtime is not

22  preempted by the RLA.

23      **F.    Plaintiff's State Law Claims Are Not Barred Based On ASII's Assertion**

24          **That A Collective Bargaining Agreement Requires Interpretation.**

25      As Defendant unsuccessfully argued in prior motion for judgment on the

26  pleadings, Defendant argues that Plaintiff's state claims fail because Plaintiff is

27  purportedly covered by a collective bargaining agreement ("CBA").  Defendant's

28  argument fails again.

1   First, ASII's argument fails because as the Complaint makes clear, Plaintiff's state

2   claim for overtime is based not on the wage order, but rather California Labor Code

3   section 510. (Compl. ¶¶ 51-54). To be exempt from the overtime requirements of

4   section 510, Defendant must show that Plaintiff is covered by a CBA that meets all of the

5   requirements of Cal. Lab. Code section 514. That provision states:

6       Sections 510 and 511 do not apply to an employee covered by a valid

7       collective bargaining agreement if the agreement expressly provides for the

8       wages, hours of work and working conditions of the employees, and if the

9       agreement provides premium wage rates for *all* overtime hours worked and a

10      regular hourly rate of pay for those employees of not less than 30% more

11      than the state minimum wage.

12  Cal. Lab. Code § 514 (emphasis added). Here, ASII's CBA fails to satisfy section 514

13  because it does not provide premium wage rates for all overtime hours worked. Because

14  the CBA does not satisfy section 514, Defendant is not excepted from complying with the

15  overtime requirements of section 510. In <u>Angeles</u>, 2013 WL 622032, *4-5, a case cited

16  by ASII, the district court reached the same conclusion. The district court dismissed the

17  plaintiff's overtime claim "insofar as the overtime claim is premised on violation of

18  Wage Order 9-2001" but "*[t]he Court disagree[d] with Defendant that Plaintiffs'*

19  *overtime claim should be dismissed with respect to California Labor Code section 510.*"

20  <u>Id.</u>, 2013 WL 622032 at *4-*5 (emphasis added). The court determined that although the

21  plaintiff's overtime claim under the wage order was foreclosed by the presence of the

22  CBA, the plaintiff's overtime claim under section 510 could proceed because the CBA

23  did not satisfy the heightened requirements of section 514. As in <u>Angeles</u>, ASII's CBA

24  fails to satisfy section 514.

25      Second, Plaintiff's state law claims are not preempted by the RLA because

26  Plaintiff's state law claims do not depend upon interpretation of a CBA. The Supreme

27  Court determined: "Where a state cause of action merely requires a court to consult a

28  collective bargaining agreement, for example to determine an employee's rate of pay,

1   federal labor law does not require preemption." Livadas v. Bradshaw, 512 U.S. 107

2   (1994).  The Ninth Circuit has further clarified that simply consulting a collective

3   bargaining agreement does not require preemption if the meaning of a contract term is not

4   in dispute.  Gregory v. SCIE, LLC, 317 F. 3d 1050, 1052 (9th Cir. 2003).  Referring to a

5   collective bargaining agreement to ascertain bargained-for wage rates does not warrant

6   preemption.  Burnside v. Kiewit Pac. Corp., 491 F. 3d 1053, 1060 (9th Cir. 2007).  See

7   Calop Business Systems, Inc. v. City of Los Angeles, 984 F.Supp.2d 981, 1010 (C.D.

8   Cal. 2013) (City living wage ordinance, which guaranteed minimum wage for employees

9   performing work under city contract or subcontract, either in cash or through a

10  combination of cash and benefits contributions, was not preempted by the RLA and did

11  not depend upon interpretation of a CBA).  Here, ASII cites Article 7 of ASII's CBA

12  which states:

13          Due to the nature of the Cargo business, all Cargo employees are exempt

14          from the provisions of this article. All full time Cargo employees will as

15          much as possible be scheduled for at least 35 hour[s] of work per week,

16          based on their seniority. Reasonable efforts will be made to call employees

17          to set work schedules.

18  (Mot. at 24:23-26).  Perry's state law claims can be resolved without reference to this

19  provision.  His claims for meal and rest period violations and unpaid overtime are

20  independent of any CBA.

21          Unlike in the cases cited by Defendant, Perry's state law claims can be resolved

22  without reference to any CBA.  For example, in support of its argument, Defendant cites

23  a California appellate court decision, Fitz–Gerald, 155 Cal. App. 4th 411.  The Fitz–

24  Gerald court held that the RLA preempts state law causes of action that depend on

25  interpretation of a CBA; it concluded that the claim for violation of the minimum wage

26  law at issue in that case required such an interpretation.  Id. at 420-21.  Whether

27  Plaintiff's state law claims are preempted by the RLA is a question of federal law.  The

28  court need not adopt the opinion of a California state court when determining such an

1   issue.  In any case, Plaintiff's state claims do not require interpretation of a CBA or the

2   CBA provision that Defendant cites to in its Motion.  Also,

3   Allis-Chambers Corp. v. Luek, 471 U.S. 202 (1985), a case cited by Defendant, is

4   inapplicable to the present case because there the Supreme Court addressed the question

5   of Labor Management Relations Act preemption of state law tort claims for alleged bad-

6   faith handling of an insurance claim.  It is clear that the cases cite by Defendant do not

7   compel the result which Defendant seeks.

8        Third, as this Court determined earlier in its order denying Defendant's motion for

9   judgment on the pleadings, "adopting Defendant's position would eviscerate section 514;

10  if the mere presence of a CBA would suffice to bar any overtime claim under section

11  510, this would render mere surplusage the specific requirements of section 514."  (Dkt.

12  25 at 9).  For the foregoing reasons, the Motion should be denied.

13

14  ## G.   ASII Has Failed To Provide Facts Showing That Plaintiff's Third Claim For Continuing Wages Fails.

15       Plaintiff's third claim is for failure to pay wages due at termination.  See Cal. Lab.

16  Code §§ 201-03.  Defendant erroneously contends, without citing any precedent, that

17  ASII's belief that Plaintiff's claims were preempted creates a good faith dispute.

18  Plaintiff presents a genuine issue of material fact regarding the continuing wages claim.

19       ASII makes a meritless objection to Plaintiff's claim for continuing wages on the

20  basis that no continuing wages under California Labor section 203 are due based on

21  unpaid wage premiums for missed breaks.  Kirby v. Immoos, 53 Cal. 4th 1244 (2012),

22  cited by ASII, did not address the specific issue.  Jones v. Spherion Staffing, LLC, 2012

23  U.S. Dist. LEXIS 112396 (C.D. Cal. 2012), cited by ASII, was wrongly decided and is at

24  odds with the California Supreme Court holding in Murphy v. Kenneth Cole Productions,

25  Inc., 40 Cal. 4th 1094 (2007), which suggests that continuing wages are available to a

26  meal period pay claimant.  Moreover, the DLSE's position is as follows: "The Murphy

27  decision, by implication, allows employees who are owed LC 226.7 pay at time of

28  termination, to recover waiting time penalties pursuant to LC 203 if all final wages are

1  not paid in accordance with LC 201/202." March 7, 2008 DLSE memorandum re: "Meal

2  and Rest Period Claims" (attached as Exhibit 1 to Plaintiff's Request for Judicial Notice).

3       In sum, continuing wages are due based on unpaid wage premiums for missed

4  breaks and overtime.  For example, in <u>Jimenez v. Allstate Ins. Co.</u>, 765 F.3d 1161 (9th

5  Cir. 2014), a class action suit alleged, that the employer had not paid overtime and had

6  not paid for missed meal breaks.  <u>Jimenez</u>, 765 F.3d at 1163.  Like in this case, the

7  complaint also made a derivative claim that the employer had not timely paid wages upon

8  termination in violation of California Labor Code sections 201 and 202.  <u>Id.</u>  The Ninth

9  Circuit affirmed the district court's class certification of the "class with respect to the

10  unpaid overtime, timely payment, and unfair competition claims".  <u>Id.</u>  For the foregoing

11  reasons, the Motion should be denied with respect to the third cause of action.

12  **CONCLUSION**

13       For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny

14  the Motion in its entirety.

15

16  Dated:  December 22, 2014          LAW OFFICE OF JONATHAN RICASA

17

18                          /s/ - Jonathan Ricasa

                        Jonathan Ricasa

19                          Attorney for Plaintiff Christopher Perry

20

21

22

23

24

25

26

27

28