1  Jonathan Ricasa (SBN 223550)
   jricasa@ricasalaw.com
2  LAW OFFICE OF JONATHAN RICASA
   2341 Westwood Boulevard, Suite 7
3  Los Angeles, California 90064
   Telephone:  (424) 248-0510
4  Facsimile:  (424) 204-0652

5  Attorney for Plaintiff
   Christopher Perry
6

7

8

9                    UNITED STATES DISTRICT COURT

10                       CENTRAL DISTRICT

11

12  Christopher Perry, individually and        **CASE NO. CV13-00059-SVW (AGRx)**
    on behalf of all others similarly
13  situated,                                   **PLAINTIFF'S RESPONSE TO**
                                                **STATEMENT OF**
14                    Plaintiff,                **UNCONTROVERTED FACTS AND**
                                                **CONCLUSIONS OF LAW IN**
15  vs.                                         **SUPPORT OF DEFENDANT**
                                                **AIRCRAFT SERVICE**
16  Aircraft Service International, Inc.        **INTERNATIONAL, INC.'S**
    and Doe One Through And                     **SUMMARY JUDGMENT OR, IN**
17  Including Doe One Hundred,                   **THE ALTERNATIVE, PARTIAL**
                                                **SUMMARY JUDGMENT**
18                    Defendants.
                                                ***Under Separate Cover:***
19                                              ***(1) Opposition to Motion for Summary***
                                                ***Judgment; (2) Declaration of Jonathan***
20                                              ***Ricasa; (3) Request for Judicial Notice***

21                                              Hon. Stephen V. Wilson
                                                Courtroom 6
22
                                                Date:   January 26, 2015
23                                              Time:   1:30 p.m.
                                                Place:  312 North Spring Street
24                                                      Courtroom 6
                                                        Los Angeles, California 90012
25
                                                Complaint Filed:  November 30, 2012
26                                              Removal Date:  January 4, 2013
                                                Pre-Trial Conf. Date:  None
27                                              Trial Date:  None

28

## RESPONSES TO UNCONTROVERTED FACTS

### FIRST CAUSE OF ACTION

### CALIFORNIA LABOR CODE SECTIONS 226.7, 512

### (MEAL AND REST BREAK VIOLATIONS)

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1. Aircraft Service International, Inc. ("ASII") provides into-plane fueling, ground services, and passenger services ("Services") to commercial air carriers at Los Angeles International Airport ("LAX") and other airports in California.<br><br>Marron par. 4, RJN Ex. 13, 17-19 | 1. Undisputed |
| 2. The Services that ASII provides to its air carrier customers can be, and often are, done by air carriers using the air carrier's own employees.<br><br>Marron par. 4; Lefebvre par. 5-25 | 2. Undisputed |
| 3. Cargo ground services is a specialized kind of ground handling service that differs in several respects from passenger baggage handling and requires employees with more training and skills than other kinds of baggage ground services.<br><br>Marron par. 4, 26 | 3. Undisputed |
| 4. At LAX, Department 145, the department in which Plaintiff worked as | 4. Undisputed |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| a cargo ramp agent, exclusively provided cargo ramp services to major international and domestic cargo air carriers that were 100% cargo air carriers.<br><br>Marron par. 5-6 | |
| 5.    By November 2013, Department 145 contracts were allowed to expire or were terminated, ASII stopped providing the traditional cargo ramp services at LAX that this Department had provided, and all of the cargo ramp agents in Department 145 at that time were laid off because Department 145 had an operating loss of over $1,000,000 during the period December 2008 through November 2013.<br><br>Marron par. 7; Davis par. 2-3 | 5.  Undisputed |
| 6.    Cargo ramp agents in Department 145 had three different hourly positions with differing duties and responsibilities.<br><br>Marron par. 8-11 | 6.  Undisputed |
| 7.    ASII's cargo air carrier customers closely monitored flight delays and insisted that ASII cargo ramp service be completed in a timely fashion because a delay could result in further delays for the air carrier and increased labor costs to the air carrier, as well as have an adverse effect on the cargo itself. | 7.  Disputed.<br><br>The cited paragraphs contain no factual context of how flight delays result in increased labor costs to the air carrier.  No specific impact of flight delays to the labor costs of air carriers is not supplied.  (Lefebvre par. 25-29; Marron par. 12-17). |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Lefebvre par. 25-29; Marron par. 12-17 | The declarants are employees of ASII, are not employees of air carriers, and lack foundation.  (Lefebvre par. 1; Marron par. 1).

In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 8.      ASII could be penalized by a cargo air carrier if ASII caused a flight delay.

Marron par. 12 | 8.  Disputed.

The cited paragraph contains no factual context of how ASII could be "penalized".  Instead the declarant avers that if a delay occurred, the flight would be grounded or another crew would be brought in.  (Marron pae. 12). |
| 9.      The delay to a cargo air carrier's departure could also have a "cascade" effect on that air carrier as well as other air carriers and other airports.

Lefebvre par. 25-29; Marron par. 15-16 | 9.  Disputed.

The cited paragraphs contain no factual context of how delays to a cargo air carrier's departure could affect other air carriers or other airports.  (Lefebvre par. 25-29; Marron par. 15-16).

The declarants are employees of ASII, are not employees of air carriers (Lefebvre par. 1; Marron par. 1), and |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | lack foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 10.    Cargo air carriers typically had a very short turn-around time between the arrival of the aircraft at the ramp and the scheduled departure time.<br><br>Lefebvre par. 24; Marron par. 15, 26 | 10.  Undisputed. |
| 11.    ASII could not use an employee's meal or rest break to excuse or justify a ground service-related delay.<br><br>Marron par. 17 | 11.  Undisputed. |
| 12.    The actual time of arrival of a cargo air carrier aircraft at the ramp was very unpredictable due to many reasons outside of ASII's control.<br><br>Marron par. 18-22, 27; Lefebvre par. 24 | 12.  Undisputed. |
| 13.    ASII's cargo ramp agents performed their work on a tight schedule and had to rapidly adjust their | 13.  Undisputed. |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| schedules and work to meet their customer demands regarding completion of the cargo ramp services within specified ground times despite the unpredictability of the aircraft's actual arrival time and cargo.<br><br>Marron par. 22-23, 26 | |
| 14.    From April 1, 2010, until Department 145 was closed and its cargo ramp agents were laid off in late 2013, the cargo ramp agents were represented by the United States Workers Union, IUJAT ("Union") and covered by collective bargaining agreements (CBAs) between the Union and ASII that covered the terms and conditions of employment.<br><br>Marron par. 24-25 | 14.  Undisputed. |
| 15.    Article 3 of the 2010 and 2013 CBAs specifically stated:<br><br>Members of management and/or supervisors shall be allowed to perform bargaining unit work for brief and occasional periods for instruction and services purposes, or if the need arises to assist employees in their working duties when in management's opinion it is necessary.  It is understood that the use of management or supervisors doing bargaining unit work would in no event be done for the purpose of avoiding the payment of overtime to | 15.  Undisputed. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| bargaining unit members.<br><br>Marron par. 24-25, Article 3 of Ex. 4 and 5 | |
| 16.    Appendix "A" of the CBAs specifically stated:<br><br>GENERAL:  Any of the above referenced classifications may perform the job function of any other classification in order to meet the contractual commitments of the Employer.  The Employer has the right, in any emergency situation, to permit and direct other employees not in the bargaining unit to perform work normally assigned to members of the Union.<br><br>Marron par. 24-25, Appendix A of Ex. 4 and 5 | 16.  Undisputed. |
| 17.    The Department 145 cargo ramp agent crews varied in size, typically from seven to eleven employees.<br><br>Marron par. 28 | 17.  Undisputed. |
| 18.    A cargo ramp agent could only work for air carriers for which the agent had received training as designated by that air carrier, and on aircraft for which that agent had received carrier-designated training.<br><br>Marron par. 30 | 18.  Disputed.<br><br>ASII trains its own employees.  ASII cargo ramp agents were trained by designated "ASII 'trainers' " who received training by the air carrier. (Marron Decl. par. 54).  Cargo ramp agents were given "ASII classroom training covering basic topics like |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | ramp safety, how to precheck and operate various pieces of equipment, and what the different kinds of equipment were used for." (Marron Decl. par. 55). According to Defendant, "[a]n air carrier might only have one of a certain aircraft in its fleet. If it had to recruit, hire, train, and employ an employee to specifically handle that single aircraft, it would be quite difficult for the air carrier to feasibly do so." (Lefebvre Decl. par. 20).

"ASII . . . train[s] one or more of ASII's own employees to handle that aircraft type, and then use[s] those trained employees. . . ." [Lefebvre Decl. par. 20 (emphasis supplied)]. |
| 19.    In general, ASII assembled a crew of qualified cargo ramp agents when ASII received information from the cargo air carrier that a flight had departed for LAX.

        Marron par. 29, 30 | 19.  Undisputed. |
| 20.    At the beginning of the shift, the cargo ramp agents received a preflight briefing regarding any special information that ASII had about their work on that shift.

        Marron par. 29, 31 | 20.  Undisputed. |
| 21.    After the preflight briefing, the cargo ramp agents would gather the necessary equipment to service the | 21.  Undisputed. |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| flight from various locations around the airport, fuel it, inspect it, and move it to the ramp that would be used by the incoming flight.<br><br>Marron par. 29, 31 | |
| 22.    There was often downtime between the time the cargo ramp agent started work and the arrival of the aircraft at the ramp, and during this time the cargo ramp agents could take a break.<br><br>Marron par. 29-31, 34 | 22.  Disputed.<br><br>Marron par. 29-31, 34 do not address whether cargo ramp agents could take a break during the purported "downtime". The paragraphs are silent in this regard. The paragraphs also do not address whether cargo ramp agents were required to prepare for other aircrafts during the purported "downtime". Also, there is no context supplied regarding whether the cargo ramp agent is standing by for duty. Put simply, if the cargo ramp agent is on call and standing by for work, he or she is not on a break.<br><br>For example: "Once the aircraft had vacated the ramp area, there was still work for the ASII cargo ramp agents to do. ASII employees were required tore-park equipment and store things such as wheel chocks, tail stand, and cones. The air carriers typically required the cargo ramp agents to remain at the cargo ramp until the aircraft was actually "wheels up," in the event the aircraft had to return to the ramp for any reason. (Marron par. 43.) |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | "ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp."  (Marron par. 92). |
| 23.      Prior to the arrival of the aircraft at the ramp, the cargo ramp agents inspected the ramp area to identify and correct any conditions that might make the ramp unsafe for the aircraft, its cargo, or ASII employees.<br><br>Marron par. 29, 32 | 23.  Undisputed. |
| 24.      The cargo ramp agents also retrieved outbound cargo from the air carrier's warehouse and arranged it for optimum loading.  Due to the unpredictability of the cargo, ASII could not predict with certainty how long this would take but was nevertheless required to get it done in time for the cargo ramp agents to be at the ramp with necessary equipment prior to the aircraft's estimated time of arrival.<br><br>Marron par. 33, 34 | 24.  Undisputed. |
| 25.      Once the aircraft approached the cargo ramp, the cargo ramp agents engaged in a variety of duties before starting to unload the cargo, such as marshaling the aircraft in and towing it to its parking spot, chocking the wheels, | 25.  Undisputed. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| coning the safety area around the aircraft, attaching the tail stand to the aircraft, moving ramp equipment up to the aircraft, and inspecting the aircraft and cargo door and reporting any damage observed.<br><br>Marron par. 35 | |
| 26.    The cargo ramp crew was generally divided into four teams, i.e., the bag/cargo runners, upper deck team, lower deck team, and the ground crew. One cargo ramp agent would enter the aircraft and operate the aircraft's main control panel.  Each of these assignments had different duties and responsibilities but they worked in coordination with each other to unload the aircraft and then load it with outbound cargo.<br><br>Marron par. 36, 37, 38, 39, 40, 41 | 26.  Undisputed. |
| 27.    During the unloading and loading process, the cargo air carrier's plane-side representative monitored the work and gave instructions to ASII. Unloading and loading the cargo had to be done in the correct order for safety reasons and was highly dependent on the cargo since the failure to balance and secure cargo correctly could result in damage to the aircraft and the cargo.<br><br>Marron par. 37, 40 | 27.  Undisputed. |
| 28.    After the cargo was loaded, the | 28.  Undisputed. |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| aircraft's cargo doors were closed, one or more ASII cargo ramp agents would inspect the exterior of the aircraft and report any damage or irregularity observed, the equipment and any debris would be removed from the cargo ramp area, and the arrival procedures would be essentially reversed in order to allow the aircraft to leave the ramp area.<br><br>Marron par. 42 | |
| 29.     After the aircraft left the ramp area, the cargo ramp agents stored ASII equipment and typically had to remain at the ramp area until the aircraft was "wheels up," after which they were generally permitted by contract to return to the ASII Operations office and clock out.<br><br>Marron par. 43 | 29.  Undisputed. |
| 30.     After the aircraft left the cargo ramp area and the time it was "wheels up," there was usually down time for the cargo ramp agents.<br><br>Marron par. 43 | 30.  Disputed.<br><br>Marron par. 43 does not address whether cargo ramp agents could take a break during the purported "down time". The paragraph is silent in this regard.  The paragraph also does not address whether cargo ramp agents were required to prepare for other aircrafts during the purported "downtime".  Also, there is no context supplied regarding whether the cargo ramp agent is standing by for duty. Put simply, if the cargo ramp agent is on call and standing by for work, he or |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | she is not on a break.<br><br>For example: "Once the aircraft had vacated the ramp area, there was still work for the ASII cargo ramp agents to do. ASII employees were required tore-park equipment and store things such as wheel chocks, tail stand, and cones. The air carriers typically required the cargo ramp agents to remain at the cargo ramp until the aircraft was actually "wheels up," in the event the aircraft had to return to the ramp for any reason. (Marron par. 43.)<br><br>"ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp." (Marron par. 92). |
| 31.    After the cargo ramp agents were driven back to the ASII Operations office, a cargo ramp agent who was not assigned to another flight, had completed his work, and didn't have anything do to, had the option of punching out and leaving or waiting to punch out at the end of the period.<br><br>Marron par. 44 | 31.  Disputed.<br><br>Marron par. 44 does not address whether cargo ramp agents could take a break at the ASII Operations office or whether the cargo ramp agents were on standby for duty. The paragraph is silent in this regard. There is no context supplied regarding whether the cargo ramp agent who is punched out is standing by for duty. Put simply, if the cargo ramp agent is on call and standing by for work, he or she is not on a break. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | "ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp."  (Marron par. 92). |
| 32.    A cargo ramp agent who waited to punch out at the end of the scheduled period take a break and engage in personal activities.<br><br>        Marron par. 44 | 32.  Disputed.<br><br>Marron par. 44 does not address whether cargo ramp agents could take a break during the purported "down time".  The paragraph is silent in this regard.  There is no context supplied regarding whether the cargo ramp agent is standing by for duty.  Put simply, if the cargo ramp agent is on call and standing by for work, he or she is not on a break.<br><br>"ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp."  (Marron par. 92). |
| 33.    A cargo ramp agent who was scheduled to work two flights on the same day would typically punch out for a break and punch back in when he returned to work the second flight.<br><br>        Marron par. 44 | 33.  Disputed.<br><br>The cited statement in the declaration is incomprehensible.  There is no context supplied regarding whether the cargo ramp agent is on a meal or rest break, or instead punched out and off-the-clock.  Marron par. 44. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 34.    ASII could leverage its cargo ramp agents and equipment to reduce the per-carrier cost of cargo ramp service to its cargo air carrier customers.<br><br>        Lefebvre par. 5-25; Marron par. 45 | 34.  Disputed.<br><br>The cited paragraphs contain no factual context of how costs to air carrier customers can be reduced. (Lefebvre par. 5-25; Marron par. 45).<br><br>The declarants are employees of ASII, are not employees of air carriers (Lefebvre par. 1; Marron par. 1), and lack foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 35.    The cargo air carrier customers exercised regular and significant control over the staffing, scheduling, hiring, training, discipline, and other aspects of ASII cargo ramp agents' employment and work.<br><br>        Lefebvre par. 30-31, 36; Marron par. 46-62, 66-73 | 35.  Disputed.<br><br>With regard to staffing, ASII asserts that "the typical service contract between ASII and an air carrier will specify the number and type of employee to be assigned to the air carrier; ASII then staffs accordingly." [Lefebvre Decl. ¶ 31 (emphasis supplied)].  ASII asserts that "if an air carrier customer expresses a preference for an employee with whom they have worked in the past, ASII will typically try to accommodate this preference and |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | assign and schedule that employee to service that air carrier." (Lefebvre Decl. ¶ 31).  There is no evidence, however, that this ever occurred.  In paragraph 36 of the Lefebvre Declaration, the declarant simply avers: "The cost that ASII determines it can charge to its air carrier customers in turn influences the staffing and terms and conditions of its own employees. . . ."  But almost employer faces staffing decisions based on labor costs, and this is not the significant control over staffing that would be required for RLA jurisdiction.

ASII trains its own employees.  ASII cargo ramp agents were trained by designated "ASII 'trainers' " who received training by the air carrier. (Marron Decl. ¶ 54).  Cargo ramp agents were given "ASII classroom training covering basic topics like ramp safety, how to precheck and operate various pieces of equipment, and what the different kinds of equipment were used for." (Marron Decl. ¶ 55).  According to Defendant, "[a]n air carrier might only have one of a certain aircraft in its fleet.  If it had to recruit, hire, train, and employ an employee to specifically handle that single aircraft, it would be quite difficult for the air carrier to feasibly do so." (Lefebvre Decl. ¶ 20). "*ASII . . . train[s] one or more of ASII's own employees to handle that* |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | *aircraft type, and then use[s] those trained employees. . . ."* [Lefebvre Decl. ¶ 20 (emphasis supplied)]. |
| 36.    Article 9 of both CBAs stated:<br><br>An Employee may be discharged when the Company has received an order from an airline customer refusing to allow [that] employee to work on their account [sic]. Provided that the Company has no other placement available for the employee within their classification, for which they are qualified.<br><br>        Marron par. 24, Article 9 of Ex. 4 and 5 | 36.  Undisputed. |
| 37.    The ASII Employee Information Guide that Plaintiff received addressed shift assignments and overtime, emphasizing that ASII's need to meet customer requirements could result in changes to a work schedule.<br><br>        Marron par. 102, 103, section 1.10 of Ex. 11; Ex. 12 | 37.  Undisputed. |
| 38.    Cargo ramp agents were not fungible due to different levels of experience and air carrier- and aircraft-specific training.<br><br>        Marron par. 63, 64 | 38.  Undisputed. |
| 39.    It was difficult to move a cargo ramp agent into a crew after the preflight briefing because the new agent | 39.  Undisputed. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| would have missed important information and would also not have information about procedures that had already occurred with respect to that flight.<br><br>Marron par. 65 | |
| 40.     Cargo air carriers had regular interaction with ASII cargo ramp agents in the agents' performance of their work.<br><br>Marron par. 74-75 | 40.  Undisputed. |
| 41.     ASII representatives regularly attended air carrier and airport meetings to address issues.<br><br>Marron par. 76 | 41.  Disputed.<br><br>The statement is incomprehensible because the meaning of the term "representatives" is not supplied. (Marron par. 76).  Insufficient details regarding the "meetings" are not supplied. |
| 42.     Cargo air carriers could and regularly did monitor ASII's performance, including auditing a variety of factors regarding the cargo ramp agents' training and performance. If a deficiency was noted, ASII was expected to quickly respond and correct it.<br><br>Marron par. 77 | 42.  Disputed.<br><br>ASII trains its own employees.  ASII cargo ramp agents were trained by designated "ASII 'trainers' " who received training by the air carrier. (Marron Decl. par. 54).  Cargo ramp agents were given "ASII classroom training covering basic topics like ramp safety, how to precheck and operate various pieces of equipment, and what the different kinds of equipment were used for."  (Marron Decl. par. 55).  According to Defendant, "[a]n air carrier might only |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | have one of a certain aircraft in its fleet.  If it had to recruit, hire, train, and employ an employee to specifically handle that single aircraft, it would be quite difficult for the air carrier to feasibly do so." (Lefebvre Decl. par. 20). "ASII . . . train[s] one or more of ASII's own employees to handle that aircraft type, and then use[s] those trained employees. . . ." [Lefebvre Decl. par. 20 (emphasis supplied)]. |
| 43.     The contracts between cargo air carrier customers and ASII contained provisions that directly affected cargo ramp agents, such as staffing levels, training, cargo handling procedures, specified ground and windows of operation times, technical instruction, and penalties for any delay attributable to ASII. Marron par. 78; Lefebvre par. 32-36 | 43.  Disputed. The declarants aver to the contents specified in the contracts, but there is no evidence, however, of what occurred with respect to these items. (Marron par. 78; Lefebvre par. 32 36). |
| 44.     There were typically numerous opportunities during a work period when ASII provided its cargo ramp agents with a rest break. Marron par. 43-44, 79-83 | 44.  Disputed. Marron par. 43-44, 79-83 do not address whether cargo ramp agents could take a break during the occasions described.  The paragraphs are silent in this regard.  The paragraphs also do not address whether cargo ramp agents were required to prepare for other aircrafts while on the tarmac.  Also, there is no context supplied regarding whether the |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | cargo ramp agent is standing by for duty.  Put simply, if the cargo ramp agent is on call and standing by for work, he or she is not on a break.

For example: "Once the aircraft had vacated the ramp area, there was still work for the ASII cargo ramp agents to do. ASII employees were required to re-park equipment and store things such as wheel chocks, tail stand, and cones.  The air carriers typically required the cargo ramp agents to remain at the cargo ramp until the aircraft was actually "wheels up," in the event the aircraft had to return to the ramp for any reason.  (Marron par. 43.)

"ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp."  (Marron par. 92). |
| 45.    It was more difficult for ASII to provide cargo ramp agents with a meal break due to factors such as the unpredictability of cargo flights and the tight ground times, length of the meal break, limited ability of the employee to leave the work area, the meal break timing requirement, and the nature of the work at the ramp.

Marron par. 84, 86-96 | 45.  Undisputed. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 46.    ASII tried to give each cargo ramp agent a meal break and reasonably believed that many cargo ramp agents were taking a meal break.<br><br>Marron par. 85, 92 | 46.  Disputed.<br><br>Marron par. 85, 92 do not address whether cargo ramp agents could take an off-duty break during the occasions described.  The paragraphs are silent in this regard.  The paragraphs do not address whether cargo ramp agents were required to prepare for other aircrafts while on the tarmac.  Also, there is no context supplied regarding whether the cargo ramp agent is standing by for duty.  Put simply, if the cargo ramp agent is on call and standing by for work, he or she is not on a break.<br><br>For example: "Once the aircraft had vacated the ramp area, there was still work for the ASII cargo ramp agents to do. ASII employees were required tore-park equipment and store things such as wheel chocks, tail stand, and cones.  The air carriers typically required the cargo ramp agents to remain at the cargo ramp until the aircraft was actually "wheels up," in the event the aircraft had to return to the ramp for any reason.  (Marron par. 43.)<br><br>"ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn- |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | around time at the ramp." (Marron par. 92). |
| 47.    There were procedures and alternative procedures in place for a cargo ramp agent who missed a meal break to report the missed break and, if confirmed, ASII paid a missed meal break penalty to that employee.<br><br>Marron par. 93, 97-106, 108 | 47.  Disputed.<br><br>The purported procedures described in Marron par. 93, 97-106, 108 do not address occasions where cargo ramp agents were standing by for duty on the tarmac.  Put simply, if the cargo ramp agent is on call and standing by for work, he or she is not on a break.<br><br>"ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp." (Marron par. 92). |
| 48.    There were procedures and alternative procedures in place for a cargo ramp agent who believed he had not been paid for overtime to report it and, if confirmed, ASII would have paid the overtime.<br><br>Marron par. 101, 102-107, 108 | 48.  Disputed.<br><br>The purported procedures described in Marron par. 101, 102-107, 108 do not address occasions where cargo ramp agents were standing by for duty on the tarmac.  Put simply, if the cargo ramp agent is on call and standing by for work, he or she is not on a break.<br><br>"ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp." (Marron par. 92). |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 49.    Article 7 of the CBAs addressed the workday, workweek, overtime, and breaks and stated in pertinent part:<br><br>The full-time employees' workweek shall normally consist of thirty[-]five (35) hours spread over a seven (7) day period.  The workday shall be considered to be eight (8) or ten (10) hours exclusive of a lunch period.  Two (2) or three (3) consecutive days of rest will be given.  (This can be changed by mutual agreement.)<br><br>All full-time employees shall be paid at the rate of time and one-half for all hours worked above forty (40) hours in a week, all hours worked above eight (8) or ten (10) hours during any workday, and all hours worked on the fifth (5th) consecutive day worked for a four (4) day workweek or the sixth (6th) consecutive day worked of a five (5) day workweek.  All full-time employees will receive double time for all hours worked above twelve (12) hours during any eight (8) hour workday and above fourteen (14) hours during any ten (10) hour workday, and all hours worked on the seventh (7th) consecutive day worked.<br><br>It is agreed that overtime payment shall not be pyramided, and that no employee shall be paid twice for the same hours worked. | 49.  Undisputed. |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Due to the nature of the Cargo business, all Cargo employees are exempt from the provisions of this article.  All full time Cargo employees will as much as possible be rescheduled for at least 35 hour[s] of work per week, based on their seniority.  Reasonable efforts will be made to call employees to set work schedules.

There will be a minimum four (4) hours call-in for all full-time employees.

Paid rest periods shall be computed on the basis of ten (10) minutes within each four (4) hour working time or major fractions thereof, which insofar as practical shall be in the middle of each work period. Employees are responsible for utilizing rest and/or lunch periods, and must notify their Supervisor as soon as possible if unable to take such rest or lunch period.

No pay shall be granted under this section where work is not available by such reasons as including, but not limited to, dismissal for just cause, an Act of God, fire, flood, power failure, or Airport closure.

     Marron par. 24, Article 7 of Ex. 4 and 5 | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 50.     Article 16 of the CBAs provided a detailed grievance procedure for any dispute between ASII and the Union or between ASII and any ASII employee that ended in binding arbitration.<br><br>     Marron par. 24, Article 16 of Ex. 4 and 5 | 50.  Undisputed. |
| 51.     Section 1.12 of the ASII Employee Information Guide that Plaintiff received stated, among other things, that it is the responsibility of every employee to accurately record time worked.  It goes on to say that the employee must punch in at the start of each shift and punch out at the end of each shift.  All employees are required to keep ASII advised of their departure and return to the premises during the workday.  The employee must receive prior management approval for any deviation from starting and/or end time. An automatic timekeeping system is used.  Overtime work must be approved before it is performed.  Employees who forget to punch in or out or incur any other irregularities must immediately report the occurrences to their supervisor.  An employee is to check with local human resources or personnel supervisors to discuss local policies for correcting any errors in time reporting. The supervisor must approve and verify the accuracy of the changes by initialing the time record.<br><br>     Marron par. 102, 103, section | 51.  Undisputed. |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1.12 of Ex. 11; Ex. 12 | |
| 52.    Section 1.13 of the ASII Employee Information Guide that Plaintiff received advises the employee that if the employee believes there is an error in the paycheck to tell the manager or supervisor immediately; they will take the necessary steps to research the problem.  Nominal payroll adjustments will be made the following pay period. This section also states that an employee who leaves the company will be paid monies due to them at the next regularly scheduled pay day or as required by state or local laws.<br><br>        Marron par. 102, 103, section 1.13 of Ex. 11; Ex. 12 | 52.  Undisputed. |
| 53.    Article 19 of the CBAs stated:<br><br>    Should any Federal or State Laws or any Executive Order of the President of the United States or the final determination of any board or court of competent jurisdiction of the parties hereto and the subject matter affect any provision or provisions of this Agreement, the provision or provisions so affected shall be made to conform to the law, order or determination; both parties hereto agree to enter into negotiations within fifteen (15) days after final adoption of such law, order or determination, on the Articles herein so affected. | 53.  Undisputed. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Marron par. 24, Article 16 of Ex. 4 and 5 | |
| 54.    Appendix "A" of the 2010 CBA set out the starting hourly wage rate of cargo ramp agents at $9.50, up to $14.00.  It provided for certain increases to this base rate as well as certain bonuses.  Lead cargo ramp agents got a per-hour addition of $1.00.  In addition, it allowed for the possibility of "Superior Workman" wages which were higher than the stated rates.  It also contained a clause under which any cargo ramp agent who was already being paid more than the stated wage rates would have their wage rate reduced by reason of the CBA.<br><br>Marron par. 24, Appendix A of Ex. 4 | 54.  Undisputed. |
| 55.    Appendix "A" of the 2013 CBA set out the starting hourly wage rate of cargo ramp agents at $9.50, up to $14.00.  However, effective July 1, 2013, there was an entirely new wage rate in the 2013 CBA:  Under the provisions that became effective July 1, 2013, each cargo ramp agent would be paid a minimum of $15.67, subject to change based on employee election of benefits.  The lowest hourly wage rate for full-time cargo ramp agents was $10.91.  The highest wage rate for a cargo ramp agent was $17.00/hour.  However, there were still provisions for certain increases depending upon | 55.  Undisputed. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| whether the employee was "topped out" or not, and the $1.00/hour additional pay for leads was still in effect.  Part-time employees were paid a straight $15.67 per hour and were not eligible for group health benefits<br><br>   Marron par. 24, Appendix A of Ex. 5 | |
| 56.    The ASII Employment Information Guide that Plaintiff received contained Open door policy (section 1.4):  This section encourages employees to bring questions or concerns to ASII's attention and provides an easy, informal way for them to do so.  It also gives an "800 number" for employees to make complaints to a Human Resources hotline.<br><br>   Marron par. 102, 103, section 1.4 of Ex. 11; Ex. 12 | 56.  Undisputed. |
| 57.    There were procedures in place for the timely payment of an employee's final paycheck.<br><br>   Marron par. 109-110 | 57.  Disputed.<br><br>Unpaid wage premiums for missed breaks to discharged employees constitute late payment.  "ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp."  (Marron par. 92). |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 58.     Mr. Perry was paid his final wages on time.<br><br>        Marron par. 109-110 | 58.  Disputed.<br><br>Unpaid wage premiums for missed breaks to discharged employees constitute late payment.  "ASII could not 'guarantee' that any given cargo ramp agent would be able to stop working and take a complete meal break given the nature of the work, particularly the unpredictability of the flights and the very short turn-around time at the ramp."  (Marron par. 92). |
| 59.     Air carriers are very sensitive to costs.<br><br>        Davis par. 12-14; Lefebvre par. 5-29; Marron par. 111 | 59.  Disputed.<br><br>The declarants are employees of ASII, are not employees of air carriers (Lefebvre par. 1; Marron par. 1, Davis par. 1), and lack foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 60.     Using a service provider such as ASII assists air carriers to avoid flight delays and associated costs.<br><br>        Lefebvre par. 25-29 | 60.  Disputed.<br><br>The declarant is an employee of ASII, not an employee of air carriers (Lefebvre par. 1), and lacks foundation.<br><br>In response to Plaintiff's requests for |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 61.    Flight delays have many adverse consequences to an air carrier cargo and passengers, including but not limited to, significant costs.\n\n      Lefebvre par. 25-29 | 61.  Disputed.\n\nThe declarant is an employee of ASII, not an employee of air carriers (Lefebvre par. 1), and lacks foundation.\n\nIn response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 62.    A delayed aircraft can affect other flights and airports.\n\n      Lefebvre par. 25-29 | 62.  Undisputed. |
| 63.    Using a provider such as ASII allows cargo air carriers to have more flights to various airports.\n\n      Lefebvre par. 25-29; Marron par. | 63.  Disputed.\n\nThe declarants are employee of ASII, are not employees of air carriers (Lefebvre par. 1; Marron par. 1), and |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 112 | lack foundation. |
| | In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 64.     Using a provider such as ASII can allow a cargo air carrier to provide service at a lower per-carrier cost.<br><br>Lefebvre par. 5-25 | 64.  Disputed.<br><br>The declarant is an employee of ASII, not an employee of air carriers (Lefebvre par. 1), and lacks foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 65.     Using a provider such as ASII is seen as a way for a cargo air carrier to remain competitive or gain a competitive price edge.<br><br>Davis par. 12-24; Lefebvre par. 5-25; Marron par. 113 | 65.  Disputed.<br><br>The declarants are employees of ASII, are not employees of air carriers (Lefebvre par. 1), and lack foundation.<br><br>In response to Plaintiff's requests for |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 66.    If ASII had to pay meal and rest break penalties to Department 145 cargo ramp agents with the assumption that it could not guarantee strict compliance with California law and regulations, the penalties would be almost $2,000,000, and it would have increased the operating losses to over $3,000,000 for the period November 30, 2008 to November 30, 2013.<br><br>Davis par. 4, 7-8 | 66.  Disputed.<br><br>There is nothing which demonstrates Mr. Davis is qualified to issue opinions on the matters in his declaration.  The only facts that the declaration provides about his background is that he has been with ASII since November 2013 and is the Regional Vice President for the region that includes Los Angeles International Airport.  Davis Decl. par. 1.  It is not axiomatic that someone in his position at a company that serves as a private contractor of cargo services, is qualified to opine on how meal and rest periods affect prices, routes, or services of the airlines ASII serves.  His declaration does not detail his primary job responsibilities or his involvement in the economics of the company.  The underlying data or records is not supplied. |
| 67.    If ASII added an additional cargo ramp agent to crews to provide coverage for a cargo ramp agent on a meal break, it would have increased expenses by almost $1,000,000 and | 67.  Disputed.<br><br>There is nothing which demonstrates Mr. Davis is qualified to issue opinions on the matters in his |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| would have increased operating loss for Department 145 by that same amount for the period December 1, 2008 to October 31, 2008.<br><br>Davis par. 5, 9 | declaration. The only facts that the declaration provides about his background is that he has been with ASII since November 2013 and is the Regional Vice President for the region that includes Los Angeles International Airport. Davis Decl. par. 1. It is not axiomatic that someone in his position at a company that serves as a private contractor of cargo services, is qualified to opine on how meal and rest periods affect prices, routes, or services of the airlines ASII serves. His declaration does not detail his primary job responsibilities or his involvement in the economics of the company. The underlying data or records is not supplied. |
| 68.   The additional expense of either paying all penalties for missed meal and rest breaks or hiring an additional cargo ramp agent to cover for agents who were on a meal break would have led ASII to close Department 145 and lay off the cargo ramp agents before it did.<br>Davis par. 6 | 68.  Disputed.<br><br>There is nothing which demonstrates Mr. Davis is qualified to issue opinions on the matters in his declaration. The only facts that the declaration provides about his background is that he has been with ASII since November 2013 and is the Regional Vice President for the region that includes Los Angeles International Airport. Davis Decl. par. 1. It is not axiomatic that someone in his position at a company that serves as a private contractor of cargo services, is qualified to opine on how meal and rest periods affect prices, routes, or services of the airlines ASII serves. His declaration does not detail his primary job responsibilities or his |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | involvement in the economics of the company.  The underlying data or records is not supplied. |
| 69.    ASII was not having success in getting its air carrier customers to agree to pay increased costs.<br><br>        Davis par. 6; Lefebvre par. 32-35 | 69.  Disputed.<br><br>The declarants are employees of ASII, are not employees of air carriers (Lefebvre par. 1, Davis par. 1), and lack foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 70.    The estimated cost to add .5 hour to shifts would not clearly result in compliance with state meal and rest breaks due to operational requirements of the cargo air carriers, and it would be very expensive.<br><br>        Lefebvre par. 37-42; Davis par. 10 | 70.  Disputed.<br><br>The declarants are employees of ASII, are not employees of air carriers (Lefebvre par. 1, Davis par. 1), and lack foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | (Ricasa Decl., Ex. 5). |
| 71.    The cost to ASII of guaranteeing compliance with state meal and rest break requirements is sufficiently high that ASII would have to pass the increased costs to it cargo air carrier customers.<br><br>        Davis par. 11; Lefebvre par. 37-42 | 71.  Disputed.<br><br>The declarants are employees of ASII, are not employees of air carriers (Lefebvre par. 1, Davis par. 1), and lack foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 72.    Requiring compliance by ASII with state break requirements would have a significant effect on the air carriers' services.<br><br>        Lefebvre par. 5-29, 37-42 | 72.  Disputed.<br><br>The declarant is an employees of ASII, is not an employee of air carriers (Lefebvre par. 1), and lacks foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 73.    Requiring compliance by ASII | 73.  Disputed. |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| with state break requirements would have a significant effect on the air carriers' prices.<br><br>Lefebvre par. 5-29, 37-42 | |
| 74.    Requiring compliance by ASII with state break requirements would have a significant effect on the air carriers' routes.<br><br>Lefebvre par. 5-29, 37-42 | 74.  Disputed.<br><br>The declarant is an employees of ASII, is not an employee of air carriers (Lefebvre par. 1), and lacks foundation.<br><br>In response to Plaintiff's requests for production nos. 75 through 80 which asked for documents that relate to price changes, re-direction and/or re-routing of routes, and alteration of services, for its client-companies, due to California's meal and rest break laws, Defendant indicated that "ASII was not privy" to this information relating to "its cargo air carriers." (Ricasa Decl., Ex. 5). |
| 75.    The 2010 and 2013 CBAs covering cargo ramp agents in Department 145 were collectively bargained pursuant to the RLA, and each of the CBAs specifically reference the RLA in the first section of each, which is entitled "Agreement," as well as in Section 1.26 which addresses overtime.<br><br>Marron par. 24-25, Ex. 4 and 5 (first section and section 1.26) | 75.  Disputed.<br><br>    No factual context or evidence is provided to establish that the purported CBAs were collectively bargained pursuant to the RLA. [Marron par. 24-25, Ex. 4 and 5 (first section and section 1.26)]. |
| 76.    The National Mediation Board | 76.  Disputed. |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| has repeatedly found that ASII is covered by the Railway Labor Act.<br><br>Request for Judicial Notice, Ex. 4-12; Lefebvre par. 43 | The fact that the NMB made these determinations, does not mean that ASII is covered by the Railway Labor Act in this case.  In other words, whether Plaintiff and the putative class of cargo ramp agents working at LAX during the relevant period are within the Railway Labor Act exemption is a question subject to reasonable dispute. Each of cited decisions were based on the amount of control the air carrier exercised over ASII's operations at a given airport, a necessarily fact-intensive inquiry. |
| 77.    The Employee Information Guide that Plaintiff received specifically states in its discussion of overtime in section 1.26 that ASII is subject to the RLA under the jurisdiction of the National Mediation Board.<br><br>Marron par. 102, 103, section 1.26 of Ex. 11, Ex. 12 | 77.  Disputed<br><br>No reliable evidence is supplied to show that Plaintiff received the purported document.  (Marron par. 102, 103). |
| 78.    Mr. Perry also received a copy of the Kronos Time Clock Instructions. It describes the employee's responsibilities to clock in and out for each work period, including meal breaks, tells the employee what to do if there is a problem, and provides the employee with the procedure to report not only time worked *but also exceptions*.  This would include the inability to take a break.<br><br>Marron par. 104, Ex. 13 | 78.  Disputed.<br><br>No reliable evidence is supplied to show that Plaintiff received the purported document.  (Marron par. 104).  The purported instructions do not address circumstances where the employee is standing by duty for work. |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | |

**SECOND CAUSE OF ACTION**

**CALIFORNIA LABOR CODE SECTIONS 510, 1194**

**(UNPAID MINIMUM WAGE AND OVERTIME)**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 79.    ASII realleges and hereby incorporates by reference the uncontroverted facts set forth in paragraphs 1 through 78, inclusive. | |

**THIRD CAUSE OF ACTION**

**CALIFORNIA LABOR CODE SECTIONS 201, 202 AND 203**

**(TIMELY PAYMENT OF FINAL WAGES)**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 80.    ASII realleges and hereby incorporates by reference the uncontroverted facts set forth in paragraphs 1 through 79, inclusive. | |

PLAINTIFF'S RESPONSE TO SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW

## FOURTH CAUSE OF ACTION

## CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ.

## (DISGORGEMENT OF PROFITS)

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 81.    ASII realleges and hereby incorporates by reference the uncontroverted facts set forth in paragraphs 1 through 80, inclusive. | |

## FIFTH CAUSE OF ACTION

## 29 U.S.C. SECTINS 206 AND 207

## (UNPAID MINIMUM WAGE AND OVERTIME)

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 82.    ASII realleges and hereby incorporates by reference the uncontroverted facts set forth in paragraphs 1 through 81, inclusive. | |

Dated:  December 22, 2014          LAW OFFICE OF JONATHAN RICASA


                                   /s/ - Jonathan Ricasa
                                   Jonathan Ricasa
                                   Attorney for Plaintiff Christopher Perry