TERESA R. TRACY, ESQ. (SBN 89609)
Email:  ttracy@gladstonemichel.com
GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Marina del Rey, CA  90292-7925
Tel: (310) 821-9000 • Fax: (310) 775-8775

Attorneys for Defendant
AIRCRAFT SERVICE INTERNATIONAL, INC.

KEITH A. JACOBY, ESQ. (SBN 150233)
Email:  kjacoby@littler.com
LITTLER MENDELSON P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
Tel:  (310) 553-0308
Fax: (310) 553-5583

Co-Counsel for Defendant
AIRCRAFT SERVICE INTERNATIONAL, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER PERRY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AIRCRAFT SERVICE INTERNATIONAL, INC. and DOE ONE THROUGH AND INCLUDING DOE ONE HUNDRED,<br><br>Defendants. | CASE NO. CV13-00059-SVW (AGRx)<br><br>**DEFENDANT AIRCRAFT SERVICE INTERNATIONAL, INC.'S REPLY IN SUPPORT OF SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>***Under Separate Cover:*** *(1) Reply to Plaintiff's Response to Statement of Uncontroverted Facts; (2) Objections to Evidence Submitted in Opposition; (3) Supplemental Request for Judicial Notice*<br><br>Date:        January 26, 2015<br>Time:       1:30 p.m.<br>Ctrm:       6 |

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

# TABLE OF CONTENTS

**Page**

A.   The Overwhelming and Undisputed Evidence Establishes a Significant Effect on Air Carriers.................................................................3

B.   The ADA Preempts State Meal and Rest Break Requirements......................9

    1.   There is no strong presumption against preemption here. ...................9

    2.   Numerous Courts Have Confirmed Congress' Broad Intent To Preempt State Regulations That Relate to an Air Carrier's Service, Price, or Route. ......................................................................10

    3.   Other Courts Have Found ADA Preemption for Providers. ...............12

C.   There is Admissible And Overwhelming Evidence of The Crushing Costs of Guaranteeing Compliance, the Inability to "Staff" Around Them, and the Need to Pass These Costs Through To Air Carriers. .............14

D.   The Cases Cited by Plaintiff Are Neither Binding Nor Persuasive...............16

    1.   *Dilts* is Not Binding Nor Persuasive....................................................16

    2.   Plaintiff's Other Cases Are Equally Unpersuasive. .............................16

E.   The Interstate Commerce Clause Is Also a Basis for Preemption. ...............18

F.   The RLA Preempts Plaintiff's Federal Overtime Claim. ..............................18

G.   Plaintiff's State Claims Are Barred Due to the CBA. ...................................20

H.   The Third Claim for Continuing Wages ("Waiting Time Penalties") Fails. ..............................................................................................................22

I.   ASII'S Motion Should Be Granted In Its Entirety. ......................................25

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

CV13-00059-SVW (AGRx)
DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aero Port Services, Inc.,*
    40 NMB No. 37 (2013) ..................................................................19

*Air Serv Corporation,*
    39 NMB No. 54 (2012) ..................................................................19

*Airline Service Providers Association v. Los Angeles World Airports,*
    Case No. 2:14-cv-08977-JFW-PJW, Doc. No. 1 .................................12

*American Airlines, Inc. v. Wolens,*
    513 U.S. 219 (1995) ......................................................................11

*Angeles v. U.S. Airways, Inc.,*
    2013 U.S. Dist. LEXIS 22423. *29-30
    (N.D. Cal., Feb. 19, 2013) .............................................4, 5, 8, 11, 17

*Blackwell v. Skywest Airlines, Inc.,*
    2008 U.S. Dist. LEXIS 97955, *53-54
    (S.D. Cal., Dec. 3, 2008) ...............................................4, 5, 8, 11, 17

*Boston MedFlight,*
    38 NMB No. 18 (2010) ..................................................................20

*Brown v. United Airlines, Inc.,*
    7820 F.3d 60 (1st Cir. 2013).............................................................11

*California Div. of Labor Standards Enforcement v. Dillingham Const., Inc.,*
    519 U.S. 316 (1997) ......................................................................18

*Californians for Safe and Competitive Dump Truck Transportation v. Mendonca,*
    152 F.3d 1184 (9th Cir. 1998).....................................................8, 9, 18

*Campbell v. Vitran Express,*
    2014 U.S. App. LEXIS 12960 (9th Cir. 2014) .......................................2

*Cardenas v. McLane Foodservices,*
    796 F.Supp.2d 1246 (C.D. Cal. 2011) ................................................17

*Catawba Indian Tribe of South Carolina v. State of South Carolina,*
    978 F.2d 1334 (4th Cir. 1992)...........................................................15

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

CV13-00059-SVW (AGRx)
DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

*Collins v Overnite Transportation Company,*
  105 Cal.App.4th 171 (2003) ......................................................................21

*Cunningham v. Jet Aviation Flight Servs., Inc.,*
  2013 U.S. Dist. LEXIS 58401 (D.N.J., April 24, 2013)......................11

*DiFiore v. American Airlines,*
  646 F.3d 81 (1st Cir. 2011) ................................................................11, 12

*Dilts v. Penske Logistics, LLC,*
  769 F.3d 637 (9th Cir. 2014)..................................2, 8, 9, 10, 16, 17, 18

*Edwards v. Toys "R" Us,*
  527 F.Supp.2d 1197 (C.D. Cal. 2007) ...........................................14, 15

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
  498 F.3d 1031 (9th Cir. 2007)...................................................................10

*Firestone v. Southern California Gas Company,*
  219 F.3d 1063 (9th Cir. 2000)...................................................................21

*Fitz-Gerald v. Skywest Airlines, Inc.,*
  155 Cal.App.4th 411 (2007) ..............................................................17, 18

*Flores v. City of San Gabriel,*
  969 F.Supp.2d 1158 (C.D. Cal. 2013) ..................................................16

*Godfrey v. Oakland Port Services Corp.,*
  230 Cal.App.4th 1267 (2014) ..................................................................18

*Huntleigh Corp. v. La. State Bd. of Private Security Examiners,*
  906 F.Supp.357 (M.D. La. 1995)..........................................................12

*Huntleigh USA Corporation,*
  40 NMB No. 36 (2013) ..............................................................................19

*Industrial Welfare Com. v Superior Court,*
  27 Cal.3d 690 (1980)..................................................................................21

*Iniguez v. Evergreen Aviation Ground Logistics Enter., Inc.,*
  Case No. CV 07-7181 AHM (VBK) (September 11, 2009)..............16

*Jiminez v. Allstate Ins. Co.,*
  765 F.3d 1161 (9th Cir. 2014)...................................................................24

*Jones v. Spherion Staffing, LLC,*
  2012 U.S. Dist. LEXIS 112396 (C.D. Cal. 2012) ..............................23

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

*Kirby v. Immoos Fire Prot., Inc.,*
  53 Cal.4th 1244 (2012)................................................................6, 9, 23, 24

*L.A. Times Communs., LLC v. Dep't of the Army,*
  442 F.Supp.2d 880 (C.D. Cal. 2006) ...................................................14

*Lyn-Lea Travel Corp. v. American Airlines,*
  283 F.3d 282 (5th Cir. 2002)..............................................................13

*Marlow v. AMR Services Corp.,*
  870 F.Supp. 295 (D. Haw. 1994) .......................................................12

*Mendiola v. CPS Security Solutions, Inc.,*
  Case No. S212704 (Jan. 8, 2015) .......................................................20

*Miller v. Southwest Airlines Co.,*
  923 F.Supp.2d 1206 (N.D. Cal. 2013).............................................4, 5, 8, 11, 17

*Mitchell v. US Airways, Inc.,*
  2012 U.S. Dist. LEXIS 96719 (D. Mass. 2012)..................................12

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) ...........................................................................10

*Murphy v. Kenneth Code Productions, Inc.,*
  40 Cal.4th 1094 (2007)....................................................................23, 24

*Northwest, Inc. v. Ginsberg,*
  134 S.Ct. 1422 (2014) ........................................................................11

*Quantum Aviation Services,*
  37 NMB No. 45 (2010) .......................................................................18

*Regner v. Northwest Airlines, Inc.,*
  652 N.W.2d  557 (Minn.App. 2002)....................................................11

*Rivera v. Div. of Industrial Welfare,*
  265 Cal.App.2d 576 (1968)...............................................................21

*Rowe v. N.H. Motor Transp. Ass'n,*
  552 U.S. 364 (2008) ...........................................................................8, 9

*Singletary v. Teavana Corp.,*
  2014 U.S. Dist. LEXIS 62073, *10-14 (N.D. Cal., May 2, 2014) ....................24

*Tocher v. City of Santa Ana,*
  219 F.3d 1040 (9th Cir. 2000)............................................................5, 10

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

*Tucker v. Hamilton Sunstrand Corp., Inc.,*
   268 F.Supp.2d 1360 (S.D. Fla. 2003 ................................................................12

*U.S. v. Corona,*
   359 Fed. Appx. 848 (9th Cir. 2009).........................................................................16

**STATUTES**

49 U.S.C. § 14501(c)(1) ...............................................................................................5

49 U.S.C. § 41713(b)(1) .............................................................................................10

8 Cal. Code Regs. § 13520 ..........................................................................................22

Cal. Labor Code § 203...................................................................................22, 23, 24

Cal. Labor Code § 218.5..............................................................................................23

Cal. Labor Code § 226.7..............................................................................................24

Cal. Labor Code § 2810.3..............................................................................................7

Cal. Labor Code § 510.................................................................................................21

Cal. Labor Code § 514.................................................................................................20

Cal. Labor Code § 515(b)(2) .......................................................................................21

Cal. Labor Code § 517.................................................................................................21

Cal. Labor Code § 553...................................................................................................7

Federal Aviation Administration Authorization Act of 1994, Pub.L. No.
   103-305, 108 Stat. 1569 (49 U.S.C. § 14501(c))...................................................13

Railway Labor Act, 45 U.S.C. §§151, *et seq.*..........................................................17

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff has not submitted any evidence whatsoever in opposition to the motion of Aircraft Service International, Inc. ("ASII").  This is despite the fact that ASII's motion has been on file since October 14, 2014, and the Court granted Plaintiff extra time to file an opposition.  ASII submitted a 47-page declaration from the Airlines Services Manager of Plaintiff's department, Mr. Marron, that gave a detailed description of the business and operational realities of ASII's cargo ramp services at Los Angeles International Airport ("LAX").  ASII also submitted a 20-page declaration from its President and Chief Operating Officer, Tony Lefebvre, that gave a historical and business perspective to the air cargo and air carrier business, both from the standpoint of air carriers such as those with whom he had extensive employment experience with, and the standpoint of a provider such as ASII.  Lastly, ASII submitted a detailed 11-page declaration from its Regional Vice President responsible for the LAX facility, including the cargo ramp service there, that described in detail the economic impact of guaranteed compliance with state meal and rest breaks.  Plaintiff has not rebutted any of this information, did not try to develop further information, did not submit contrary declarations:  nothing!  Thus, there is absolutely no evidence before this Court that effectively questions, much less rebuts, ASII's detailed and extensive factual evidence that describes

- the business model and economics of, and market for, hiring providers like ASII by the air carrier industry, including cargo air carriers at LAX as a competitive tool used by air carriers for critical aspects of their air transportation and allowing better service on more routes at lower prices;
- the highly unpredictable nature of the flights, the tight windows of operation, and the onerous cascade effect of a delay on the service, routes and prices of the immediate cargo air carrier flight and its customers, as well as other flights, other air carriers, or passengers throughout the country and

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57381 Reply in Support of MSJ-r11.docx

CV13-00059-SVW (AGRx)
**DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

internationally – delays which are unavoidable if ASII is required to guarantee compliance with state meal and rest break requirements;

- the pervasive control by air carriers over virtually every aspect of the employment and operations of the cargo ramp agents at issue or the fact that such work was traditionally done by the air carriers' own employees;

- the crushing economic impact on ASII of requiring it to guarantee full compliance with state meal and rest break requirements claims – a cost that ASII has stated it will have to pass along to air carriers; and

- the infeasibility of staffing its cargo ramp agents in alternative ways that would guarantee full compliance with state meal and rest break requirements because alternate staffing would impermissibly affect the air carriers, either due to delaying flights, creating a situation rife with the potential for errors that can endanger the safety of the cargo and flight, or further increasing the cost of ASII's services – a cost so high that ASII has stated it would have no choice but to pass it along to the carriers.

Instead, Plaintiff relies almost exclusively on *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014), a case decided under a different law that was stayed pending the filing of a petition for writ of certiorari to the United States Supreme Court and which is, in any event, distinguishable.[1]

Further, Plaintiff has not made any argument that the preemptive reach of the Airline Deregulation Act ("ADA") does not extend to service providers such as ASII. This failure constitutes a waiver of that argument and a concession that its reach is indeed that far.

Similarly, Plaintiff's arguments are not persuasive regarding (a) the

---

[1] The United States Supreme Court granted the appellants in both *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014) and *Campbell v. Vitran Express*, 2014 U.S. App. LEXIS 12960 (9th Cir. 2014) through and including January 7, 2015 to file a petition for writ of certiorari. Petitions were in fact filed. ASII Supplemental Request for Judicial Notice in Support of Motion for Summary Judgment ("ASII Supp. RJN") Ex. 56-59.

1  preemptive effect of the Interstate Commerce Clause and the exclusions where, as
2  here, ASII is covered by the Railway Labor Act ("RLA") and there is a collective
3  bargaining agreement in place that requires interpretation, or (b) the availability of
4  waiting time penalties where, as here, there is a good faith dispute about liability.

5  **A.  The Overwhelming and Undisputed Evidence Establishes a**
6  **Significant Effect on Air Carriers.**

7  The undisputed facts in this case establish a clear and compelling picture of
8  the significant effect that enforcement of state break requirements and derivative
9  claims would have on air carriers.  As established by ASII's moving papers and
10  noted above, there is an undisputed and detailed factual record for this Court about:

11  ➤  the business model, symbiotic relationship, economics, and market for
12  the use by cargo air carriers of ASII as a service provider for critical and time-
13  sensitive cargo ramp services as a competitive tool to provide better service on
14  more routes at lower prices.

15  ➤  the highly unpredictable flights, tight windows of operation, and the
16  unavoidable, onerous and far-reaching cascade effect of an aircraft delay.

17  ➤  the pervasive control by air carriers over ASII's cargo ramp agents,
18  and examples of adverse personnel actions that ASII has taken with respect to its
19  cargo ramp agents at the behest of its air carrier customers.

20  ➤  the huge economic impact of requiring guaranteed full compliance
21  with state break requirements and derivative claims, the fact that these costs would
22  have led ASII to leave the LAX cargo ramp business even sooner if required at the
23  time, unless ASII passed them along to its air carrier customers.

24  ➤  a reasoned consideration and rejection of alternative staffing or
25  scheduling models based on service, safety, and cost factors.

26  There is no doubt that an interruption of cargo ramp agent services to
27  accommodate state meal and rest breaks would significantly and impermissibly
28  impact the point-to-point air carrier *service* not only of any one cargo air carrier but

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  extend through the cascading effect to other air carriers, including passenger air
2  carriers regionally, nationally, and internationally. ***This was the conclusion in***
3  ***three cases under the ADA that involved employees with duties very similar to***
4  ***those here:***

5  - *Blackwell v. Skywest Airlines, Inc.,* 2008 U.S. Dist. LEXIS 97955, *53-54
6    (S.D. Cal., Dec. 3, 2008)(cross-trained ramp service and gate employees);

7  - *Angeles v. U.S. Airways, Inc.,* 2013 U.S. Dist. LEXIS 22423. *29-30 (N.D.
8    Cal., Feb. 19, 2013)(ramp service employees); and

9  - *Miller v. Southwest Airlines Co.,* 923 F.Supp.2d 1206, 1212-1213 (N.D. Cal.
10   2013)(operations agents).

11   There was no requirement imposed by the *Blackwell, Angeles,* or *Miller*
12  courts – or indeed the U.S. Supreme Court - to show that alternatives to this effect
13  on *services*, e.g., staffing up in some contorted way or impracticably staggering
14  schedules to ensure there was no such delay (although such alternatives were
15  presumably as equally available to air carriers as to a provider such as ASII),
16  would not be feasible or that they would have any impact on labor costs or
17  profitability. When determining ADA preemption, no court has substituted its
18  business judgment for that of an employer as to the availability, feasibility, or
19  business impact of possibly conceivable ways to mitigate the impact of the state
20  law being challenged. This is particularly true in ASII's case, where a break taken
21  by one cargo ramp agent at a critical time in the air carrier's window of operation
22  not only affects the work of that individual employee but has a significantly
23  deleterious effect on the employee's *whole crew.* The test has always been, and
24  remains, whether the impact is more than indirect, tenuous, or remote. Indeed,
25  Plaintiff himself has not questioned the significant extent of the impact. Nor has
26  he advanced any argument that ability to mitigate is a "defense" to preemption.

27   A significant impact on *services* alone is sufficient to find ADA preemption,
28  since the impact on "services, prices, or routes" triggering ADA preemption is in

1   the disjunctive.

2       However, ASII has conclusively shown that the impact does not stop there.

3   The undisputed evidence also establishes that strict compliance with state break

4   requirements and the exorbitant *costs* that would have to be passed on to ASII's air

5   carrier customers.  ASII's detailed and undisputed evidence establishes that

6   requiring strict compliance with break requirements would impermissibly affect

7   costs and the price charged by the air carriers.  The logical, commonsense reality of

8   this consequence has been recognized by the courts.  *See, e.g., Blackwell, supra,* at

9   *53-54; *Angeles, supra,* at *29-30; *Miller, supra,* at 1212-1213.

10      Lastly, there is also undisputed evidence that there would be an effect on the

11  barriers to entry of air carriers with respect to existing, new or expanded routes.

12  The Ninth Circuit in *Tocher v. City of Santa Ana,* 219 F.3d 1040 (9th Cir. 2000),

13  noted that state law is related to the service, price or route of a motor carrier if the

14  regulation has more than an indirect, remote, or tenuous effect on the motor

15  carrier's services, prices, or routes.  It reasoned that the local ordinances before it

16  erected barriers to entry into the towing business and that those barriers could

17  affect competition for towing services.  Further, it stated that the ordinances

18  directly affected the service, prices or routes of motor carriers, which directly

19  influenced the relationship between the customer and the motor carrier and

20  indirectly raised costs.  Since the regulations at issue had more than an indirect,

21  tenuous, or remote effect on towing services and prices, they were expressly

22  preempted by 49 U.S.C. § 14501(c)(1) unless an exception applied.  Here, Plaintiff

23  has not pointed to any exception under the ADA that would save the state

24  requirements at issue from preemption, and ASII does not believe that any

25  exception applies.

26      These effects were discussed by the *Blackwell, Angeles,* and *Miller* courts,

27  all of which found ADA preemption.  *Blackwell, supra,* at *53-54; *Angeles, supra,*

28  at *29-30; *Miller, supra,* at 1212-1213.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1    Thus, requiring strict compliance with state break requirements would

2    "bind" ASII and its air carrier customers to a service-disruptive, very different, and

3    less competitive business model to provide these critical ramp services.

4    That ASII has tried to comply with the break requirements when it is feasible

5    to do so without adversely affecting its ability to provide cargo ramp services to its

6    air carrier customers does not in any way obviate its position that requiring strict

7    compliance with those requirements would have the kind of effect precluded by

8    ADA preemption.  A party is certainly permitted to argue both that it has not

9    broken a law and, in the alternative, that the law does not apply to it because the

10   law is preempted.  Furthermore, to the extent that ASII has provided evidence that

11   it believed it was in compliance as shown by the relatively small penalty payments

12   for meal breaks which *were* paid to Plaintiff and other cargo ramp agents, Plaintiff

13   obviously does not believe that those payments were, in fact, full compliance or he

14   would have dropped his lawsuit as being without further merit.  As detailed by Mr.

15   Marron and undisputed by Plaintiff, there were a variety of formal and informal

16   ways for employees to report a missed break.  Those who did were paid an

17   additional hour.  This included Plaintiff and other cargo ramp agents in his

18   department.  Marron Decl. at 41:18-42:5, 42:23-44:7, 44:21-46:6, and exhibits

19   referenced in those sections.  Indeed, in the face of ASII's evidence, Plaintiff has

20   not produced any evidence that he or someone else was not aware of these

21   avenues, that these avenues were unavailing, or that a cargo ramp agent was not

22   paid for a break when, for some reason, one was not provided.  As noted in ASII's

23   moving papers, ASII is painfully aware of the California Supreme Court's clear

24   statement that payment of a penalty does not equate with compliance, and that an

25   employer cannot simply adopt a "pay when you need to" option.  *Kirby v. Immoos*

26   *Fire Prot., Inc.,* 53 Cal.4th 1244, 1256-1257 (2012)(the law "does not give

27   employers a lawful choice between providing *either* meal and rest breaks *or* an

28   additional hour of pay")(emphasis in original).  Indeed, there are potential criminal

CV13-00059-SVW (AGRx)
DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

1   implications as well as other onerous penalties for not *complying* with the law,

2   even if the penalty payment is made.  See, e.g., Labor Code § 553, which makes

3   failure to comply a misdemeanor.  (ASII Supp. RJN, Ex. 63).

4           As ASII has established, ***guaranteeing** full and unfailing compliance*

5   imposes significant and adverse impacts – impacts that would clearly affect air

6   carriers.  These impacts are undeniable regardless of whether ASII passes the costs

7   along in a cost-plus type of contract or covers its increased costs through an

8   increase in its base price.  Further, if the air carriers do not accept the increases

9   and, as here, ASII discontinues providing service, the air carrier is left to either

10  doing the services with its own employees (thereby creating an impermissible

11  barrier to entry), or has to find a different provider – a provider who (if it is in full

12  and guaranteed compliance) will have the same issues as ASII with the same

13  consequences to the air carrier.  In either event, the exit of ASII or any other

14  provider lessens competition among service providers; less competition can

15  foreseeably have adverse consequences on air carriers and their ability to maximize

16  service and routes at low prices.

17          An additional and *direct* impact on air carriers results from newly-

18  implemented Labor Code § 2810.3, which potentially puts air carriers *directly on*

19  *the hook* for liability where a contractor fails to pay "wages" to workers on a

20  contract, beginning January 1, 2015.  (ASII Supp. RJN, Ex. 64).

21          Plaintiff's attempt to distinguish the ADA cases that found preemption of

22  state break requirements is not persuasive.

23          While true that the defendant in *Blackwell* was an air carrier, it presented

24  evidence regarding the impact on it of compliance with the break requirements.

25  The impact is no less if a provider is saddled with those same requirements with

26  the same attendant disruptions of service and additional costs, which foreseeably

27  can impact the service, prices and routes of the air carrier customer, as graphically

28  described by the air carrier in that case.  The cost of statewide compliance in

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

*Blackwell* ($3,250,000) is not dissimilar to the costs of compliance through penalty payments in this case for just the cargo ramp agents in one department at one airport for ASII ($1,910,000).  That *Blackwell* did not discuss *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca,* 152 F.3d 1184 (9th Cir. 1998), is not fatal; the decision discussed and is based squarely on U.S. Supreme Court and Ninth Circuit cases that it cites and discusses, and is not at all inconsistent with *Mendonca.*

Plaintiff is not correct that *Angeles* and *Miller* were not based on evidence.  While they were decided at the motion to dismiss stage, the operative complaints had detailed factual allegations that were deemed to be true, and the courts also had the collective bargaining agreement that further described the ramp service/operation agents' duties and terms and conditions of employment.  In any event, the fact that those courts found clear preemption on a more limited factual foundation than ASII has now presented only makes ASII's case for preemption stronger.

Plaintiff's argument that these three aviation cases are inconsistent with *Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364 (2008)*, Dilts,* and *Mendonca* is also unavailing.  Plaintiff characterizes *Rowe* as holding as a matter of law that generally applicable state wage and hour laws are not preempted.  (Opp., 19: 10-12).  Since *Rowe* in no way involved wage and hour laws, this is clearly incorrect.  Moreover and more importantly, however, ASII's position is consistent with the principles of *Rowe. Rowe* considered a state law aimed not at ground carriers but rather at shippers.  In this regard, the indirect effect on carriers of the law at issue in *Rowe* and the state law here is very similar.  The *Rowe* Court recognized that the regulation was "less 'direct'" than it might be but nevertheless *found* preemption because there was still an effect on carriers and their services that would be different than what, in the absence of the regulation, the market might dictate.  *Rowe, supra,* at 372.

1    Finding preemption is also not inconsistent with *Mendonca.* Plaintiff
2  erroneously states that an employer can "comply" with state break requirements by
3  simply paying an extra hour. *Kirby v. Immoos, supra,* at 1256-1257 (2012); *Dilts,*
4  *supra,* at 642.

5    Plaintiff then blithely suggests that the break requirements "have an
6  additional purpose (public safety)." (Opp.,19:21-22). He cites to no case or other
7  support for this proposition. *Rowe* gives an example of "safety" requirements that
8  would not be preempted, i.e., "state regulation that broadly prohibits certain forms
9  of conduct and affects, say, truckdrivers, in in their capacity as members of the
10 public (e.g., a prohibition on smoking in certain public places)." *Rowe, supra,* at
11 375. Here, the break requirements do not affect the cargo ramp agents as members
12 of the public, but rather is aimed directly and exclusively at the employment
13 relationship. In short, the U.S. Supreme Court has never suggested that state break
14 requirements are not preempted in the context of the aviation industry.

15    Furthermore, the issue regarding breaks is often not the wholesale
16 requirement that employees be given a break, but the detailed and restrictive
17 requirements that they be at least of a minimum length and given at specific
18 intervals. Thus, for example, a quibble about whether a break started a couple of
19 minutes late or was short by a minute or less, can result in an expensive lawsuit
20 with its attendant legal fees and potential for out-of-proportion liability. The air
21 transportation industry and the providers that supply critical and time-sensitive
22 services simply cannot be held to these requirements under the ADA.

23  **B.     The ADA Preempts State Meal and Rest Break Requirements.**

24    **1.     There is no strong presumption against preemption here.**

25    Plaintiff's contention that this case involves a "strong presumption" against
26 preemption lacks merit. As Plaintiff and the Ninth Circuit have acknowledged, the
27 "ultimate touchstone" of preemption is Congressional intent and purpose. (Opp.,
28 3:19-21); *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031,

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1   1040 (9th Cir. 2007).

2        Here, Congressional intent could not be more clear:  No state may enact or

3   enforce a law or regulation related to a service, price, or rate of an air carrier.  49

4   U.S.C. § 41713(b)(1).

5        There are certainly significant differences between trucking and aviation,

6   and between the extent of preemption under the respective federal laws that govern

7   each.  Without in any way ignoring or discounting those differences, however, it is

8   clear that where, as here, state requirements affect services, increase costs and

9   preemption can and will be found.  *Tocher, supra.*

10       The Ninth Circuit has thus recognized that the very market forces that ASII

11  has established – and which Plaintiff has not even disputed – result in preemption.

12  As established by the undisputed facts, the use of a service provider like ASII

13  allows for better service at decreased costs and reduces barriers to entry for air

14  carriers with respect to existing new, or expanded routes and services, and that

15  those barriers can affect competition for air transportation services.  There, as here,

16  the state requirements directly affect the services, prices or routes of air carriers,

17  which can influence the relationship between the customer and the air carrier and

18  indirectly raise costs.

19       This extraordinarily robust level of factual showing was absent from the

20  cases cited by Plaintiff, even *Dilts.*

21       **2.      Numerous Courts Have Confirmed Congress' Broad Intent**

22  **To Preempt State Regulations That Relate to an Air**

23  **Carrier's Service, Price, or Route.**

24       Plaintiff has done nothing to rebut federal cases that have readily found

25  preemption in the context of the aviation industry where a state law had "a

26  connection with, or reference to" an air carrier's service, price or route.  *Morales v.*

27  *Trans World Airlines, Inc.,* 504 U.S. 374, 383 (1992).  This is true even where, as

28  here, the law is not specifically designed to have such an effect, or the effect is

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

only indirect. *Id.,* at 386 (state consumer protection law re advertising preempted); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 (1995)(challenge to frequent flyer program preempted); *Northwest, Inc. v. Ginsberg*, 134 S.Ct. 1422 (2014)(challenge to frequent flyer program preempted).

Indeed, as discussed above and in ASII's moving papers, three federal courts have found preemption of state meal and rest break-related claims in the context of the aviation industry, ***two of which involve ramp service agents similar to Plaintiff:*** *Angeles, supra* (ramp service employees); *Blackwell, supra,* (cross-trained ramp service and gate employees); and *Miller, supra* (operations agents).

These cases remain effective and persuasive precedent that recognized the unique characteristics of air carrier operations and the relationship between the state break requirements at issue and the air carriers' services, prices or routes.

Plaintiff has not addressed much less refuted either the undisputed facts in this case or these aviation cases – a unique industry as established by ASII's overwhelming and undisputed factual showing.  Instead, Plaintiff has made general arguments based on cases in a different industry with very different industry realities, which were decided under a different law.

Preemption has routinely been found in aviation cases involving state laws regulated wages, hours, and working conditions.  *See, e.g., Brown v. United Airlines, Inc.*, 7820 F.3d 60 (1st Cir. 2013)(challenge to retention of sky cap baggage-handling fees preempted); *DiFiore v. American Airlines,* 646 F.3d 81 (1st Cir. 2011)(sky cap challenge based on state tip law preempted).

Further, other cases that considered facts that would have allowed an employee to disrupt an air carrier's service also found preemption.  *Cunningham v. Jet Aviation Flight Servs., Inc.,* 2013 U.S. Dist. LEXIS 58401 (D.N.J., April 24, 2013)(unpublished)(pilot's complaints that she was not getting specified rest breaks between flights preempted); *Regner v. Northwest Airlines, Inc.,* 652 N.W.2d 557 (Minn.App. 2002)(airline mechanic claims were ADA-preempted because he

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  could ground an aircraft and interrupt services).

2  **3.  Other Courts Have Found ADA Preemption for Providers.**

3  As discussed above, federal courts have held that the ADA preempts state

4  break requirements as applied to air carriers themselves.  The courts have not

5  hesitated to extend ADA preemption to service providers such as ASII, who the air

6  carriers use in lieu of their own employees, to provide services that are closely

7  connected to the air carriers and have a significant effect on the air carriers'

8  services, prices, or routes.  As more fully discussed in ASII's opening brief, these

9  cases run the gamut.  They involve service providers who perform all manner of

10  critical functions for air carriers[2] including:

11  • transporting baggage between the curb and the aircraft

12  (*DiFiore v. American Airlines,* 646 F.3d 81 (1st Cir. 2011); *Mitchell v. US*

13  *Airways, Inc.,* 2012 U.S. Dist. LEXIS 96719 (D. Mass. 2012));

14  • repairing their aircraft parts

15  (*Tucker v. Hamilton Sunstrand Corp., Inc.,* 268 F.Supp.2d 1360 (S.D. Fla.

16  2003);

17  • performing their pre-departure screening

18  (*Huntleigh Corp. v. La. State Bd. of Private Security Examiners,* 906

19  F.Supp.357, 362 (M.D. La. 1995));

20  • maintaining jet bridges

21  (*Marlow v. AMR Services Corp.,* 870 F.Supp. 295 (D. Haw. 1994); and

22

23  _____
   [2] Most recently, a nonprofit corporation that advocates for member air

24  carriers has filed a lawsuit in which it asserts, on behalf of air carriers, that "[f]or
   decades, airlines operating out of LAX have selected and retained [third-party

25  vendors and entitles providing airline services] *to provide critical services* for them
   at LAX.  Examples of such services include, but are not limited to: aircraft fueling,

26  . . . baggage handling and sorting, pushback and marshalling of aircraft, . . . aircraft
   loading and unloading . . ." *Airline Service Providers Association, et al. v. Los*

27  *Angeles World Airports, et al.,* Case No. 2:14-cv-08977-JFW-PJW, Doc. No. 1, at
   2:1-13, 4:11-21, 5:8-12 (emphasis added).  (ASII Supp. RJN, Ex. 61).  This Court

28  obviously need not and should not get involved with the issues raised in that matter
   nor their resolution, but can take judicial notice that the air carriers themselves
   have asserted the critical role that service providers such as ASII serve at LAX.

- running the computer reservation system

  (*Lyn-Lea Travel Corp. v. American Airlines,* 283 F.3d 282 (5th Cir. 2002).

The cargo ramp services that are at issue here are, if anything, even more intimately connected to the air carriers' cargo transportation, since they include transporting the cargo to and from the aircraft; loading and unloading the aircraft; marshaling the aircraft to and from the ramp; operating equipment that is part of the aircraft itself as well as equipment that the cargo ramp agents attach to the aircraft or maneuver in close proximity to the aircraft; inspecting the aircraft; and cleaning the aircraft ramp area to allow the aircraft to more safely approach and leave the ramp. These tasks are performed under the close control of the air carriers. Furthermore, these services are performed in the context of highly unpredictable arrival and departure times of cargo aircraft, and during very short "turn" windows of operation established by the air carriers. If ASII causes a delay of one cargo aircraft it is expensive not only for the air carrier whose flight is delayed, but can cause a cascade of costly disruptions of cargo and commercial flights throughout the country and around the world. Thus, even if it is ultimately and finally determined in some other case by some other court that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") does not preempt certain state laws as to certain intrastate trucking companies, the airline industry is uniquely different and ADA preemption applies. For example, unlike ASII, an intrastate trucker is not subject to its customers' close control. Unlike ASII, an intrastate trucker controls its shipments and the scheduling of its deliveries. Unlike ASII, an intrastate truck driver directly operates the primary mode of transportation – a truck, not a wide-body cargo aircraft that is operated by a regional, national, or international air carrier – and can easily pull that truck off the road to take a break. Unlike ASII, an intrastate trucker can call his customer and say that due to a traffic delay, the pickup or delivery time has changed a bit. And unlike ASII, if a truck is delayed, it only affects that truck. Such a trucker delay does not trigger a possible

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

national and worldwide cascade effect with the related expense, inconvenience to others, and other adverse consequences, which a delayed aircraft blocking a gate, ramp or runway would incur.  An airplane, unlike a truck, has only one place to go once it takes off – its destination.  When it lands is unpredictable at best, yet it inexorably controls the timing and work schedule of ASII cargo ramp agents.  ASII cannot control the landing since it does not control the air carrier or the aircraft – indeed, the reverse direction of control has been clearly established.

### C.   There is Admissible And Overwhelming Evidence of The Crushing Costs of Guaranteeing Compliance, the Inability to "Staff" Around Them, and the Need to Pass These Costs Through To Air Carriers.

Plaintiff's objections to the declaration of Brian Davis, Defendant's Regional Vice President, are without merit.  Davis describes the historical operating losses of the company, and goes on to describe the potential financial impact on those losses of requiring strict compliance with the state's meal and rest break requirements.  Declarations submitted in support of a motion for summary judgment must be based on personal knowledge, and "show affirmatively that the affiant is competent to testify to the matters stated therein."  FRE 56(e); *Edwards v. Toys "R" Us,* 527 F.Supp.2d 1197, 1200 (C.D. Cal. 2007).  Plaintiff objects to Davis' declaration on the ground that it allegedly fails to lay the foundation for his personal knowledge of the asserted facts.  (Oppo., 15:17-16:6.)  However, personal knowledge "can be inferred from a declarant's position within a company or business."  *Edwards, supra,* at 1201.  Davis identifies himself as Regional Vice President for Defendant.  Moreover, a declarant can testify as to matters that predate his or her employment with the company on behalf of which he is testifying.  *L.A. Times Communs., LLC v. Dep't of the Army,* 442 F.Supp.2d 880, 886 (C.D. Cal. 2006).  Davis can therefore present information about the financial losses suffered by Defendant in the years prior to his becoming the Regional Vice

14

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1   President.  Davis Decl. par. 3.

2          Davis identifies Richard Piper, Defendant's Senior Manager of Financial

3   Planning and Analysis as a person he and other corporate managers normally rely

4   upon "to review and analyze financial data" of the Company.  Davis Decl. par. 1-2.

5   Davis's declaration provides detailed descriptions of how the financial information

6   contained in his declaration was prepared.  He provided step by step instructions to

7   Mr. Piper that are presented in detail in the declaration.  Davis Decl. par. 7-8.

8   These details coupled with Davis's position at ASII establish the requisite personal

9   knowledge for the matters contained in the declaration.

10         Although Plaintiff contends that the declaration contains "nothing which

11  demonstrates Davis is qualified to issue opinions on the matters in his declaration,"

12  in fact Davis provides ample support for his asserted knowledge of ASII's

13  operational and financial realities.  (Opp., 15:18-19.)  Davis notes that he has "been

14  involved in negotiating contracts between ASII and cargo air carriers."  He goes on

15  to relate his personal knowledge of the negotiations, and the financial pressures

16  placed upon ASII to keep prices low.  Davis Decl., par. 12-14.  *See, Edwards.*

17  *supra,* at 1201, citing *Catawba Indian Tribe of South Carolina v. State of South*

18  *Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992)("Corporate officers are considered to

19  have personal knowledge of the acts of their corporations and an affidavit setting

20  forth those facts is sufficient for summary judgment.")

21         Further, Plaintiff's objection that Mr. Davis was not previously identified as

22  an expert witness is without merit.  Mr. Davis made his declaration as a corporate

23  officer, not an independent "expert" who purports to opine about matters outside

24  the understanding of a normal jury.  However, expert testimony is unnecessary in

25  this instance.  "The distinction between lay and expert witness testimony is that

26  lay testimony results from a process of reasoning familiar in everyday life, while

27  expert testimony results from a process of reasoning which can be mastered only

28  by specialists in the field."  *Flores v. City of San Gabriel*, 969 F.Supp.2d 1158,

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  1165 (C.D. Cal. 2013), *citing U.S. v. Corona*, 359 Fed. Appx. 848, 851 (9th Cir.

2  2009).  What Mr. Davis presents are matters understandable by ordinary persons

3  that rely on basic calculations and do not require specialized knowledge or

4  analysis.

5      **D.**    **The Cases Cited by Plaintiff Are Neither Binding Nor Persuasive.**

6          **1.**    *Dilts* **is Not Binding Nor Persuasive.**

7         In arguing that *Dilts* is binding on this Court, Plaintiff completely ignores

8  the fact that the *Dilts* was based on facts related to the trucking industry – facts that

9  are very different from the undisputed, unique operational reality of the aviation

10 industry, e.g., pervasive control by the air carriers and lack of control by ASII,

11 unpredictability, tight windows of operation, far-reaching and expensive cascade

12 effects of a delayed flight.  As pointed out in ASII's moving papers, even the

13 Secretary of Transportation warned the Ninth Circuit in its *amicus* brief in *Dilts*

14 that the conclusion regarding preemption it was proffering might well be different

15 if the case involved the aviation industry rather than the trucking industry.

16 Furthermore, as detailed in ASII's undisputed evidence, the break requirements can

17 and do interfere at the point that a carrier provides services to its customers, since

18 the carriers can and do schedule flights based on customer needs, including a

19 carrier-determined delay to accommodate customer shipments – last minute

20 changes that directly affect the ability of cargo ramp agents to meet the carriers'

21 windows of operation that nevertheless remain in effect.

22        ASII has already distinguished *Dilts* on several grounds and will not

23 consume additional judicial time repeating those arguments here.

24     **2.**    **Plaintiff's Other Cases Are Equally Unpersuasive.**

25        The stance of this case is very different from that in *Iniguez v. Evergreen*

26 *Aviation Ground Logistics Enter., Inc.,* Case No. CV 07-7181 AHM (VBK)

27 (September 11, 2009), cited by Plaintiff.  In *Iniguez*, the service provider failed to

28 make any argument or bring any case to the court's attention extending ADA

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

preemption to service providers; instead, it implicitly suggested that it was itself an air carrier and relied solely on decisions of the National Mediation Board decided under the Railway Labor Act. This sleight of hand clearly irritated the court in that case. ASII has not done so.

In *Fitz-Gerald v. Skywest Airlines, Inc.,* 155 Cal.App.4[th] 411 (2007), the court had already ruled that the RLA preempted state meal and rest break claims; the ADA preemption was merely an alternative defense that was not fully discussed in the decision. In that case, the court seemed overly concerned about the lack of citation to any case law and unwilling, as a state court, to find state law preempted by the ADA, at least in the early stages of the development of the preemption issue. The following year, in *Blackwell, supra,* a federal court found ADA preemption in the context of employees closely aligned with the ASII cargo ramp agents in this case. This, in turn was followed by the similarly-aligned decisions in *Angeles, supra,* and *Miller, supra,* all of which independently examined a factual record very different from that before the *Dilts* or *Fitz-Gerald* courts, and all of three of which concluded there was ADA preemption of state break requirements and derivative claims in the aviation industry for employees almost identical to the cargo ramp agents before this Court.

Plaintiff's reliance on *Cardenas v. McLane Foodservices,* 796 F.Supp.2d 1246 (C.D. Cal. 2011), is similarly displaced. As with Plaintiff's other cases, *Cardenas* involved a trucking company under the FAAAA, with the very different business operations and considerations associated with the trucking industry. While the employer apparently provided some evidence filed under seal, the court described it as "speculative," which is very different from the detailed and undisputed facts in this case.

ASII is not contending that the ADA preempts every state law that governs it. For example, state laws regulating the employment of minors and imposing vehicle safety requirements would still apply. ASII is similarly not challenging

CV13-00059-SVW (AGRx)
DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  state minimum wage,[3] apprenticeship programs, or prevailing wage requirements

2  addressed in cases such as *California Div. of Labor Standards Enforcement v.*

3  *Dillingham Const., Inc.,* 519 U.S. 316 (1997) and *Mendonca.*

4        **E.**    **The Interstate Commerce Clause Is Also a Basis for Preemption.**

5        The Ninth Circuit in *Dilts* did not discuss the Interstate Commerce Clause

6  ("ICC").  The only case cited by Plaintiff regarding ICC preemption is *Godfrey v.*

7  *Oakland Port Services Corp.,* 230 Cal.App.4th 1267, 1281 and fn. 16 (2014).

8  However, that state court decision did not make any determination of preemption

9  under the ICC as an *independent* basis for preemption.

10        The court in *Fitz-Gerald v. SkyWest, Inc.,* 155 Cal.App.4th 411, 422 (2007),

11  however, found that the ICC indeed was an independent source of preemption in

12  the context of the aviation industry since the application of the state law

13  requirements would substantially burden interstate commerce at least where, as

14  here and in *Fitz-Gerald*, there is a collective bargaining agreement in place which

15  is covered by the RLA.  Significantly, neither *Dilts* nor *Godfrey* involved that

16  situation.

17        **F.**    **The RLA Preempts Plaintiff's Federal Overtime Claim.**

18        The Court has an abundance of undisputed facts that establish that ASII and

19  Plaintiff are covered by the RLA.  A comparison of the undisputed facts in this case

20  and the kinds of facts on which the National Mediation Board ("NMB") has

21  repeatedly found to be the basis of RLA coverage (either as to ASII directly or

22  similar providers) show an almost identical overlap.

23        The NMB decisions relied upon by Plaintiff are easily distinguished.  In

24  *Quantum Aviation Services,* 37 NMB No. 45 (2010)(Pltf. RJN Ex. 2), the customer

25  was not, itself, an air carrier subject to the RLA.  Under this "anomalous"

26  circumstance, the NMB found that there was not RLA coverage.  In contrast, the

27

28       [3] ASII's challenge related to minimum wages in this case is Plaintiff's
derivative wage claims based on his meal and rest break claims.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

air carriers for whom ASII performs cargo ramp services are clearly covered by the RLA precisely because they are themselves air carriers – a point not even questioned by Plaintiff.  Marron Decl., par. 6.

*Aero Port Services, Inc.,* 40 NMB No. 37 (2013)(Pltf RJN Ex. 3), involved employees who claimed that their union, SEIU, failed to file grievances on their behalf and that the employer retaliated.  SEIU did not take any position on whether the employer was covered by the RLA.  Here, the undisputed facts show that ASII's collective bargaining agreements themselves state more than once that they are subject to the RLA.  Furthermore, the employer in *Aero Port* did not present any evidence that it had taken adverse personnel actions with respect to its employees at the behest of the carrier customer unlike the two cases discussed by the NMB – one of which was against ASII and both of which did find RLA coverage.  This is a significant distinguishing factor: the undisputed facts here establish that ASII did, in fact, take adverse personnel action against its cargo ramp agents at the behest of a carrier customer.

*Huntleigh USA Corporation,* 40 NMB No. 36 (2013)(Pltf. RJN Ex. 4), is also clearly distinguishable.  First, there was apparently no union contract at all, much less one that specifically stated it was covered by the RLA.  Second, as in *Aero Port*, the NMB discussed its finding in other cases that ASII and another service provider were indeed covered by the RLA, and distinguished them in the same way as it had in *Aero Port.*

Similarly, *Air Serv Corporation,* 39 NMB No. 54 (2012)(Pltf. RJN Ex. 5), is not on point.  Among other things in that case, the contract was not directly between the provider and air carriers, but rather was with a consortium.  There was no collective bargaining agreement that specified it had been negotiated under the RLA.  The provider's employees performed their work on a set schedule seven days a week and 24 hours a day.  There was no evidence that the provider had taken adverse personnel action against one of its employees at the behest of either

19

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1  the consortium or any air carrier.  The NMB concluded there was insufficient

2  evidence to establish the requisite level of control for RLA coverage on the record

3  before it.

4      Lastly, *Boston MedFlight,* 38 NMB No. 18 (2010)(Pltf. RJN Ex. 6), is

5  distinguishable.  In that case, the employees were nurses and paramedics, and the

6  employer took no position as to RLA coverage.  There was simply insufficient

7  evidence of control over the nurses and paramedics by an air carrier.

8      In short, this Court has the same kind of evidence before it that the NMB has

9  consistently found to support its conclusion that ASII is covered by the RLA.

10  **G.    Plaintiff's State Claims Are Barred Due to the CBA.**

11      In his opposition, Plaintiff argues that ASII's CBAs fail to satisfy Labor

12  Code § 514 with respect to state overtime because they do not "provide premium

13  wage rates for all overtime worked."  (Opp., 22:12-13).  Article 7 in both CBAs

14  provides for this payment.  (UF 49).

15      Because Plaintiff was covered by an RLA CBA, he cannot state a claim for

16  state overtime *either* under the Labor Code *or* under Wage Order 9.

17      The California Supreme Court in *Mendiola v. CPS Security Solutions, Inc.,*

18  Case No. S212704 (Jan. 8, 2015)(ASII Supp. RJN Ex. 65), recently confirmed the

19  authority of the Industrial Welfare Commission ("IWC") to issue implementing

20  regulations that recognize the peculiarities of different industries.  It reiterated that

21  wage and hour claims are governed by two complementary and occasionally

22  overlapping sources of authority, i.e., the Labor Code and a series of IWC Wage

23  Orders.  The IWC Wage Orders are legislative regulations specifying minimum

24  requirements with respect to wages, hours, and working conditions.  The California

25  Supreme Court stated:  "The number of wage orders, and their internal variations,

26  reflects the reality that different aspects of work in differing industries may call for

27  different kinds of regulation."  Slip Op., at 5.

28      The IWC had the authority to "adopt wage, hours, and working conditions

orders *consistent with this chapter . . .* which shall be final and conclusive for all purposes." Labor Code § 517. This included the authority to establish exemptions to the overtime requirements of § 510. Labor Code § 515(b)(2). Pursuant to this authority, Wage Order 9 continues to include the RLA collective bargaining exemption for overtime. The RLA collective bargaining agreement overtime exemption has been part of Wage Order 9 for many years. This long-continued and consistent administrative regulation therefore has at least silent acquiescence from the state legislature, supporting the position that the statute should not be construed to prevent it. The courts will not depart from such an administrative construction unless it is clearly erroneous or unauthorized. *Industrial Welfare Com. v Superior Court,* 27 Cal.3d 690 (1980); *Rivera v. Div. of Industrial Welfare,* 265 Cal.App.2d 576, 601 (1968).

The court in *Collins v Overnite Transportation Company,* 105 Cal.App.4[th] 171 (2003), considered the interplay between the Labor Code and another exemption in Wage Order 9 that, like the RLA CBA exemption here, was outside the general overtime rules of Labor Code § 510. The court stated an implied repeal of these regulations by statute, would plainly be inconsistent with the duty to harmonize separate legislative enactments. It affirmed the grant of the employer's demurrer to the state overtime allegations – both under the Wage Order *and* the Labor Code.

Furthermore, all of the state claims are preempted by the RLA because interpretation of the CBA is necessary in connection with all of them, as argued in ASII's moving papers. In *Firestone v. Southern California Gas Company*, 219 F.3d 1063 (9th Cir. 2000), the plaintiffs' unions negotiated "flat sums for completing meter reading routes of assigned lengths." *Id,*. at 1065. Meter readers who worked more than eight hours in a day "received an adjustment to the flat sum normally paid." *Id.* The agreement set forth a formula for determining the number of overtime hours; defendant, however, calculated overtime pay a different way.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

*Id,.* at 1065-66.  "The district court held that one could not determine whether plaintiffs were receiving a 'premium wage rate' for overtime under the collective bargaining agreement - making them exempt from California overtime laws - without interpreting that agreement to determine, inter alia, what the regular rate was."  *Id.,* at 1066.  The Ninth Circuit agreed.  It concluded that to resolve the parties' dispute, the court would have to interpret the terms of the CBA to determine if plaintiffs were receiving a premium wage for overtime, and based on that interpretation, decide if California's overtime exemption applied.  *Id,.* at 1067.  ("Because the collective bargaining agreement must be interpreted to determine whether the PPR document provides for premium wage rates for overtime work and, therefore, whether California's overtime exemption provision applies, . . . [p]laintiffs' state law claim is preempted by the LMRA").

    Here, it is unclear what the parties intended, thus requiring interpretation of the CBAs.  This is due, in part, to the additional language of the CBAs exempting "all Cargo employees. . . from the provisions of this article."  As further argued in ASII's moving papers, given the operational exigencies under which Plaintiff worked, the CBAs must necessarily be interpreted in order to determine how the union and ASII agreed to administer the pay structure applicable to Plaintiff.

## H.    The Third Claim for Continuing Wages ("Waiting Time Penalties") Fails.

    8 Cal. Code Regs. § 13520 defines "willful" for the purpose of waiting time penalties under Labor Code § 203 as follows:

> A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due.  However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.
>
> (a) Good Faith Dispute.  A 'good faith dispute' that any wages are due

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1   occurs when an employer presents a defense, based in law or fact
2   which, if successful, would preclude any recovery on the part of the
3   employee.  The fact that a defense is ultimately unsuccessful will not
4   preclude a finding that a good faith dispute did exist.  Defenses
5   presented which, under all the circumstances, are unsupported by any
6   evidence, are unreasonable, or are presented in bad faith, will preclude
7   a finding of a 'good faith dispute.'

8   (ASII Supp. RJN, Ex. 62).  Thus, it is clear that a defense such as the preemption

9   issues raised by ASII in this motion, regardless of whether the Court views them

10  solely as based in law or fact or a combination of both, precludes the award of

11  waiting time penalties under Labor Code § 203.  This is true even in the unlikely

12  event that this Court does not find preemption.

13          Furthermore, contrary to Plaintiff's unpersuasive argument, *Jones v.*

14  *Spherion Staffing, LLC,* 2012 U.S. Dist. LEXIS 112396 (C.D. Cal. 2012), was not

15  wrongly decided.  It refers to and is consistent with *Kirby v. Immoos*, 53 Cal.4th

16  1244, 1255 (2012)(meal and rest break payments are penalties, not "wages" for the

17  purpose of Labor Code § 218.5, which permits recovery of attorney's fees in an

18  action brought for nonpayment of wages).  *Jones*, and the California Supreme

19  Court itself in *Kirby*, discussed *Murphy v. Kenneth Code Productions, Inc.,* 40

20  Cal.4th 1094, 1109-10 (2007)(the *Murphy* court explained that the legislative

21  history of section 226.7 described the additional hour of pay "as a 'penalty'").

22  Since *Kirby* was decided years after the DLSE position dated March 7, 2008,

23  quoted by Plaintiff, it is not surprising that the earlier DLSE position did not take

24  *Kirby* into consideration.

25          In *Murphy,* the California Supreme court held that for the purpose of the

26  statute of limitations, missed break payments would be treated like "wages."

27  However, five years later, in *Kirby,* that same court held that a claim for missed

28  breaks is not an action brought for non-payment of wages but rather for non-

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57381 Reply in Support of MSJ-r11.docx

23

CV13-00059-SVW (AGRx)
**DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

1  provision of breaks. *Kirby, supra,* at 1255.  The *Kirby* court believed that its

2  holding was "not at odds" with *Murphy. Kirby, supra,* at 1257.  In short, *Murphy*

3  treated the monetary remedy for a missed break as a wage for one purpose, while

4  *Kirby* recognized that there was a different facet of the issue, i.e., the wrong giving

5  rise to that remedy does not stem from a wage violation.  Here, waiting time

6  penalties under § 203, like the attorney fee provision in *Kirby*, is concerned with a

7  particular type of wrong, not a particular type of remedy.

8     As discussed in *Singletary v. Teavana Corp.,* 2014 U.S. Dist. LEXIS 62073,

9  *10-14 (N.D. Cal., May 2, 2014), the first clause of § 203 clarifies that its penalties

10  only attach "if an employer willfully fails to pay any wages of an employee,"

11  establishing that the wrong it is concerned with is the prompt payment of *wages* to

12  a terminated employee.  *Kirby* clarified that the wrong at issue in Labor Code §

13  226.7's missed break payments is the non-provision of breaks, not a denial of

14  wages. As such, Plaintiff's claims for break payments fall under *Kirby*'s

15  characterization of these payments as penalties, not wages, and governs here.

16  Thus, the break-related payments cannot be the basis for waiting time penalties.

17     Plaintiff's reliance on *Jiminez v. Allstate Ins. Co.,* 765 F.3d 1161 (9th Cir.

18  2014), is also unpersuasive.  While the plaintiffs in that case did allege unpaid

19  break penalties, the court's decision on class certification – which in any event

20  focuses on common issues rather than the merits of the claims – does not discuss

21  the penalties aspect of the case in any great detail and instead discussed the

22  common issues that justified class certification.  Thus, it in no way stands for the

23  proposition that Plaintiff in this case can maintain a viable claim for waiting time

24  penalties based on alleged unpaid break penalty payments.

25

26

27

28

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1    **I.     ASII'S Motion Should Be Granted In Its Entirety.**

2        In conclusion, ASII's motion should be granted in its entirety.

3    DATED:  January 12, 2015              GLADSTONE MICHEL
4                                          WEISBERG WILLNER & SLOANE, ALC

5
6                                          By: _____
7                                                TERESA R. TRACY
                                             Attorneys for Defendant AIRCRAFT
8                                            SERVICE INTERNATIONAL, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CV13-00059-SVW (AGRx)
**DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2015, a copy of the following document was filed electronically:

**DEFENDANT AIRCRAFT SERVICE INTERNATIONAL, INC.'S REPLY IN SUPPORT OF SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's System:

JONATHAN RICASA, ESQ.
LAW OFFICE OF JONATHAN RICASA
2341 Westwood Blvd., Suite 7
Los Angeles, CA  90064
Email:  jricasa@ricassalaw.com

KEITH A. JACOBY, ESQ.
LITTLER MENDELSON P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA  90067-3107
Email:  kjacoby@littler.com

DATED:  January 12, 2015          GLADSTONE MICHEL
                                  WEISBERG WILLNER & SLOANE, ALC


                                  By: _____
                                  TERESA R. TRACY
                                  Attorneys for AIRCRAFT SERVICE
                                  INTERNATIONAL, INC.
                                  E-Mail:  ttracy@gladstonemichel.com

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC