TERESA R. TRACY, ESQ. (SBN 89609)
Email: ttracy@gladstonemichel.com
GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Marina del Rey, CA 90292-7925
Tel: (310) 821-9000 • Fax: (310) 775-8775

Attorneys for Defendant
AIRCRAFT SERVICE INTERNATIONAL, INC.


KEITH A. JACOBY, ESQ. (SBN 150233)
Email: kjacoby@littler.com
LITTLER MENDELSON P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Tel: (310) 553-0308
Fax: (310) 553-5583

Co-Counsel for Defendant
AIRCRAFT SERVICE INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PERRY, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>AIRCRAFT SERVICE INTERNATIONAL, INC. and DOE ONE THROUGH AND INCLUDING DOE ONE HUNDRED,<br><br>　　　　　　Defendants. | CASE NO. CV13-00059-SVW (AGRx)<br><br>**SUPPLEMENTAL BRIEFING OF AIRCRAFT SERVICE INTERNATIONAL, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*Under Separate Cover:*<br>*(1) Supplemental Declaration of Guillermo Marron; (2) Supplemental Declaration of Teresa R. Tracy*<br><br>Date:　January 26, 2015<br>Time:　1:30 p.m.<br>Ctrm:　6 |

57381 Supplemental briefing r4.docx

ASII's motion and its evidentiary support, including the Supplemental Marron and Tracy Declarations (*including the declarations filed by air carriers that are attached to the Tracy Declaration and which ASII requests this Court judicially notice pursuant to Red. R. Evid. Rule 201(b) and (d)*), prove that the impact on air carriers in this case is the same as the impact on carriers in the below cases that established the basis of preemption

> **in three cases involving state meal and rest breaks that involved employees with duties very similar to those here:**

- *Blackwell v. Skywest Airlines, Inc.*, 2008 U.S. Dist. LEXIS 97955, *53-54 (S.D. Cal., Dec. 3, 2008)(cross-trained ramp service and gate employees);
- *Angeles v. U.S. Airways, Inc.*, 2013 U.S. Dist. LEXIS 22423. *29-30 (N.D. Cal., Feb. 19, 2013)(ramp service employees); and
- *Miller v. Southwest Airlines Co.*, 923 F.Supp.2d 1206, 1212-1213 (N.D. Cal. 2013)(operations agents)

or the kinds of evidence and reasoning relied on

> **in employment cases where the employee could interrupt air carrier service:**

- *Cunningham v. Jet Aviation Flight Servs, Inc.*, 2013 U.S. Dist. LEXIS 58401 (D.N.J., April 24, 2013 (unpublished)(complaint re lack of specified breaks); and
- *Regner v. Northwest Airlines, Inc.* 652 N.W.2d 557 (Minn.App. 2002)(mechanic could interrupt services)

or

> **in cases extending ADA preemption to service providers such as ASII:**

- *DiFiore v. American Airlines*, 646 F.3d 81 (1st Cir. 2011)(the means selected by the carrier for providing baggage transport between the curb and the aircraft); *Mitchell v. US Airways, Inc.*, 2012 U.S. Dist.

LEXIS 96719 (D. Mass. 2012)(same);

- *Tucker v. Hamilton Sunstrand Corp., Inc.,* 268 F.Supp.2d 1360 (S.D. Fla. 2003)(carrier used provider for aircraft part repair);
- *Huntleigh Corp. v. La. State Bd. of Private Security Examiners,* 906 F.Supp.357, 362 (M.D. La. 1995)(carrier used provider to perform pre-departure screening);
- *Marlow v. AMR Services Corp.,* 870 F.Supp. 295 (D. Haw. 1994)(carrier used provider to perform jet bridge maintenance); and
- *Lyn-Lea Travel Corp. v. American Airlines,* 283 F.3d 282 (5th Cir. 2002)(carrier used provider to operate computer reservation system).

These cases followed the principles laid out and regularly confirmed by the Supreme Court in *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992), *Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364 (2008), *Am. Airlines v. Wolens,* 513 U.S. 219 (1995), *Dan's City Used Cars, Inc. v. Pelkey,* 133 S.Ct. 1769 (2013), and *American Trucking Assns., Inc. v. Los Angeles,* 133 S. Ct. 2096 (2013): the ADA is intended to increase competition and preclude state interference that has a relation to air carrier service, prices, or routes. The Supreme Court and others that have followed its principles recognize that state laws and regulations are preempted under such circumstances, **because they have a connection with airline rates, routes or services even if the impact is indirect.** *Morales, supra,* at 384; *Rowe, supra,* at 370.

Here, as in those cases, cargo ramp agents' responsibilities directly impact cargo air transportation ***service.*** Marron Declaration, at par. 12-44, 46-52, 60-65, 74-75, 78, 86-92, 94-96; Lefebvre Declaration, at par. 24-29, 37-42; Adams Declaration (Supp. Tracy Dec., Ex. 70) at par. 3-22; Black Declaration (Supp. Tracy Dec., Ex. 71) at par. 3-14; Hudson Declaration (Supp. Tracy Dec., Ex. 72) at par. 3-6; Rentink Declaration (Supp. Tracy Dec., Ex. 74) at par. 2-12; Sanchez Declaration (Supp. Dec., Ex. 75), at par. 2-6; Shagla Declaration (Supp. Tracy

1  Dec., Ex. 76) at par. 4-17; Sherman Declaration (Supp. Tracy Dec., Ex. 77) at par.
2  5-21; Steel Declaration (Supp. Tracy Dec., Ex. 78) at par. 3-15; Thompson
3  Declaration (Supp. Tracy Dec., Ex. 79) at par. 2-26; Dresser Declaration (Supp.
4  Tracy Dec., Ex. 80) at par. 2-6; Ransom Declaration (Supp. Tracy Dec., Ex. 73) at
5  par. 2-7.
6        Therefore, enforcement of meal breaks would impermissibly affect the cargo
7  air carriers' service. Here, as there, ASII's primary objective is, and must remain,
8  safe and timely service to its cargo air carriers so the air carriers, in turn, can
9  provide safe and timely air transportation. It is essential to this objective that the
10 timing of the services required by the air carriers dictate the availability, timing
11 and duration of meal and rest periods rather than the other way around. This is
12 essential because (a) the unpredictability of the flights necessitates that breaks at
13 times be postponed, shortened, or missed in order to provide air cargo service
14 within the short established turn times; and (b) the cargo ramp agents work in a
15 tightly coordinated crew: a break by one results in a break by all. A work stoppage
16 by a cargo ramp agent to take a mandated break at a specific time and for a specific
17 duration – whether that agent is an air carrier employee or an ASII employee –
18 necessarily means a change in the operation of the cargo air carrier in the form of
19 an extended turn time, i.e., a delay in air transportation service. This then cascades
20 beyond that single flight to other flights, other carriers, and other airports. In other
21 words, the air carriers themselves would have to re-structure their windows of
22 operation to be longer to allow for strict compliance with the exact way the state
23 break requirements mandate or be faced with escalating contract costs as ASII and
24 other providers start to pass through the significantly increased cost of compliance.
25 Based on this straightforward functional interpretation, the break requirements are
26 clearly preempted as an additional or a different requirement that directly and
27 significantly affects service. *See, e.g., Nat'l Meat Ass'n v. Harris,* 132 S. Ct. 965,
28 972-973 (2012)(based on functional interpretation, preemption found because to

find otherwise would make a mockery of the law's preemption provision).

Here, as in those cases, cargo ramp agents' responsibilities directly impact cargo air transportation **prices and routes**. Cargo air carriers have chosen to provide these services through providers rather than using their own employees to compete, including competition on service, prices and routes.

Air carriers are very cost-sensitive, due to their own economic and competitive challenges. Whether an air carrier incurs costs associated with guaranteeing strict compliance with state break requirements because the carrier uses its own employees or as a pass-through cost from a provider such as ASII, those increased costs clearly have a direct impact on the air carriers both in the prices they charge to their customers as well as the ability to start, maintain, or expand routes. Marron Declaration, par. 45-47, 111-113; Supp. Marron Declaration, par. 5; Davis Declaration, par. 2-14; Lefebvre Declaration, par. 2-15, 42; Black Declaration, par. 9-14; Sherman Declaration, par. 10-21; Steel Declaration, par. 5-15; Thompson Declaration, par. 16-26.

The start-up and ongoing cost of cargo ramp service can be prohibitively expensive, erecting a high barrier to entry for the air carriers and affect **routes**. Lefebvre Declaration, par. 16-27, 30, 32-42; Supp. Marron Declaration, par. 5.

There are also a number of very real limits on the market for hiring service providers for cargo ramp service as well as an air carrier's ability to contract with another independent cargo ramp service provider. The high cost of starting up and maintaining a cargo ramp service limits the number of providers. The relatively small number of cargo air carrier flights necessarily means each provider must capture a larger segment of the LAX cargo ramp business in order to be economically viable. Over the years, cargo ramp service providers, including ASII, have left LAX due to the low profit margin and high overhead, leaving the cargo air carriers with fewer choices. Supp. Marron Declaration, par. 4-9.

The practical effect of less competition among alternative providers is like

any other market where competition is very limited: those remaining can tend to provide less service and command a higher price particularly where, as here, the initial investment to start a cargo ramp service is so high.[1] As recognized in the above cases in which preemption was extended to providers such as ASII, the fact that these services are done by a third party does not defeat preemption. Similarly, the fact that they might be offered by a very small number of providers in no way lessens the impact to an air carrier compared with the impact if the air carrier itself had to comply with break requirements for their own employees.

*Dilts* does not change these precepts. *Dilts* does not change the robust factual foundation for ADA preemption in this case: if state meal and rest break claims are strictly applied, point-to-point cargo air transportation service will be affected. This impact alone results in preemption, since the three alternative factors of "service, prices, or routes" are in the disjunctive. However, ADA preemption is also supported by the undisputed fact that the high cost of compliance will be passed along to the air carriers affecting their own pricing under a common sense review, and the absence of cargo ramp service providers can impact routes. The Supreme Court in *Am. Trucking Ass'ns, Inc., supra*, at *6, found preemption after looking to the ***practical effect*** of the requirements because enforcement would result in an alteration of the conduct of the carrier. The Supreme Court has not established that a defendant arguing for preemption has to show evidence that the cost of compliance would be overwhelming, or that the market would allow a carrier to pick someone else. In line with this practical approach, the court in *Massachusetts Delivery Ass'n v. Coakley*, 769 F.3d 11, 21 (1st Cir. 2014), confirmed that (a) empirical evidence is *not* necessary in order to

---

[1] This is not an antitrust case. Nevertheless, the United States Supreme Court has recognized that the heart of our national economic policy has been faith in the value of competition, and that competition and the availability of and ability to freely select among alternative offers favorably affects all elements of a bargain, including service, price, and quality. *Standard Oil Co. v. FTC*, 340 U.S. 231, 248 (1951); *Nat'l Soc. of Prof'l Engineers v. U.S.*, 435 U.S. 679, 695 (1978).

find preemption, (b) courts can look to the logical effect that a particular scheme has on the delivery of services or the setting of rates, and (c) the logical effect can be sufficient even if indirect. *See also, Remington v. J.B. Hunt Transport, Inc.,* Case No. 1:15-cv-10010, Doc. No. 20 at p. 3 (D. Mass., February 5, 2015).

Furthermore, LAX and other airports are by their very nature, finite entities: they have a fixed and limited location with a fixed and limited number of gates and runways. The air carriers by the very nature of air transportation, including finite and fixed airports, flight unpredictability, and high costs and service requirements that severely limit an aircraft's turn time, operate in a very different environment than the intrastate, short route truck drivers that operate over an extensive road system considered in *Dilts*.

Plaintiff has not pointed to any case that suggests that preemption of a state law should be done on a case-by-case basis. Preemption in other areas of the law such as ERISA has never depended on an individualized assessment of the size, financial strength, ability to absorb higher costs, profitability, or other business differentials between employers or over time as to the same employer. To hold otherwise could result in preemption being found as to one employer but not another in the same industry, or at one location of an employer but not another location of that same employer, or at one location for one employer but not another employer at that same location, or indeed the existence of preemption changing at any given time as to any given employer at any given location.

In short, the strict enforcement of state break and derivative claims would irrefutably and impermissibly diminish the ADA's purpose to leave the airlines largely to themselves. *Wolens, supra,* at 228. This Court should find ADA preemption and grant ASII's motion on that basis.

Furthermore, as argued in the motion and summarized below, there are other overlapping reasons why ASII's motion as to each of the causes of action should be granted in its entirety:

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | 1st Cause of Action (state meal/rest breaks) | >Preempted by the Airline Deregulation Act ("ADA") and the Interstate Commerce Act ("ICC")<br><br>>Preempted because it requires interpretation of the collective bargaining agreements ("CBAs") under the Railway Labor Act ("RLA") |
| 5<br>6<br>7<br>8<br>9<br>10<br>11 | 2nd Cause of Action (state minimum wage and overtime) | >To the extent it is derivative of the 1st Cause of Action, preempted by the ADA and ICC<br><br>>Preempted because it requires interpretation of the collective bargaining agreements ("CBAs") under the Railway Labor Act ("RLA")<br><br>>To the extent based on Wage Order 9, there is no overtime because Plaintiff was covered by CBAs entered into under the RLA<br><br>>To the extent based on state law, there is no overtime because the IWC was authorized to, and did, continue exemptions under state law |
| 12<br>13<br>14<br>15<br>16 | 3rd Cause of Action (state waiting time penalties) | >To the extent derivative it is of the 1st or 2nd Causes of Action, preempted or not viable for the same reasons as the underlying claims<br><br>>No willful failure to pay (dispute of law or fact)<br><br>>Not payable on missed break penalties<br><br>>ASII paid all wages concededly due |
| 17<br>18 | 4th Cause of Action (Bus. & Prof. Code §17200) | >This is completely derivative claim and preempted or not viable for the same reasons as the underlying claims |
| 19<br>20<br>21 | 5th Cause of Action (federal minimum wage and overtime) | >Fair Labor Standards Act ("FLSA") minimum wage and overtime preempted by RLA<br><br>>Since rest breaks have always been paid, no claim for minimum wage or overtime based on rest breaks |

In conclusion, the strong factual evidence and solid legal basis of ASII's motion lead to the inescapable conclusion that it should be granted in its entirety.

DATED: February 17, 2015

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

By: /s/ Teresa R. Tracy
TERESA R. TRACY
Attorneys for Defendant AIRCRAFT
SERVICE INTERNATIONAL, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2015, a copy of the following document was filed electronically:

**SUPPLEMENTAL BRIEFING OF AIRCRAFT SERVICE INTERNATIONAL, INC. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System:

JONATHAN RICASA, ESQ.
LAW OFFICE OF JONATHAN RICASA
2341 Westwood Blvd., Suite 7
Los Angeles, CA 90064
Email: jricasa@ricassalaw.com

KEITH A. JACOBY, ESQ.
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Email: kjacoby@littler.com

DATED: February 17, 2015        GLADSTONE MICHEL
                                WEISBERG WILLNER & SLOANE, ALC

                                By: /s/ Teresa R. Tracy
                                TERESA R. TRACY
                                Attorneys for AIRCRAFT SERVICE INTERNATIONAL, INC.
                                E-Mail: ttracy@gladstonemichel.com