UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

Present: The Honorable **STEPHEN V. WILSON, U.S. DISTRICT JUDGE**

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [37][58].

## I. Introduction

On November 30, 2012, Plaintiff Christopher Perry ("Plaintiff" or "Perry") filed this putative class action against Defendant Aircraft Service International, Inc. ("Defendant" or "ASII") for (1) failure to provide meal and rest periods under California Labor Code §§ 226.7, 512; (2) failure to pay minimum wage and overtime under California Labor Code §§ 510, 1194; (3) failure to pay final wages in a timely manner under California Labor Code §§ 201-203; (4) unjust enrichment in violation of California Business and Professional Code § 17200 *et seq.*; and (5) unpaid minimum wage and overtime under the Fair Labor Standards Act, 29 U.S.C. §§ 206-207. Dkt. 1, Compl. ¶¶ 48-77. Presently before the Court is Defendant's motion for summary judgment or, in the alternative, partial summary judgment. Dkt. 37. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the motion.

## II. Factual and Procedural Background

The facts are well-known to the parties and are discussed in the Court's previous Order dated April 8, 2013. In short, Defendant ASII contracts with commercial air carriers to provide into-plane fueling, ground services, and passenger services at Los Angeles International Airport ("LAX") and six other California airports. Defendant's Statement of Undisputed Facts ("SUF") 1. The services that ASII provides can be, and often are, performed by the air carriers' own employees. SUF 2. Plaintiff formerly worked for Defendant as an LAX cargo ramp agent. SUF 4-5. Plaintiff principally alleges that Defendant

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

failed to give him and other cargo ramp agents proper meal and rest breaks, as required by Industrial Welfare Commission Wage Order No. 9-2001.

On March 6, 2013, Defendant moved for partial judgment on the pleadings, asserting that Plaintiff's state law claims are preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1), and that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, precludes recovery of overtime. Dkt. 16. On April 8, 2013, the Court denied Defendant's motion, finding that Defendant's arguments turned on factual issues that could not be resolved at that early stage of litigation. Dkt. 25, Order at 6-9. The Court acknowledged that several courts have dismissed meal and rest break claims against airline employers on the grounds that enforcing these laws against an airline would carry an impermissible effect. Dkt. 25, Order at 5. However, the Court stated that even assuming those courts correctly decided that applying meal and break laws directly to airlines would impermissibly interfere with their operations, that reasoning did not logically imply that imposing the same laws on private contractors hired by airlines would create the same degree of disruption. *Id.* at 5-6 (citing *Alim v. Aircraft Service Intern., Inc.*, 2012 WL 3647403, at *2-3 (N.D. Cal. Aug. 23, 2012) ("Because ASII is not itself an airline, but rather a provider of contract services to airlines, it is possible that the application of California meal-and-rest break regulations to ASII's employees would affect airline services 'in too tenuous, remote or peripheral a manner to have a preemptive effect.'")). Therefore, the Court held that a determination would depend on, at a minimum, the economics of, and market for, hiring private contractors.

On October 14, 2014, Defendant filed the instant motion for summary judgment, relying on largely identical grounds raised in its motion for partial judgment on the pleadings. Dkt. 37. Defendant argues that the ADA and Interstate Commerce Clause preempt Plaintiff's state law claims and that the RLA preempts his federal overtime claim. Defendant also argues that Plaintiff's state law claims fail because his collective bargaining agreement under the RLA requires interpretation. Finally, Defendant argues that Plaintiff's waiting time penalty claim fails because Defendant has a good-faith belief that Plaintiff's claims are preempted.

On January 26, 2015, the Court found that Defendant did not offer sufficient evidence to provide a factual context in which the Court could assess how enforcing these laws against private contractors such as ASII would impact air carriers. Therefore, the Court instructed the parties to submit additional evidence regarding (1) how enforcing these laws against contractors such as Defendant would impact air carriers; (2) the market for hiring private contractors to provide cargo ramp services; and (3) an airline's ability to contract with another independent cargo ramp servicer. *See* Dkt. 58.

_____ : _____

Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

### III. Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### IV. Discussion

#### A. ADA Preemption

##### 1. Legal Framework

The preemption clause in the ADA provides that a "State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1). When interpreting a preemption clause, courts "must give effect to [its] plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). "Congress's clear and manifest purpose in enacting the ADA was to achieve . . . the economic deregulation of the airline industry. Specifically, the ADA . . . was designed to promote the maximum reliance on competitive market forces." *Air Transport Ass'n of Am. v. City & Cnty. of San Francisco*, 266 F.3d 1064, 1070 (9th

:
_____   _____
Initials of Preparer
PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

Cir. 2001).

"To determine whether a local law has a prohibited 'connection with' a price, route or service, [courts] look both to the objectives of the [ADA] statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on [price, route or service]." *Air Transport*, 266 F.3d at 1071. The Supreme Court has held, for example, that if a state attempts to regulate how airlines advertise airfares, this has a "forbidden significant effect upon fares" and unavoidably "relate to" airline rates. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388-89 (1992). In addition, a state law may "relate to" airline prices, routes, or services and thereby be preempted, "even if the law is not specifically designed to affect such [prices, routes, or services], or the effect is only indirect." *Id.* at 386. At a minimum, however, the effect on prices, routes, or services must be more than "tenuous, remote, or peripheral." *Id.* at 390. To determine if the State has crossed that threshold, the proper inquiry is whether the challenged provision, directly or indirectly, "binds the air carrier to a particular price, route or service and thereby interferes with competitive market forces within the air carrier industry." *Air Transport*, 266 F.3d at 1072. "Laws are more likely to be preempted when they operate at the point where carriers provide services to customers at specific prices." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014) (citing *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1431 (2014)).

Defendant bears the burden of proof in establishing the affirmative defense of preemption. *See id.* at 649.

### 2. Defendant's Proffered Evidence

Replying to this Court's order for further evidence, Defendant submitted supplemental briefing, declaring that its original motion, existing evidentiary support, and two additional declarations prove that its compliance with California's meal and rest break laws would significantly impact air carriers and trigger preemption.

The previous evidentiary support on which Defendant relies addresses the Court's question only in limited and often contradictory fashion. For example, Defendant ASII's president, Tony Lefebvre, asserts that it is prohibitively expensive for an air carrier to assume for itself the costs of airport operations, creating a market for private contractors such as ASII. Dkt. 39, Declaration of Tony Lefebvre ¶¶ 18-20. At the same time, when ASII has needed to renegotiate its contracts due to changing economics, as little as a $0.01 increase in price has prompted air carrier clients to put supplier agreements back out to bid. *Id.* ¶ 33.

:
_____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

Mr. Lefebvre concludes that meal and rest break compliance would put ASII at a competitive disadvantage "with respect to labor costs compared with large air carriers who perform the same work with their own employees," but does not demonstrate how those costs would exceed the apparently prohibitive costs of air carrier self-service. *See id.* ¶ 42.

Additionally, ASII's regional vice president Brian Davis estimates that the cost of paying meal and rest break penalties incurred between 2008 and 2013 amounted to $1,910,802, based on an assumption that the penalty would be paid for every worked shift lasting longer than the statutorily-exempt period. *See* Dkt. 40, Declaration of Brian Davis ¶¶ 4, 7. Mr. Davis's projections for the costs of additional workers or extended shifts are similarly premised. *See id.* ¶¶ 9, 10. At the same time, however, ASII's Fueling Operation Manager, Guillermo Marron, states that "every Department 145 cargo ramp agent was almost always provided with the opportunity to take at least one 10-minute rest break every 3.5 hour [*sic*];" "some cargo ramp agents clock[ed] in and out for meal breaks and engag[ed] in personal activities consistent with being on a meal break;" and "most cargo ramp agents regularly used [forms to record missed breaks but] I am not aware of any Department 145 cargo ramp agents who ever reported on a form that they were not provided with a rest break."[1] Dkt. 41, Declaration of Guillermo Marron ¶¶ 82, 85, 97. Defendant also "at one point" engaged "floaters" to cover "agents who were on breaks," although the experiment was discontinued at an unspecified time. *Id.* ¶ 95. Therefore, although Defendant appears to assert at least partial compliance with the law, Defendant has not demonstrated beyond speculation the impact of full compliance on itself, much less on its air carrier clients.

The first supplemental declaration is from Mr. Marron, who previously provided a declaration in support of Defendant's motion. As to the market for cargo ramp services, Mr. Marron states that only two LAX air carriers are currently self-sufficient. *See* Dkt. 60-1, Supplemental Declaration of Guillermo Marron ¶ 4. Although there were once six contractors, including ASII, serving LAX's other air carriers, four of these contractors have ceased operations at LAX, and two new private contractors have entered the local market, for a net of four current contractors with fourteen air carrier clients among them. *See id.* ¶¶ 5-6. Mr. Marron's experience leads him to believe that when there are fewer contractors, rates increase. However, Mr. Marron does not explain why Defendant ASII left the market while two new contractors entered it. *See id.* ¶¶ 7-8.

---

[1] This is at odds with Defendant's simultaneous contention that Plaintiff and all class members were always provided with meal break opportunities, except as covered by already-paid penalties. *See* Dkt. 50, Ex. 4 at 3.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

The second supplemental declaration is from Defendant's attorney, Teresa Tracy, who attaches copies of ten declarations submitted by Palm Springs airport employees of Skywest Airlines in *Blackwell v. Skywest Airlines, Inc.*, 2008 WL 5103195 (S.D. Cal. Dec. 3, 2008) ("*Skywest*"), and a copy of one declaration submitted by a San Francisco International airport employee of Southwest Airlines in *Miller v. Southwest Airlines, Co.*, 923 F. Supp. 2d 1206 (N.D. Cal. 2013) ("*Southwest*"). *See generally* Dkt. 60-2. The declarations describe in varying detail how air carriers use their own employees as cargo agents, the implications of that type of work on air carrier performance, and how wage and hour compliance might affect air carriers. *See, e.g.*, Dkt. 60-2, Ex. 70, Declaration of Connie Adams ¶¶ 8, 18-19.

### 3. Analysis

As a preliminary matter, the Court expresses serious doubts as to the precedential value of the cases on which Defendant heavily relies, such as *Skywest* and *Southwest*, following the Ninth Circuit's decision in *Dilts v. Penske Logistics, LLC*.[2] In *Dilts*, the Ninth Circuit held that "California's meal and rest break laws plainly are not the sorts of laws 'related to' prices, routes, or services that Congress intended to preempt. They do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly. They are 'broad law[s] applying to hundreds of different industries' with no other 'forbidden connection with prices[, routes,] and services.'" 769 F.3d at 647 (citing *Air Transport*, 266 F.3d at 1072); *id.* at 644-45 ("Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services. Consistent with that instruction, we have held that the [Federal Aviation Administration Authorization Act (FAAAA)] does not preempt a state's prevailing wage law, or a state law requiring that towing services obtain express authorization to tow from private property, and that the Airline Deregulation Act does not preempt a generally applicable city anti-discrimination law.") (citations omitted).

Therefore, in contrast to laws that regulate operations at the point where carriers provide services to customers, the Ninth Circuit held that "generally applicable background regulations that are several steps removed from prices, routes, or services" are not preempted even if they "raise the overall cost of doing business or require a carrier to re-direct or reroute some equipment" because the carriers are still the

---

[2] In fact, *Dilts* cited to *Southwest* with disapproval as one of the cases that had held that California's meal and rest break laws are preempted under the ADA. *See* 769 F.3d at 641 n.1

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

ultimate decision-makers as to the prices, routes, and services offered to their customers. *Id*. at 647; *compare Northwest*, 134 S. Ct. at 1431 (finding claim for breach of implied covenant stemming from termination of frequent flyer account "related to" prices, routes and services) *with S.C. Johnson & Son v. Transp. Corp. of Am.*, 697 F.3d 544, 558 (7th Cir. 2012) (labor laws not preempted by ADA and FAAAA because they "operate one or more steps away from the moment at which the firm offers its customer a service for a particular price") and *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 88 (1st Cir. 2011) (differentiating law regulating how an airline charges customers from a law that would regulate "merely how the airline behaves as an employer or proprietor").

To be sure, *Dilts* concerned the FAAAA, which governs motor carriers rather than air carriers, and California's meal and rest break laws may not necessarily affect truckers and cargo agents in the same manner. However, the FAAAA was modeled on the ADA and should be interpreted consonantly inasmuch as they contain identical language. *See Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 368, 370 (2008); *Dilts*, 769 F.3d at 644-45 ("By using text nearly identical to the Airline Deregulation Act's, Congress meant to create parity between freight services provided by air carriers and those provided by motor carriers. Therefore, the analysis from . . . Airline Deregulation Act cases is instructive for our FAAAA analysis as well."); *see also id*. at 641 n.1 (disapproving of *Southwest* as one of the cases that had held that California's meal and rest break laws are preempted "under the analogous provision of the Airline Deregulation Act").

In any case, the Court need not resolve whether the reasoning in *Dilts* applies equally under the ADA. Even if the cases on which Defendant relies remain sound authority, and compliance with California's meal and rest break laws impact air carriers in a manner that is not "too tenuous, remote, or peripheral," Defendant has plainly failed to produce sufficient evidence to demonstrate the same for private contractors such as Defendant.

Defendant's reiteration of the same evidence previously submitted to the Court is no more persuasive now than it was in the first instance, and the two supplemental declarations do little to remedy that deficiency. Mr. Marron merely states that air carriers have more than one potential cargo ramp option, and relies on general principles of supply and demand to speculate that ASII's compliance would have an acute impact on air carriers as well. Moreover, although the declarations attached to Ms. Tracy's supplemental declaration were apparently helpful to the courts in *Skywest* and *Southwest*, the defendants in both cases were themselves self-sufficient air carriers, not private contractors hired by air carriers. Even assuming that regulation of private contractors may impact the operations of air carriers in some cases,

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

Defendant has made only the most cursory attempt to connect the evidence presented in other cases involving inapposite defendants to this Court's request, claiming that preemption should not be declared on a piecemeal basis "[with]in the same industry." Dkt. 60 at 6.

Defendant has proffered no evidence that compliance with California's meal and rest break laws would actually impact the prices, routes, or services of its air carrier clients. Defendant has not shown beyond speculation the cost of full compliance to itself, how much of those costs it would absorb or pass on to its clients, or how air carriers would then pass on those costs to passengers, absorb the costs, choose a different private contractor, or become self-sufficient. Any connection Defendant may have shown is, therefore, "too tenuous, remote, or peripheral" to trigger preemption.

Accordingly, the Court DENIES Defendant's motion for summary judgment on this ground.

### B. Interstate Commerce Clause Preemption

Defendant claims that state laws regulating meal and rest breaks, minimum wage and overtime pay, waiting time penalties, and derivative claims are precluded by the Interstate Commerce Clause because ASII agents place cargo into interstate commerce and perform activities with a substantial effect thereon. *See* Dkt. 37 at 22-23.

Defendant's argument is without merit. "[S]tate regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce. A critical requirement for proving a violation of the dormant Commerce Clause is that there must be a substantial burden on interstate commerce." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012). Defendant has provided no evidence to establish that its compliance with state laws would create a substantial burden on interstate commerce.

Accordingly, the Court DENIES Defendant's motion for summary judgment on this ground.

### C. RLA Preemption of Federal Overtime Claim

Defendant argues that summary judgment is appropriate regarding Plaintiff's federal overtime claim because Section 13(b)(3) of the Fair Labor Standards Act ("FLSA") exempts from overtime liability "any employee of a carrier by air subject to the provision pay of Title II of the Railway Labor Act." 29

| | : |
|---|---|
| | Initials of Preparer |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

U.S.C. § 213(a). This carve-out encompasses "every common carrier by air engaged in interstate or foreign commerce, . . . and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service." 45 U.S.C. § 181.

Defendant asserts that the National Mediation Board ("NMB") "has consistently found that the RLA applies specifically to ASII for similar positions across the country." *See* Dkt. 46 at 5. In support of this claim, Defendant points to litigation in which its Seattle airport employees were considered employees of an air carrier. *See Aircraft Serv. Int'l Group v. Teamsters Local 117*, 742 F.3d 1110 (9th Cir. 2014), *rev'd and vacated en banc* 779 F.3d 1069 (9th Cir. 2015). Defendant also submits several NMB reports finding RLA application to its workers in Detroit, Pittsburgh, and Albuquerque, as well as findings regarding other, similar cargo air handling contractors in San Francisco and Philadelphia, *see* Dkt. 43.

In denying Defendant's motion for partial judgment on the pleadings, the Court noted the limited bearing of the NMB decisions because they conclude only that Defendant's specific operations at particular airports in certain time periods fell within the ambit of the RLA. Each NMB decision was based on the amount of control the air carrier exercised over Defendant's operations at a given airport, a necessarily fact-intensive inquiry, and Defendant did not identify any reason why the determinations made in other contexts would apply with equal force to this case.

Defendant has submitted no evidence to lead the Court to a different conclusion at this stage of the proceedings. Instead, Defendant continues to cite to decisions regarding operations at other airports and, in some cases, involving other companies altogether.

Accordingly, the Court DENIES Defendant's motion for summary judgment on this ground.

### D. RLA Preemption of State Overtime Claim

Defendant argues that because employees are covered by a collective bargaining agreement ("CBA") entered into under the RLA, there is no overtime entitlement under Wage Order 9 and independent state law is preempted because the CBA requires interpretation. *See* Dkt. 37 at 23-25.

These arguments are without merit. As the Court previously stated in denying Defendant's motion for partial judgment on the pleadings, Plaintiff's state claim for overtime is based not on the wage order,

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

but California Labor Code § 510. Dkt. 25, Order at 8. To be exempt from the overtime requirements of section 510, Defendant must show that Plaintiff is covered by a CBA that meets all of the requirements of California Labor Code § 514, which it cannot do. To comply with section 514, the CBA must provide for premium pay for all overtime hours. *See* Cal. Lab Code § 514. However, despite Defendant's assertions that Article VII of the CBA meets these requirements, the CBA explicitly excludes cargo employees from the provisions of Article VII. *See* Dkt. 41, Ex. 4. Defendant clearly contemplated that some types of employees would work overtime hours without earning premium pay. *See also Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4-6 (N.D. Cal. Feb. 19, 2013) (determining that resolving the plaintiffs' overtime claim did not require interpretation of the terms of the CBA).

Accordingly, the Court DENIES Defendant's motion for summary judgment on this ground.

### E. Good-Faith Preemption of Waiting Time Penalty

Defendant argues that no waiting time penalties apply because its belief that Plaintiff's claims are preempted created a good-faith dispute and, therefore, bars waiting time penalties. *See* Dkt. 37 at 25. Defendant also contends that waiting time penalties cannot be claimed based solely on missed break periods.

Plaintiff bases his claim for waiting time penalties not solely on missed breaks, but also on missed "minimum wages and overtime." *See* Dkt. 1 at 10; Compl. ¶¶ 48-58. Therefore, the Court need not decide whether missed breaks alone constitute a basis for waiting time penalties. *See Saechao v. Landrys, Inc.*, 2016 WL 3227180, at *3 (N.D. Cal. June 11, 2016) (noting conflicting decisions among California state courts as to whether missed breaks alone can support a waiting time penalty).

Nevertheless, the Court finds that Plaintiff's claim for waiting time penalties is barred by Defendant's creation of a good-faith dispute.[3] Waiting time penalties are due only when an employer

---

[3] "It is unclear, based on this language, when the good-faith defense must be presented. However, courts have implied, through their application of § 13520, that defenses may be asserted at the time of litigation." *Green v. Lawrence Serv. Co.*, 2013 WL 3907506, at *12-13 (C.D. Cal. July 23, 2013) (citing *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011)); *see also Campbell v. PricewaterhouseCoopers, LLP*, 602 F. Supp. 2d 1163, 1185 (E.D. Cal. 2009), *rev'd on other grounds*, 642 F.3d 820 (9th Cir. 2011) (granting summary judgment for defendant as to waiting time penalties where

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-00059-SVW-AGR | Date | August 4, 2016 |
|---|---|---|---|
| Title | *Christopher Perry v. Aircraft Service International Inc et al* | | |

willfully fails to pay wages upon an employee's departure. Cal. Lab. Code § 203(a). "[T]o be at fault within the meaning of the statute, the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due. As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done. *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981). However, "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs. tit. 8 § 13520. The good-faith defense arises "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." Cal. Code Regs. tit. 8 § 13520. Of course, "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'" *Id*. However, if an unsettled question of law or issue of first impression will determine whether wages were owed, leniency as to a determination of good faith may be especially appropriate. *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1202 (2008).

      Here, Plaintiff's claim for waiting time penalties would be triggered by violations of California's wage and hour laws. While the Court finds Defendant's argument—that these laws are preempted by federal statutes—insufficient as to its motion for summary judgment, Defendant has nevertheless introduced a defense, based on some evidence, which would preclude recovery if successful at trial. Therefore, consistent with section 13520, the Court finds that a good-faith dispute existed and GRANTS Defendant's motion for summary judgment regarding Plaintiff's claim for waiting time penalties.

**V.    Order**

      For the foregoing reasons, the Court GRANTS Defendant's motion as to Plaintiff's claim for waiting time penalties. The Court DENIES Defendant's motion in all other respects.

---

defendant held a reasonable belief as to a class's exemption from wage order provisions).

 

Initials of Preparer    :

PMC