Jonathan Ricasa (SBN 223550)
jricasa@ricasalaw.com
LAW OFFICE OF JONATHAN RICASA
15760 Ventura Boulevard, Suite 700
Encino, California 91436
Telephone: (818) 650-8077
Facsimile: (818) 301-5151

Attorney for Plaintiff
Christopher Perry

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT

| Christopher Perry, individually and on behalf of all others similarly situated, | ) ) ) | Case No. CV13-00059-SVW(AGR) |
|---|---|---|
| Plaintiff, | ) ) ) | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEY'S FEES AND SERVICE AWARD** |
| v. | ) ) | |
| Aircraft Service International, Inc., and Doe One through and including Doe One Hundred, | ) ) ) | Hon. Stephen V. Wilson Courtroom 10A |
| Defendants. | ) ) ) ) | Date: November 20, 2017 Time: 1:30 p.m. Place: 350 West First Street Courtroom 10A Los Angeles, California 90012 |
| | ) ) ) ) ) | Complaint Filed: November 30, 2012 Removal Date: January 4, 2013 Pre-Trial Conf. Date: None Trial Date: None |

**TO EACH PARTY AND TO EACH PARTY'S ATTORNEY OF RECORD:**

NOTICE IS HEREBY GIVEN that, on November 20, 2017, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10A of the above-entitled Court located at 350 West First Street, Los Angeles, California 90012, Plaintiff Christopher Perry will move for final approval of a class-wide settlement reached herein.

1    The Motion is unopposed.  The Motion will be made and based upon this Notice of

2  Motion, the attached Memorandum of Points and Authorities, the Appendix of Evidence

3  filed herewith, and all of the pleadings, papers, and documents contained in the file of the

4  within action.

5

6  Dated: October 23, 2017                    Law Office of Jonathan Ricasa

7

8                                                         /s/ - Jonathan Ricasa

9                                                         Jonathan Ricasa
                                                          Attorney for Plaintiff Christopher Perry
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ……………………………………………………………... 1

II. BACKGROUND ……………………………………………………………… 1

III. ARGUMENT ………………………………………………………………... 4

    A. The Rule 23 Class Action Requirements Are Met ………………………… 4

        1. Numerosity …………………………………………………………….. 4

        2. Commonality …………………………………………………………… 4

        3. Typicality ……………………………………………………………… 5

        4. Adequacy ……………………………………………………………… 6

    B. The Settlement Is Fundamentally Fair, Adequate, and Reasonable ……….. 6

    C. The Requested Attorney's Fees Should Receive Final Approval …………. 9

        1. The 25% benchmark does not apply here because California state law, not Ninth Circuit law, applies in a diversity case ……….. 9

        2. Plaintiff's fee request represents a 20% reduction of the lodestar ……………………………………………………………….. 10

        3. The net recovery for each class member is very generous on account of the close proximity of the class members' recovery to what they would have received had they received meal break premiums and overtime compensation while they were working …………………………………………………………… 13

        4. Plaintiff's underlying legal theories posed complex and novel issues that had not been fully tested prior to the filing of the Complaint ……………………………………………………………….. 14

        5. Plaintiff's counsel as a small firm faced even greater risks in litigating large class actions with no guarantee of payment ………. 16

D.   The Requested Litigation Costs and Settlement Administrator's Expenses Should Be Awarded ………………………………………… 17

E.   Plaintiff Perry's Requested Service Award Should Be Approved ……..... 18

CONCLUSION …………………………………………………………… 21

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Adoma v. University of Phoenix, Inc.,*
913 F. Supp. 2d 964 (E.D. Cal. 2012) ……………………………………………….. 15

*Barbosa v. Cargill Meat Solutions Corp.,*
297 F.R.D. 431 (E.D. Cal. 2013) ……………………………………………… 13

*Bautista v. Harvest Management Sub LLC,*
No. CV 12-100004 FMO (CWx), 2014 WL 12579822 (C.D. Cal. July 14,
2014) ……………………………………………………………………….. 10, 14

*Boyd v. Bank of America Corp.,*
No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804 (C.D. Cal. Nov. 18,
2014) …………………………………………………………… 10, 16, 19, 20, 21

*Chalmers v. City of Los Angeles,*
676 F. Supp. 1515 (C.D. Cal. 1987) …………………………………………… 16

*Collins v. Cargill Meat Solutions Corp.,*
No. 1:10-cv-00500 OWW MJS, 2011 WL 2580321 (E.D. Cal. June 28, 2011) ………. 13

*Dilts v. Penske Logistics, LLC,*
769 F.3d 637 (9th Cir. 2014) ……………………………………………….... 14

*Hicks v. Toys "R" US-Delaware, Inc.,*
Nos. CV13-1302 DSF (JCGx), EDCV 13-01159 DSF (JCGx), 2014 WL 4670896
(C.D. Cal. Sept. 2, 2014) ……………………………………………………….. 10

*In re Abbot Laboratories Securities Litigation,*
No. 92-C-3869 MEA, 1995 WL 792083 (N.D. Ill. July 3, 1995) ……………………… 16

*Mangold v. Cal. Public Util. Comm'n,*
67 F.3d 1470 (1995) ………………………………………………………….... 9

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992) ………………………………………………………….... 2

*Officers for Justice v. Civil Serv. Com'n,*
688 F.2d 615 (9th Cir. 1982) …………………………………………………… 8

*Pagel v. Dairy Farmers of America, Inc.,*
No. 2:13-cv-02382-SVW-VBK, 2014 WL 12634522 (C.D. Cal. Sept. 17, 2014) … 10, 20

*Rodriguez v. Disner,*
688 F.3d 645 (9th Cir. 2012) ……………………………………………………. 9

*Romero v. Producers Dairy Foods, Inc.,*
No. 1:05cv0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ………………… 16

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043 (9th Cir. 2002) …………………………………………………... 9

*Wren v. RGIS Inventory Specialists,*
No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) …………………... 12

**State Cases**

*Augustus v. ABM Security Services, Inc.,*
2 Cal. 5th 257 (2016) …………………………………………………………... 14

*Brinker Restaurant Corp. v. Superior Court,*
53 Cal.4th 1004 (2012) ……………………………………………………… 15

**Statutes and Regulations**

45 U.S.C.
§151 …………………………………………………………………………… 2

49 U.S.C.
§ 41713 ………………………………………………………………………... 2

Fed. R. Civ. P.
23 ……………………………………………………………………….. passim

**Other Authorities**

Rubenstein et al., *Newberg on Class Actions* § 3:27 (5th ed. 2017 rev.) …………… 4, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

By this unopposed motion, Plaintiff Christopher Perry seeks final approval of a substantial settlement of all claims between the parties.  Previously, the parties filed a joint motion for preliminary approval.[1]  Plaintiff's counsel also filed with the joint motion for preliminary approval, his time records[2] and a supplemental points and authorities[3] that addressed why an attorney's fee award of 30% was justified in light of Ninth Circuit authority delineating a "benchmark" award of 25%.  After receiving the parties' briefing, the settlement was preliminarily approved by the Court on July 13, 2017.

Now, after the Class has been given notice of the settlement terms, and has had the opportunity to make claims and objections or request exclusion, and none have heretofore objected or requested exclusion, Plaintiff seeks this honorable Court's final approval of the settlement reached.  Class counsel also requests $248,400 (30% of the gross settlement fund) and $5,086.68 in costs.  Class representative Christopher Perry requests $10,000 as an incentive award.

### II.   BACKGROUND

On November 30, 2012, Plaintiff filed a complaint in the Superior Court of the State of California, County of Los Angeles, initiating the Action.  Dkt. 1.  Plaintiff asserted five causes of action against Defendants.[4]  On January 4, 2013, Defendant removed the case to the Central District of California, asserting federal subject matter

---

[1] Dkt. 79-main.

[2] Dkt. 79-4.

[3] Dkt. 79-1.

[4] The causes of action brought by the Plaintiff included: (1) Failure to Provide Required Meal Periods and Rest Periods; (2) Failure to Pay Minimum Wage and Overtime Wages under the California Labor Code; (3) Failure to Pay All Wages Due to Discharged and Quitting Employees; (4) Unfair and Unlawful Business Practices; and (5) Failure to Pay Minimum Wage and Overtime Wages under the Fair Labor Standards Act. Dkt. 1, ¶ 4.

1  jurisdiction under the Class Action Fairness Act ("CAFA")

2       In March 2013, Defendant moved for partial judgment on the pleadings, asserting

3  that Plaintiff's state law claims were preempted by the Airline Deregulation Act

4  ("ADA"), 49 U.S.C. § 41713(b)(1), and that the Railway Labor Act ("RLA"), 45 U.S.C.

5  §§ 151 *et seq.*, precluded recovery of overtime.  Dkt. 16.  The Court denied Defendant's

6  motion, finding that Defendant's arguments turned on factual issues that could not be

7  resolved at that early stage of litigation.  Dkt. 25, Order at 6-9.

8       The parties conducted and responded to extensive written discovery, exchanging

9  among other documents, relevant wage and hour policy documents, collective bargaining

10  agreements, class timekeeping and payroll data, and an exemplar of the time reporting

11  forms that Defendant used for employees to report when they missed a meal period.  *Id.* ¶

12  10.  Defendant also produced information and documents that purport to support their

13  preemption defense.

14       In October 2014, Defendant moved for summary judgment, relying on largely

15  identical grounds raised in its motion for partial judgment on the pleadings.  *See* Dkt. 37–

16  43.  The Court denied in part Defendant's motion for summary judgment, finding that

17  Defendant failed to produce sufficient evidence to demonstrate that compliance with

18  California's meal and rest break laws impacted air carriers in a manner that is not "too

19  tenuous, remote, or peripheral"[5] to trigger preemption.  Dkt. 64.  However, the Court

20  granted Defendant's motion for summary judgment with respect to the alleged failure to

21  pay timely wages due at termination and the related request for waiting time penalties.

22  *See* Dkt. 64.

23       The parties engaged in settlement discussions after the Court denied Defendant's

24  motion for summary judgment.  Class counsel analyzed a sample of timekeeping and

25  payroll records in order to evaluate violation rates and damages.  Appendix of Evidence

26  ("Dkt. 82") at 004, ¶ 12.  Finally, the parties participated in a private mediation session

27

28       [5] *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 390 (1992).

with the Hon. Michelle R. Rosenblatt (Ret.) of ADR Services, Inc.  Based on the mediation and Judge Rosenblatt's mediator's proposal, and before Plaintiff filed a motion for class certification, the parties reached a class settlement.  The material terms of the agreement are as follows:

The proposed settlement calls for a *nonreversionary* gross settlement amount of $828,000.  Dkt. 82 at 018, Settlement § II.L.  The net settlement amount is the gross settlement amount minus the following (§ II.N): up to $248,400 (30% of the gross settlement amount) for attorney's fees (§ IX.A.1); attorney costs in the amount of $5,086.68 (§ IX.A.1); settlement administration costs not to exceed $12,750 (§ IX.A.2)[6]; and up to $10,000 for an enhancement award to the sole class representative (§ IX.A.3).

In June of 2017, Plaintiff moved for preliminary approval of the settlement reached in this case.  Class counsel filed briefing that explained that 30% in attorney's fees was justified in light of: Plaintiff's lodestar; the unique aspects of the results achieved in this case; the complex and untested theories surrounding Airline Deregulation Act preemption and an employer's legal obligation to provide duty-free rest periods; and Plaintiff's status as a sole practitioner which compounded the risk in litigating the case.  Dkt. 79-1, Mem. of P. & A. in Supp. of Attorney's Fees.  After receiving the parties' joint motion for preliminary approval and Plaintiff's brief regarding attorney's fees, the Court granted preliminary approval of the settlement.  Dkt 80.

The Settlement Administrator mailed Notice Packets to class members.  Dkt. 82 at 114, Decl. of Kelsey Skey ("CPT Decl.") ¶ 7.  No objections or opt outs have been received.  *Id.* at 115, ¶¶ 12, 13.

In addition to final approval of the settlement, class counsel respectfully requests attorney's fees in the amount of $248,400 (30% of the Maximum Settlement Amount), as well as $5,086.68 in costs.

---

[6] The settlement administrator will charge the rate of $12,000 instead of the $12,750 settlement cap.  Dkt. 82 at 116, CPT Decl. ¶ 18.

## III.  **ARGUMENT**

### A.  **The Rule 23 Class Action Requirements Are Met.**

In order for the Court to approve the Settlement Agreement, the Court must also certify this action as a class action under Federal Rules of Civil Procedure, Rule 23.  The putative class must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.  In addition, the putative class must satisfy the predominance requirement of Rule 23(b)(3) for each of the alleged claims.

The parties submitted significant briefing with their joint motion for preliminary approval to assist the Court in resolving the legal issues presented by the proposed settlement.  *See, e.g.,* Dkt. 79-main at 4–18 (discussing Rule 23 requirements).  Rather than repeat those legal submissions herein, some of Plaintiff's arguments are summarized below:

### 1.  Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  The class is sufficiently numerous, as it contains 491 members.  Dkt. 82 at 115, ¶ 15.

### 2.  Commonality

The class involves sufficiently common questions of law and fact to satisfy both Rule 23(a)(2) and Rule (b)(3).  Rule 23(b)(3) is more stringent, which requires both that common issues are "predominant" and that the class action approach is "superior" to other approaches.  By satisfying Rule 23(b)(3), the putative class necessarily satisfies the Rule 23(a)(2) commonality prerequisite.  *See* Rubenstein et al., *Newberg on Class Actions* § 3:27 (5th ed. 2017 rev.) ("If the [Rule 23](b)(3) [predominance] requirement is met, the [Rule 23](a)(2) prerequisite is automatically satisfied.")

As discussed thoroughly in the parties' joint motion for preliminary approval, the class representative's claims share an identical factual basis as the class members' potential claims released by the Settlement Agreement.  Dkt. 79-main, Mot. for Prelim. Approval at 4–18.  With respect to the meal period claim, the class involves common

issues of fact and law issues because all of the class members were subjected to the same written meal period policy that conditioned the timing of such breaks on "operating requirements" and "business conditions." *Id.* at 8–9. Plaintiff's evidence that supervisors scheduled meal periods specifically *between* flights and past the five-hour mark to meet loading/unloading time limits is a matter of common proof. *Id.* at 9–10. Finally, Plaintiff argues that liability can also be proven on a class-wide basis through Defendant's time records containing the time entries for each employee. If class members were not paid a meal break premium where the time records show a first meal period commencing after the end of the fifth hour of work on a workday of more than six hours, there is no question that Defendant is liable.

With respect to the rest period claim, Plaintiff argues that the predominance requirement is met based on common evidence that Defendant (1) did not have a written rest period policy; (2) did not provide rest periods; (3) required class members to perform work and remain ready to work — before, during, and after the aircraft was parked on the ramp; and (4) did not summon the shuttle to take class members away from the ramp for rest periods. *Id.* at 14–17. In short, common issues of fact and law are predominant in this action.

In addition, the Rule 23(b)(3) "superiority" requirement is satisfied because each individual class member's wage-related claim resulted in an average recovery $1,125.28. Dkt. 82 at 115, CPT Decl. ¶ 17.

Accordingly, the commonality requirements of both Rule 23(a)(2) and Rule 23(b)(3) have been satisfied.

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Plaintiff argues that his claims are typical of the claims of all cargo ramp agents because they all performed similar work and were subjected to the same meal and rest period practices and policies. His claims are typical of the class as a whole because they all arise from the same factual bases and are based

on the same legal theory.  Accordingly, the class satisfies the typicality requirement.

### 4.  Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Plaintiff has no conflicts of interest with class members, as he shares the members' likely desire to be compensated in full.  In addition, it is notable that no class members have objected to or opted out of the settlement.  Dkt. 82 at 115, CPT Decl. ¶¶ 12, 14.  These facts give rise to a reasonable inference that the class representative prosecuted this action in a manner that was acceptable to the class members and was consistent with the class members' interests.  Accordingly, the class representative has satisfied the adequacy requirement.

As for the adequacy of counsel, class counsel vigorously prosecuted this action on behalf of the class members[7] and is thoroughly experienced in this area of law[8].  Accordingly, the class representative and class counsel satisfy the "adequacy" requirement of Rule 23(a)(4).

### B.    The Settlement Is Fundamentally Fair, Adequate, and Reasonable.

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  FED. R. CIV. P. 23(e).  The Court may issue final approval of a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).

Class counsel calculates Defendant's exposure to be $3,035,960.83[9], while Defendant denies liability.  Class counsel assesses the probability of prevailing on a motion for class certification to be in the 50-70% range, and the probability of prevailing at trial to be in the 50-70% range, resulting in a settlement value of $758,990.21 to $1,487,620.81.  Dkt. 82 at 007, ¶ 16.  ($3,035,960.83 × 50% × 50% = $758,990.21;

---

[7] *See* Dkt. 82 at 010–011, ¶¶ 28–30.

[8] *See* Dkt. 82 at 002–003, ¶¶ 4–6.

[9] Dkt. 82 at 004, ¶ 15.

$3,035,960.83 \times 70\% \times 70\% = \$1,487,620.81$.)  Since \$828,000 falls within this range, it is a fair compromise considering the potential risk of recovering less than this.

There is substance to each side's contentions in this case.  Plaintiff's legal theories have some traction, for the case survived a motion for partial judgment on the pleadings and a motion for summary judgment.  Both parties have identified authority in support of their positions.  *See* Dkt. 79-main, Joint Mot. for Prelim. Approval at 4–18 (discussing Rule 23 requirements) and at 20–21 (discussing parties' respective positions regarding liability).   For the reasons stated in the parties' joint motion for preliminary approval, the parties agree that the settlement is fundamentally fair, adequate, and reasonable.  Those arguments are summarized herein:

In particular, the strength of Plaintiff's case supports settlement.  Plaintiff argues that supervisors scheduled meal periods *between* flights if there was time for cargo ramp agents to stop working to take a 30-minute meal break.  If a meal period was not recorded before the end of the fifth hour of work, it was because Defendant failed to provide it on time, as supervisors scheduled meal periods specifically between flights to meet loading/unloading time limits.  However, Plaintiff would have faced difficulty in certifying his class, as Defendant argues that the evidence will establish that many class members received proper breaks, and that when they did not, it was due to a variety of reasons, not all of them unlawful.  Even if Plaintiff succeeded in certifying his class, he would have faced difficulty in proving that Defendants' violations were knowing and intentional.

Second, absent a settlement the parties would have had to engage in significant briefing on class certification, liability and damages, as well as trial.  The parties vigorously contested the issue of illegality.  For example, Defendant contends that it utilized a time reporting form for employees to record when they missed a meal period and that it paid a meal premium accordingly.  Plaintiff argues that regardless of whether employees turned in a form, Defendant's own timekeeping records already tracked instances of missed meal periods because the meal period violations were uniformly

caused by the supervisors' failure to schedule meal periods in accordance with law. According to Plaintiff, if an employee did not punch out for a meal period, there is no question that Defendant is liable even if that employee did not submit a form to be paid a meal premium.  These brief examples of the parties' theories illustrate that proving liability and damages is not a legal certainty.

Third, the settlement amount falls within the percentage approved in other employment-related class actions and there have been no objections to the recovery by any class members.  *See, e.g., Officers for Justice v. Civil Serv. Com'n,* 688 F.2d 615, 628 (9th Cir. 1982) (it is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not render the settlement inadequate or unfair).  Here, the proposed settlement of $828,000 will recover approximately 27% of the total damages and interest exposure, which class counsel calculated to be $3,035,960.83.[10]  Dkt. 82 at 004, ¶ 15.

Fourth, the settlement was reached after significant discovery undertaken by both sides.  Plaintiff conducted significant investigation of the facts and law regarding Defendant's preemption arguments, propounded extensive written discovery, conducted review of voluminous timekeeping and payroll records and relevant wage and hour policy documents, and also responded to multiple sets of discovery.  Dkt. 82 at 003–004, ¶¶ 8–11.

Fifth, class counsel has broad experience litigating wage-and-hour class actions and supports the settlement as reasonable and fair.  *Id.* at 002-003, ¶¶ 4–6.

Sixth, the class has responded favorably to the proposed settlement with no objections or opt outs having been filed.

Consequently, the Court should grant the motion for final approval of class action settlement.

---

[10] Defendant disputes these calculations.

**C.    The Requested Attorney's Fees Should Receive Final Approval.**

In connection with the parties' joint motion for preliminary approval, Plaintiff's counsel provided his time records (Dkt. 79-4) and a separate brief (Dkt. 79-1) explaining why a fee award of 30% is justified in this matter.  After receiving the parties' briefing, the settlement was preliminarily approved by the Court on July 13, 2017.

In short, the 25% benchmark does not apply here, because California state law, not Ninth Circuit law, applies in determining the amount of attorney's fees requested in a diversity case.  Even if the Court were to analyze Plaintiff's fee request under Ninth Circuit law, there is ample support for adjusting the 25% presumptive benchmark upward to take into account: Plaintiff's lodestar; the results achieved that include average payments of $1,125.28 to each class member (which closely approximates the class members' meal break premiums and overtime pay); the complex and untested theories surrounding Airline Deregulation Act preemption and an employer's legal obligation to provide duty-free rest periods; and Plaintiff's counsel's status as a sole practitioner which compounded the risk in litigating the case.

      1.    <u>The 25% benchmark does not apply here because California state law, not Ninth Circuit law, applies in a diversity case.</u>

Class counsel is entitled to reasonable attorney's fees under California state law. Because this Court exercised diversity jurisdiction over this case under CAFA, California substantive law applies, including to the calculation of attorney's fees.  *Mangold v. Cal. Public Util. Comm'n,* 67 F.3d 1470, 1478 (1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); *Rodriguez v. Disner,* 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees.").  Moreover, California law, which governs the class claims, also governs the award of attorney's fees out of a common fund.  *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim [asserted in the class action], it also

governs the award of fees."); *id.* at 1051 (district court did not abuse its discretion in approving 28% attorney's fees award, which resulted in multiplier of 3.65, for class counsel who had represented workers in action for benefits under company's employee stock purchase plan).  Lastly, thirty percent is commensurate with traditional contingency recovery in wage and hour class actions.  *See, e.g., Pagel v. Dairy Farmers of America, Inc.,* No. 2:13-cv-02382-SVW-VBK, 2014 WL 12634522, at *1 (C.D. Cal. Sept. 17, 2014) (awarding 33% of the settlement amount)[11]; *Boyd v. Bank of America Corp.,* No. SACV 13-0561-DOC (JPRx), 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (awarding 33%); *Hicks v. Toys "R" US-Delaware, Inc.,* Nos. CV13-1302 DSF (JCGx), EDCV 13-01159 DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) (awarding 30%); *Bautista v. Harvest Management Sub LLC,* No. CV 12-100004 FMO (CWx), 2014 WL 12579822, at *13 (C.D. Cal. July 14, 2014) (awarding 30%). Plaintiff's counsel has also settled a wage and hour class action where a 30% attorney's fee award was granted by Judge Otero in 2015.  *See* Dkt. 82 at 009, Ricasa Decl. ¶ 21; Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, *Beristain-Vargas v. Tight Quarters, Inc.,* No. 2:13-cv-05600-SJO-JCG, (C.D. Cal. Jan. 5, 2015) (Dkt. 61) ($200,000 class action settlement with $60,000 in attorney's fees and $5,908.40 in costs).

    Even so, the goal in awarding attorneys' fees is reasonableness.  *Bautista,* 2014 WL 12579822, at *11.  As discussed below, many of the factors identified by the Ninth Circuit for the upward adjustment of a fee from the 25% benchmark exist in this case.

    2.    Plaintiff's fee request represents a 20% reduction of the lodestar.

    A fee award of $248,400, or 30% of the Settlement Amount, is reasonable, since class counsel has invested $308,900 in lodestar time.  Plaintiff's counsel's detailed time

---

    [11] In *Pagel*, the parties' court filing and the Court's approval order shows a $315,000 class action settlement and $103,950 attorney's fees award.  Joint Notice of Mot. & Mot. for Prelim. Approval of Class Action Settlement, *Pagel v. Dairy Farmers of America, Inc.,* No. 2:13-cv-02382-SVW-VBK, 2014 WL 11742127 (C.D. Cal. Mar. 24, 2014) (Dkt. 48).

records (Dkt. 82 at 046–077) show that 617.8 hours were spent on the litigation.  The hours were necessary for the following reasons:

First, the amount of time class counsel billed is in large part a result of Defendant's aggressive defense strategy.  From its initial stages, Defendant threatened Rule 11 sanctions and malicious prosecution, asserting that the factual allegations in the complaint lacked evidentiary support. [12]  Then Defendant moved for partial judgment on the pleadings, asserting that Plaintiff's state law claims were preempted by the ADA and that the RLA precluded recovery of overtime.  Dkt. 16.  Defendant also moved for summary judgment, relying on largely identical grounds raised in its motion for partial judgment on the pleadings.  Dkt. 37–43.  Defendant mounted a particularly aggressive defense and refused to engage in any reasonable settlement discussions until the Court denied its motion for summary judgment on August 4, 2016.  Defendant's aggressive defense greatly increased the amount of time and resources counsel had to devote to litigating issues surrounding Defendant's preemption defense.  The hours billed are justified by the demands of opposing Defendant's motion for partial judgment on the pleadings (Dkts. 18–19) and Defendant's motion for summary judgment (Dkts. 49–52, 59).  The amount of time billed was also fair in light of the challenge of presenting proof of Defendant's systemic violations of state meal and rest break laws.  Counsel had to investigate Defendant's policies and training materials, as well as how Defendant applied

---

[12] Defendant's counsel served Plaintiff's counsel with a letter threatening Rule 11 sanctions and malicious prosecution.  Dkt. 82 at 010, ¶ 28.  Specifically, Defendant pointed to a payroll report showing that Plaintiff and other cargo ramp agents at LAX were paid missed meal premiums.  Defendant argued that the data was completely inconsistent with the allegations of the complaint and created a very strong argument against class certification.  Plaintiff disputed the extent to which Defendant provided time reporting forms to report a missed meal period.  Moreover, Defendant's cargo ramp agents did not have the discretion to schedule their own meal periods, and instead supervisors scheduled their meal periods between flights to meet loading/unloading time limits.  Simply, if an employee did not punch out for a meal period, there was no question that Defendant was liable even if that employee did not submit a time reporting form to be paid a meal premium.

those policies and materials at LAX to deprive cargo ramp agents of their wages.  Thus, the hours billed are fully justified by the tremendous burdens of over four years of intensely contested litigation.

Second, each of these major subject areas — e.g., preemption issues and Defendant's meal and rest period practices — required its own set of written discovery. The amount of discovery collected and exchanged was substantial.  Plaintiff's counsel propounded extensive written discovery (73 interrogatories, 137 requests for admissions, and 157 requests for production), conducted review of voluminous documentation and complex key legal facets in the case (e.g., preemption by the ADA and the RLA), and responded to multiple sets of discovery (25 interrogatories, 136 requests for admissions, and 137 requests for production).[13]

Third, class counsel not only had to respond to Defendant's motion for partial judgment on the pleadings and motion for summary judgment, but given its resistance to settlement, had to proceed with preparing a motion for class certification.[14]  Thus, putting together evidence to support class certification, and to oppose Defendant's summary judgment motion required substantial time from class counsel.

Plaintiff's counsel's standard hourly rate for class action litigation is $500 per hour. Plaintiff's counsel has 14 years of experience handling class action litigation.  The hourly rate sought is reasonable and in line with prevailing rates for counsel with similar years of experience.  The rate of $500 per hour has been awarded to Ricasa by the Los Angeles Superior Court in wage and hour class actions.  *See, e.g.,* Dkt. 82 at 087, Ricasa Decl., Ex. 3 (awarding 2016 rate of $500 for Ricasa) and 100–101, Ricasa Decl. Exs. 4, 5 (each awarding 2015 rate of $500 for Ricasa).  In addition, district courts in California have found similar hourly rates reasonable in wage and hour class action litigation for attorneys with the same or fewer years of experience than Ricasa.  *Compare with Wren v.*

---

[13] *See* Dkt. 82 at 003, Ricasa Decl. ¶ 8.

[14] The settlement was reached before the filing of Plaintiff's motion for class certification.

*RGIS Inventory Specialists,* No. C-06-05778 JCS, 2011 WL 1230826, at *18-19 (N.D. Cal. Apr. 1, 2011) (approving 2011 billing rate of $625 for Josh Konecky with 14 years of experience); *Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 452-53 (E.D. Cal. 2013) (approving 2013 billing rate of $560 for Alexander R. Wheeler with eight years of experience); *Collins v. Cargill Meat Solutions Corp.,* No. 1:10-cv-00500 OWW MJS, 2011 WL 2580321, at *11 (E.D. Cal. June 28, 2011) (approving 2011 billing rate of $520 for Anthony J. Orshansky with 12 years of experience).

The lodestar calculation for class counsel is $308,900.  *See* Dkt. 82 at 077, billing records.  These attorney hours have been for pre litigation investigation, discovery, law and motion practice, mediation, damages analysis, and settlement work.  The requested fee of $248,400 represents a 0.8 of the lodestar of $308,900.  Thus, the substantial time devoted to the case supports the requested fee.

> 3.   The net recovery for each class member is very generous on account of the close proximity of the class members' recovery to what they would have received had they received meal break premiums and overtime compensation while they were working.

The benefit to each class member demonstrates that a fee award of 30% of the fund is reasonable.  If the Court grants the class counsel's request for $248,400 in fees, after other costs are deducted from the settlement amount of $828,000, the class members would receive $551,513.32.  Dkt. 82 at 115, CPT Decl. ¶ 16.  As 491 class members are potentially entitled to a disbursement, the average disbursement per class member would be $1,125.28, which compensates them for 97% of their meal break premiums and overtime pay that they would have received while working.  Dkt. 82 at 008, Ricasa Decl. ¶ 17.  This disbursement is substantial, especially considering the types of wage and hour claims in this case.  *Compare with Barbosa,* 297 F.R.D. at 447 (awarding 33% of common fund in attorney's fees was reasonable; average class member payment of $601.91 was good because "meal and rest period[] . . . claims would not generally produce substantial individual damage awards); *Collins,* 2011 WL 2580321, at *10-*11

1    (awarding 31.7% in attorney's fees was reasonable; average class member payment of

2    $898.20 ; "[s]uch [wage and hour] claims would not ordinarily produce large recoveries

3    per claimant"); *Bautista,* 2014 WL 12579822, at *12 (awarding 30% in attorney's fees

4    was reasonable, citing "average payment for members . . . of $543.99, which is consistent

5    with other wage-and-hour class action").

6            In sum, the results obtained by class counsel justify the fee request.

7                    4.    Plaintiff's underlying legal theories posed complex and novel issues

8                          that had not been fully tested prior to the filing of the Complaint.

9            A key factor in justifying the fee award is the uncertain state of the law which

10   posed a huge risk to Plaintiff's counsel throughout this litigation.  Indeed, during the

11   course of the litigation, new case law emerged from the Ninth Circuit addressing the

12   preemption issue.  Whether the ADA preempted Plaintiff's state law claims and whether

13   the RLA preempted his federal overtime claim were open questions in this lawsuit.   On

14   July 9, 2014 (19 months after Plaintiff initiated his lawsuit), the Ninth Circuit in *Dilts v.*

15   *Penske Logistics, LLC,* 769 F.3d 637 (9th Cir. 2014) held that California's meal and rest

16   break laws were not the sorts of laws that Congress intended to preempt.  *Dilts,* 769 F.3d

17   at 647.  The complex and novel preemption issues raised by Defendant's preemption

18   defense made the work in this case especially demanding.

19           Also, during the course of the litigation, new case law emerged from the California

20   Supreme Court addressing the rest period issue.  Undertaking this case was risky because

21   at the time the action was filed, Plaintiff's underlying legal theories regarding his rest

22   period claims had not been fully tested.  Under Plaintiff's theory, Defendant required

23   cargo ramp agents to perform work *and remain ready to work* — before, during, and after

24   the aircraft was parked on the ramp.  The case presented the following issue: Were cargo

25   ramp agents who remained ready to work on the tarmac provided rest periods during

26   purported downtime?  On December 22, 2016 (over four years after Plaintiff initiated his

27   lawsuit), the California Supreme Court issued its decision in *Augustus v. ABM Security*

28   *Services, Inc.* and held that, during required rest breaks, "employers must relieve their

employees of all duties and relinquish any control over how employees spend their break time." 2 Cal. 5th 257, 260 (2016).  The Court interpreted the California Labor Code and its decision in *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004 (2012) — which addressed meal break requirements — and determined that meal breaks and rest breaks should receive parallel treatment by employers.  That is, an off-duty rest period is an uninterrupted ten–minute period during which the employee is relieved of all duty or employer control.

Prior to having the California Supreme Court's important clarification of the employers' obligation to provide work-free rest periods, this case involved novel legal issues and unprecedented factual scenarios for which there was no "playbook" to fall back on — circumstances which support counsel's fee request.  Plaintiff argued that cargo ramp agents were not given an uninterrupted ten minutes during which they were relieved of all duties and employer control over how they spent their time, either before, during, or after the aircraft was parked on the ramp.  Cargo ramp agents remained ready to perform work if requested, capable of being summoned to action, and responsive to supervisors and others.  Defendant argued that the cargo ramp agents must have taken rest breaks because there was "downtime" on the ramp, and cargo ramp agents were not prevented from taking rest breaks.  The circumstances of this case justify the fee award to compensate for the risk that Plaintiff's attorney would be paid almost nothing for several hundred hours of work in prosecuting this lawsuit.  "It is important that labor and employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts."  *See Adoma v. University of Phoenix, Inc.,* 913 F. Supp. 2d 964, 983 (E.D. Cal. 2012) (awarding 29% of the $4,000,000 common fund).  Here, litigating this wage and hour class action took 617.8 attorney hours, without any guarantee of payment.  In the beginning of this case, no one could predict whether this case could be tried in a collective format or whether there would have to be hundreds of individual determinations that would deprive the case of

1  any real economic value.  In light of these considerations, the risk counsel assumed was

2  enormous.

3      In short, while wide-scale discovery, certification motions, and dispositive motions

4  are routine in class actions, the complexity and novelty of the legal and factual issues

5  raised in this matter made each of these components especially demanding.  Thus, this

6  factor supports an increase from the standard benchmark.

7      5.  <u>Plaintiff's counsel as a small firm faced even greater risks in litigating</u>

8         <u>large class actions with no guarantee of payment.</u>

9      Attorney Ricasa was a sole practitioner throughout almost the entirety of the

10 litigation.[15]  Solo and small firms face even greater risks in litigating large class actions

11 with no guarantee of payment because the risk of nonpayment may not be offset so easily

12 by the presence of paying work.  *See, e.g., Boyd,* 2014 WL 6473804, at *10 (small firms

13 "face even greater risks in litigating large class actions with no guarantee of payment");

14 *id.* at *12 (awarding one-third of settlement in wage and hour class action); *Romero v.*

15 *Producers Dairy Foods, Inc.,* No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal.

16 Nov. 14, 2007) (recognizing that "because of its size, [class counsels' small firm] had to

17 devote substantial resources to this class action" and awarding one-third of settlement in

18 wage and hour class action); *In re Abbot Laboratories Securities Litigation,* No. 92-C-

19 3869 MEA, 1995 WL 792083, at *14 (N.D. Ill. July 3, 1995) (recognizing "a challenge to

20 [class counsel's] small firms not unlike David facing Goliath" and awarding $10 million

21 in attorney's fees out of $32.6 million settlement fund); *Chalmers v. City of Los Angeles,*

22 676 F. Supp. 1515, 1525 (C.D. Cal. 1987) ("Plaintiff's status as sole practitioner

23 compounded the risk, because the case has precluded him from undertaking other paying

24 employment.").

25     Here, the settlement obtained by class counsel was achieved after he alone

26 conducted the investigation and filed the case against an opponent represented by highly

27

28 _____

   [15] One other attorney was at the firm for six months.  Only attorney Ricasa worked on this case. Dkt. 82 at 009, ¶ 24.

skilled counsel from three large law firms: Littler Mendelson; Freeman, Freeman & Smiley, LLP; and Gladstone Michel Weisberg Willner & Sloane.[16]   Attorney Ricasa performed all the work on behalf of Plaintiff with the risk of being paid nothing for several hundred hours of work in prosecuting this lawsuit.   As such, the risks exceeded those ordinarily faced by counsel at larger firms who take cases on contingency.   Taking into account the small size of the plaintiff law firm involved and the formidable, nearly limitless resources of the opposition's prominent law firms, an increase from the 25% benchmark is warranted.

For all these reasons, Plaintiff requests final approval of the attorney's fees that were preliminarily approved in the amount of $248,400.   As of the date of filing this motion, there have been no objections to the settlement (including the attorney's fees requested) or opt-outs.   Dkt. 82 at 115, CPT Decl. ¶¶ 12, 14.   As such, final approval is appropriate.

### D.   The Requested Litigation Costs and Settlement Administrator's Expenses Should Be Awarded.

Class counsel has incurred $5,086.68 in costs, which includes filing fees, Westlaw charges, messenger fees, mileage, parking, photocopies, and postage.   Dkt. 82 at 104–106. This relatively low amount of costs is eminently reasonable.   Further, as with the fee request, the maximum cost request was expressly disclosed to class members[17] and deemed unobjectionable.

The settlement administrator will charge the rate of $12,000 instead of the $12,750 settlement cap.   Dkt. 82 at 116, CPT Decl. ¶ 18.   Based on the settlement administrator's various duties under the Settlement Agreement, the cost request is reasonable.

---

[16] Defense counsel, attorney Tracy, moved from Gladstone Michel Weisberg Willner & Sloane to Freeman, Freeman & Smiley, LLP.   *See* Dkt. 63.

[17] *See* Dkt. 82 at 119, Notice of Class Action Settlement, Question 5.

### E.   Plaintiff Perry's Requested Service Award Should Be Approved.

The class representative and named Plaintiff, Christopher Perry, seeks $10,000 as a class representative service payment.  It is well-established that a court may grant an incentive award to a class representative, both as an inducement to participate in the suit and as compensation for time spent in litigation activities, including depositions.  *See, e.g., Newberg on Class Actions* § 17:6 (5th ed. 2017 rev.).

In connection with preliminary approval, Mr. Perry had submitted a declaration attesting to why he should be entitled to an enhancement award in the proposed amount.  A copy of his declaration is attached to the Appendix of Evidence filed herewith at 108.  The work that Mr. Perry contributed to this litigation should be recognized, including initially contacting class counsel regarding potential claims; explaining Defendant's policies and procedures, job duties and responsibilities; reviewing documents; and ultimately giving his approval to the proposed settlement.  The class representative spent more than 80 hours (Dkt. 82 at 110, Perry Decl. ¶ 8) in consultation with class counsel, including time spent on initial and follow up investigation of his duties and responsibilities of his position as well as that of other putative class members, reviewing his work files, answering voluminous discovery that Defendant propounded (including 25 interrogatories, 92 requests for admissions, and 71 requests for production[18]), working the case toward a potential class certification motion and mediation, assisting class counsel in evaluating information received from Defendant, and staying in contact with class counsel.  Clearly, Mr. Perry participated extensively in this litigation.

Also, Mr. Perry was involved in the settlement process by attending a full-day mediation, advising class counsel on circumstances relevant to settlement considerations, and understanding and giving his approval to the proposed settlement.  His constant involvement and participation resulted in a valuable benefit to Defendant's employees and therefore, the requested incentive payment should be awarded for his commitment

---

[18] *See* Dkt. 012, Ricasa Decl. ¶ 33.

1    and dedication to the litigation.

2         In determining a reasonable incentive payment, the substantial benefits flowing to

3    class members as a result of the Settlement should be taken into account.  The gross

4    settlement amount is $828,000 and, after deducting settlement expenses, class members

5    will receive on average $1,125.28.  Dkt. 82 at 115, CPT Decl. ¶ 17.  Obtaining a

6    settlement benefit of $1,125.28 on average for 491 class members is an excellent result.

7    Mr. Perry is entitled to an award that greatly exceeds average class member recovery.

8    Granting the class representative's request for this incentive payment will have a

9    negligible impact on the amount of settlement monies recovered by other class members.

10   In addition, when these papers were prepared and filed with the Court, there was not one

11   objection to the requested incentive payment and Defendants have agreed not to oppose

12   the requested amount.

13        Moreover, Plaintiff submits that his request for an enhancement award of $10,000

14   is reasonable in light of the amount of his individual settlement share.  According to the

15   CPT Declaration, Mr. Perry's individual settlement share will be **$2,500.40** independent

16   of any enhancement award that is awarded.  Dkt. 82 at 115, CPT Decl. ¶ 17.  A named

17   class representative may be awarded an enhancement award, considering criteria that

18   include the personal benefit *or lack thereof* enjoyed by the class representative as result

19   of the litigation.  *See, e.g., Boyd*, 2014 WL 6473804, at *7 (recognizing that "due to his

20   workweeks, without the [$15,000] enhancement, [plaintiff] would recover less than many

21   other Class Members").  In exchange for his participation in the litigation, Mr. Perry will

22   not receive a great personal benefit, since his individual settlement share only amounts to

23   $2,500.40.  In comparison, the highest claim to be paid is estimated at **$7,591.33** and **81**

24   **class members** stand to receive a settlement share in an amount that exceeds that of the

25   Plaintiff.[19]  Dkt. 82 at 115, CPT Decl. ¶ 17.  The requested enhancement award is just and

26   reasonable under these circumstances where his settlement share is relatively small after

27
28   _____
     [19] Each class member's share will be proportionally based on his/her number of shifts
     worked during the class period.  Settlement § V.

1   having extensively participated in the litigation.

2          Further, the risks that Mr. Perry took in filing this action should be recognized, as

3   he was potentially liable for costs and attorney's fees if the case was not successful.  Case

4   law holds that a losing party is liable for the prevailing party's costs.  Also, Defendant

5   threatened Rule 11 sanctions and malicious prosecution, asserting that the factual

6   allegations in the complaint lacked evidentiary support.  Dkt. 82 at 010, Ricasa Decl. ¶

7   28.  Few individuals are willing to take these risks, and it is clear that the class

8   representative championed a cause on behalf of others with potentially huge monetary

9   risks.  He also risked the possibility of being perceived as a non-loyal employee, which

10  could adversely affect his employment in the future.  Courts have recognized that

11  assuming potentially career-damaging risks for the vindication of the rights of fellow

12  employees is a factor justifying a substantial incentive payment. *See, e.g., Boyd,* 2014

13  WL 6473804, at *7 ("[$15,000] incentive award is particularly deserved in this

14  employment dispute, where Plaintiff undertook a significant 'reputational risk' in

15  bringing this action against [his] former employer").  It is common knowledge that the

16  modern day workforce is quite mobile, with employees holding several jobs in a career

17  during their lifetime.  It is also true that prospective employers in this computer age,

18  "Google" (utilize the Google search engine) and/or do extensive background checks and

19  have access to court databases to see if applicants have ever filed a lawsuit.  The class

20  representative here costs his employer a substantial sum of money by his courage to

21  vindicate his rights and the rights of past and present workers of Defendant.  Such

22  conduct will not be lost on a prospective employer who has to choose between an

23  applicant who has never sued a prior employer and one who has done so.  The incentive

24  payment requested herein far from compensates the class representative for the

25  opportunities he may lose because of his exercise of a constitutional right to petition the

26  courts for redress of a grievance.

27         The requested incentive payment ($10,000) amounts to 1.2% of the total settlement

28  fund ($828,000).  Courts have granted approval of wage and hour class action settlements

containing such incentive payments.  *See, e.g., Pagel,* 2014 WL 12634522, at *2

($315,000 class action settlement and $10,000 incentive payment equal to 3.2% of gross

settlement amount).[20]  Plaintiff's counsel has settled other class actions where he has

represented many employees in disputes concerning receipt of pay, where such

enhancements were awarded.  *E.g., Lynch v. Universal City Concepts, Inc.,* Case No. CV

07-5908 ABC ($304,800 class action settlement and $10,000 incentive payment equal to

3.3% of gross settlement amount).

Compensating Mr. Perry $10,000 is reasonable given his nearly five years of

service in the litigation, the risks that he took for the benefit of the class, and for the

potential loss of future employment as described.   As he estimates that he spent 80 hours

on this case (Dkt. 82 at 110, Perry Decl. ¶ 8), this would compensate him at a rate of

$125/hour.  *Cf. Boyd,* 2014 WL 6473804, at *7 (service award of $15,000 for 75 hours of

time spent on case).

## CONCLUSION

The parties herein have reached this settlement following extensive litigation,

ongoing case discussions and arm's-length negotiations.  The response from the

settlement class — with no requests for exclusion and no objections — has been

favorable.

Based on the foregoing, Plaintiff respectfully requests that the Court grant final

approval of the proposed settlement that was preliminarily endorsed, approve

disbursement of the attorney's fees in the amount of $248,400, award costs of $5,086.68,

---

[20] In *Pagel*, the parties' court filing and the Court's approval order shows a $315,000 class action settlement and $10,000 incentive payment.  Joint Notice of Mot. & Mot. for Prelim. Approval of Class Action Settlement, *Pagel v. Dairy Farmers of America, Inc.,* No. 2:13-cv-02382-SVW-VBK, 2014 WL 11742127 (C.D. Cal. Mar. 24, 2014) (Dkt. 48).

approve class administration expenses of $12,000, and grant a service award to Plaintiff Perry in the amount of $10,000.

Dated: October 23, 2017                     Law Office of Jonathan Ricasa


                                            /s/ - Jonathan Ricasa
                                            Jonathan Ricasa
                                            Attorney for Plaintiff Christopher Perry

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT